# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIFE IS GOOD, INC.,                                 ) | |
|                                                     ) | |
|        Plaintiff,  ) | Civil Action No. 04 11290 REK |
|                                                     ) | |
|      v.                    ) | Hon. Robert E. Keeton |
|                                                     ) | |
| LG ELECTRONICS U.S.A., INC., and                    ) | |
| LG ELECTRONICS MOBILECOMM U.S.A., INC.,             ) | |
|                                                     ) | |
|       Defendants.      ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S TRADEMARK DILUTION CLAIM

### ORAL ARGUMENT REQUESTED

Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO#656282)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142
Telephone: 617-452-1600
Facsimile: 617-452-1660

Mark S. Sommers (MA BBO# 545297)
Douglas A. Rettew (*pro hac vice*)
Timothy A. Lemper (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001
Telephone: 202-408-4000
Facsimile: 202-408-4400

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF UNDISPUTED FACTS...................................................... 2

     A.     "Life is good" Is a Common English Expression Frequently Used in
          Advertising and on Products.................................................................. 2

     B.     Plaintiff Uses "Life Is good." on Its Clothing, Gifts, and Accessories
          *as a Declarative Expression* to Communicate a Message of Optimism ............... 4

     C.     Plaintiff Has Produced No Evidence That "Life is good." Is Well
          Known to Consumers *as a Trademark* That Identifies Plaintiff............................ 5

     D.     The Parties' Experts Agree That "Life is good." Is Not Well Known *as*
          *a Trademark* That Identifies Plaintiff.................................................................... 6

     E.     Defendants' Use of "Life's Good" to Advertise Their Consumer
          Electronics Products Has Not "Blurred" the Distinctiveness or
          Lessened the Demand for Plaintiff's Unrelated Products .................................... 8

III.   ARGUMENT..................................................................................................... 9

     A.     Summary Judgment Is Favored Where, as Here, the Material Facts Are
          Undisputed and the Moving Party Is Entitled to Judgment as a Matter
          of Law.................................................................................................................... 9

     B.     Defendants Are Entitled to Summary Judgment on Plaintiff's
          Massachusetts State Law Trademark Dilution Claim ......................................... 10

          1.     "Life is good." Is Not a Strong, Distinctive Trademark Well
               Known to Consumers as a Synonym for Plaintiff .................................. 12

               a.     "Life is good." Is an Inherently Weak Trademark Because
                    It Is a Common, Well-Used Expression ..................................... 14

               b.     "Life is good." Is Not Well Known as a Synonym for
                    Plaintiff ....................................................................................... 15

          2.     Defendants' Use of "Life's Good" Is Not Likely to "Blur" the
               Trademark Distinctiveness of "Life is good.".......................................... 16

               a.     Defendants' Use of "Life's Good" Has Not Blurred the
                    Trademark Distinctiveness of "Life is good." ............................ 18

               b.     "Life is good." Is Already Diluted as a Trademark and
                    Cannot Be Blurred By Any One Use ......................................... 18

IV.    CONCLUSION.................................................................................................. 20

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

<u>C</u><u>ASES</u>

Anderson v. Liberty Lobby, Inc.,
      477 U.S. 242 (1986).........................................................................................10

Astra Pharm. Products, Inc. v. Beckman Instruments,
      1983 U.S. Dist. LEXIS 18289 (D. Mass. 1983),
      <u>aff'd</u> 718 F.2d 1201 (1st Cir. 1983)..................................................11, 13, 18

Bay State Sav. Bank v. Baystate Fin. Servs., LLC,
      338 F. Supp. 2d 181 (D. Mass. 2004)..........................................................13

Big Y Foods v. Retail Mktg. Network,
      1995 U.S. Dist. LEXIS 2498 (D. Mass. 1995).............................................13

Black Dog Tavern Co. Inc. v. J. Peter Hall,
      823 F. Supp. 48 (D. Mass. 1993)..................................................11, 13, 20, 22

Carroll Shelby Licensing, Inc. v. Superformance Int'l, Inc.,
      251 F. Supp. 2d 983 (D. Mass. 2002).....................................................11, 13

CCBN.com, Inc. v. C-call.com, Inc.,
      73 F. Supp. 2d 106 (D. Mass. 1999).............................................................13

Celotex Corp. v. Catrett,
      477 U.S. 317 (1986).......................................................................................10

Church of the Larger Fellowship v. Conservation Law of New England,
      1983 U.S. Dist. LEXIS 15855 (D. Mass. 1983)............................13, 16, 18, 23

Esquire, Inc. v. Esquire Slipper Mfg. Co.,
      243 F.2d 540 (1st Cir. 1957) .........................................................15, 17, 23

Food Fair Stores, Inc. v. Food Fair, Inc.,
      83 F. Supp. 445 (D. Mass. 1948)..................................................................14

Francis H. Leggett & Co. v. Premier Packing Co.,
      140 F. Supp. 328 (D. Mass. 1956).................................................................14

Hasbro, Inc. v. Clue Computing, Inc.,
      66 F. Supp. 2d 117 (D. Mass. 1999),
      <u>aff'd</u> 232 F.3d 1 (1st Cir. 2000).............................................................. passim

I.P. Lund Trading ApS v. Kohler Co.,
      11 F. Supp. 2d 112 (D. Mass. 1998),

vacated in part on other grounds, 163 F.3d 27 (1st Cir. 1998)................................. 21, 22

I.P. Lund Trading ApS v. Kohler Co.,
    118 F. Supp. 2d 92 (D. Mass. 2000) ....................................................... 10, 13

I.P. Lund Trading ApS v. Kohler Co.,
    163 F.3d 27 (1st Cir. 1998) ................................................................... passim

Infinity Broadcasting Corp. v. Great Boston Radio, II, Inc.,
    1993 U.S. Dist. Lexis 12284 (D. Mass. 1993),
    adopted by 1994 U.S. Dist. LEXIS 13731 (D. Mass. 1994) .......................................... 13

ITT Corp. v. XTRA Corp.,
    1985 U.S. Dist. LEXIS 23332 (D. Mass. 1985) ..................................................... passim

Libby, McNeill & Libby v. Libby,
    103 F. Supp. 968 (D. Mass. 1952) ................................................................. 14

Manpower, Inc. v. Foley,
    1980 U.S. Dist. LEXIS 15315 (D. Mass. 1980) ............................................... 13

Mr. Boston Seafoods Corp. v. Mr. Boston Distiller, Inc.,
    315 F. Supp. 574 (D. Mass. 1970) ........................................................... 16, 17

Nationwide Mut. Ins. Co. v. Hoyle Ins.,
    1994 U.S. Dist. LEXIS 8779 (D. Mass. 1994) ................................................ 14

Northern Trust Corp. v. Northern Bank & Trust Co.,
    1991 U.S. Dist. LEXIS 20349 (D. Mass. 1991) .............................................. 13

Pignons S. A. de Mecanique de Precision v. Polaroid Corp.,
    498 F. Supp. 805 (D. Mass. 1980),
    aff'd 657 F.2d 482 (1981) ................................................................... 11, 13

Pignons S. A. de Mecanique de Precision v. Polaroid Corp.,
    657 F.2d 482 (1st Cir. 1981) ................................................................ passim

PPG Industries Inc. v. Clinical Data Inc.,
    620 F. Supp. 604 (D. Mass. 1985) ....................................................13, 20, 21

Q Division Records, LLC v. Q Records,
    2000 U.S. Dist. Lexis 1773 (D. Mass. 2000) ................................................ 13

S.S. Kresge Co. v. United Factory Outlet, Inc.,
    598 F.2d 694 (1st Cir. 1979) ..........................................................13, 15, 18

Stratus Computers, Inc. v. NCR Corp.,
    1987 U.S. Dist. LEXIS 1819 (D. Mass. 1987) .............................................. 13

Three Blind Mice Designs Co. v. Cyrk, Inc.,
 892 F. Supp. 303 (D. Mass. 1995) .................................................................. 13

Tiffany & Co. v. Boston Club, Inc.,
 231 F. Supp. 836 (D. Mass. 1964) ........................................................... 14, 20

Visa Service, Inc. v. State Street Bank & Trust Co.,
 1980 U.S. Dist. LEXIS 11620 (D. Mass. 1980) ...................................... passim

STATUTES

15 U.S.C. § 1125(c) ............................................................................................. 1, 11

M.G.L., ch. 110, § 7A .............................................................................................. 12

M.G.L., ch. 110B, § 12 ......................................................................................... 1, 11

OTHER AUTHORITIES

Restatement (Third) of Unfair Competition § 25 cmt. e (1995) .................................. 15

RULES

Fed. R. Civ. P. 56(c) ................................................................................................ 13

TREATISES

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
 § 24:114 (4th ed. 1996) ................................................................................... 21

## I.    INTRODUCTION

Plaintiff uses the common, ordinary expression "Life is good." on clothing, gifts, and accessories to communicate—and sell—a message of optimism.  In late 2003, Defendants began using "Life's Good" as a corporate tagline in advertising for Defendants' technologically advanced appliances, televisions, computer hardware, cell phones, and other digitally sophisticated, premium consumer electronics.  In response, Plaintiff filed this lawsuit asserting, among other claims, that Defendants' use of "Life's Good" is likely to "dilute" the distinctiveness of Plaintiff's alleged trademark rights in the expression "Life is good."

The Massachusetts Anti-Dilution Act, M.G.L., ch. 110B, § 12, provides injunctive relief where (1) the plaintiff's mark is "distinctive" *as a trademark*; and (2) the defendant's use of the same or a similar mark creates a "likelihood of dilution" of the distinctive quality of the plaintiff's mark.  Although the Act can be superficially read to protect even weak marks, it has been judiciously interpreted to protect only the strongest, most distinctive trademarks, namely, marks that have become well known as "a synonym" for the plaintiff in the minds of consumers.[1]

Plaintiff cannot prove that "Life is good." is distinctive as a trademark.  This common expression is so frequently used by others, it cannot be considered unique.  Plaintiff's own expert admits that consumer awareness of "Life is good." as a trademark is "relatively low," and that it is not famous for dilution purposes.  Likewise, Defendants' experts all agree that "Life is good." is a weak trademark that is neither famous nor distinctive for dilution purposes.  Undisputed evidence further establishes that consumers view Plaintiff's use of "Life is good." *as a*

---

[1]    Not surprisingly, a high degree of commercial distinctiveness is likewise required under the Federal Trademark Dilution Act, which was based on the dilution laws of various states, including Massachusetts.  See 15 U.S.C. § 1125(c); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 45 (1st Cir. 1998) (citing H.R. Rep. No. 104-374, at 3 (1995), reprinted at 1995 U.S.C.C.A.N. 1030).  Plaintiff has not asserted a claim for dilution under the Federal Trademark Dilution Act, presumably because it knew that it could not show the actual harm required under the federal law.

*declarative expression* to communicate a message of optimism, and not *as a trademark* to identify Plaintiff.  As such, "Life is good." is not distinctive within the meaning of the Massachusetts Anti-Dilution Act.

Further, even if "Life is good." qualified as a distinctive trademark under the Act, Plaintiff cannot show that its distinctiveness is likely diluted ("blurred") by Defendants' use of "Life's Good." as a corporate tagline.  Plaintiff cannot show any actual dilution or lessening of demand for Plaintiff's products given that its sales have increased over 50% per annum since Defendants began using "Life's Good."  Nor can Plaintiff show any likelihood of dilution in the future.  "Life is good" is a commonplace expression used by many others in a variety of manners and contexts.  Inherent in this ubiquitous expression is its diluted nature.  As such, any alleged incremental "blurring" of the distinctiveness of Plaintiff's trademark rights from Defendants' use of "Life's Good" is too attenuated and too speculative to be actionable under the Massachusetts Anti-Dilution Act.

For these reasons, and as explained more fully below, the undisputed facts compel judgment for Defendants as a matter of law on Plaintiff's claim for trademark dilution.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    "Life is good" Is a Common English Expression Frequently Used in Advertising and on Products

"Life is good" is a common, everyday English declarative expression, bordering on a cliché, that has ordinary meaning as a positive and optimistic belief about life.  (Lemper Decl., Ex. 1 at ¶¶ 15, 22, 42.)[2]  Plaintiff's owners admit as much.  (Id., Ex. 2 at 67:3-6, 74:6-19, Ex. 3 at 40:11-20, 56:1-7.)

---

[2]    Unless otherwise noted, citations are to the Declaration of Timothy Lemper ("Lemper Decl.") and Jaclyn Kidwell ("Kidwell Decl."), filed concurrently with this Motion and incorporated by reference.

Not surprisingly, the expression "Life is good" is frequently used in advertising and on products to exploit the commercial appeal of its positive and optimistic message. (Lemper Decl., Ex. 1 at ¶¶ 15-23.) A search by Defendants' linguistic expert uncovered more than 5,000 commercial items bearing the expression "Life is good" that are not related to either party in this case. (Id., Ex. 1 at ¶ 23.) Examples of such products include buttons, tote bags, framed prints, messenger bags, mouse pads, posters, stationery, greeting cards, books, songs and music albums, calendars, signs, mugs, baby bibs, dish cloths, and, in particular, clothing such as t-shirts, sweatshirts, and hats. (Id., Ex. 1 at ¶¶ 15-20, 23; Kidwell Decl., Exs. 1-39.) For example, Hallmark has used the expression "Life is good" on its greeting cards since 1989. (Lemper Decl., Ex. 4.) Similarly, Natural Life Collections has used "Life is good" as an optimistic message on various products since 1995. (Id., Ex. 6.)

"Life is good" is also frequently used in advertising. (Lemper Decl., Ex. 1 at ¶¶ 21-22.) The same or similar expressions have been used in nationwide advertising campaigns on television, on radio, and in print by companies such as The Hershey Company, Miller Brewing Company, Forbes, and Sears. For example:

- Miller Brewing Company used "Life is good" in a national television advertising campaign, and from 1995 to 2003, owned federal trademark registrations for the marks "Life is good" and "We've got Miller Lite. We're in Texas. Life is good."

- The Hershey Company has used the slogans "Life's Good Between Reese's Cups" and "Life Is Good Between Reese's Cups" on its website, on nearly one hundred million candy wrappers, on promotional items, and in television advertising as part of a multimillion dollar national advertising campaign since 2004.

- Forbes has used "The Good Life" as a trademark for a consumer magazine since 1996, and owned a federal registration for that mark since 1998.

- Sears has used the slogan "Good Life. Great Price." in national television and radio advertising since 2003, and owns a federal registration for that trademark.

(Lemper Decl., Exs. 5, 7-9.) Plaintiff's records show that it was aware of many of these uses, as

well as uses by others like Ford, Wal-Mart, and the American Red Cross, and federal registrations for the marks "Life is good ... There's ice cream!" and "Life is good.  We Make it better." (Lemper Decl., Ex. 2 at 29:13-19, 122:12-124:22, 208:5-209:12, 211:7-212:6, 213:9-15, 214:14-215:20, Ex. 3 at 90:2-12, 92:11-20, Ex. 10 at 85:4-15, 87:10-21, 89:2-17, 94:5-11, 107:8-13, 111:18-112:14, 114:7-115:9, 121:5-8, 124:5-125:3, 127:8-17, 129:1-16, 130:13-131:18, 133:19-135:5, 136:7-137:2, 143:11-145:17, Exs. 18-19.)

> ### B.    Plaintiff Uses "Life Is good." on Its Clothing, Gifts, and Accessories *as a Declarative Expression* to Communicate a Message of Optimism

What Plaintiff sells is a message of optimism.  It does so by offering casual clothing and assorted accessories adorned with the expression "Life is good."[3]  Plaintiff decided to use "Life is good." *as an expression* because it communicates an optimistic belief about human life. (Lemper Decl., Ex. 2 at 66:4-69:3, 74:6-19, 87:21-88:3, 136:13-137:19, Ex. 3 at 14:7-20, 38:14-41:2, 55:13-56:7, 59:2-6.)  Plaintiff considered using similar expressions, such as "Life's great.", "It's all good.", "It's all great.", and "Ain't life great," before settling on "Life is good."  (Id., Ex. 2 at 74:20-75:3.)  Plaintiff uses "Life is good." in the form of a declarative sentence (i.e., with the capitalization and punctuation of a short sentence).  (Id., Ex. 2 at 83:3-84:18.)

Plaintiff admits that it does not own proprietary rights in the ordinary inherent meaning of the words "Life is good." as an expression communicating a message of optimism.  (Lemper Decl., Ex. 10 at 95:14-96:14.)

Like its use of "Life is good.", Plaintiff uses other common sayings on its products, examples of which include:

---

[3]    Plaintiff uses "Life is good." on t-shirts, shirts, sweatshirts, golf shirts, pants, shorts, jackets, outerwear, dresses, pajamas, infant and toddler clothing, tank tops, underwear, hats, visors, jewelry, blankets, towels, travel bags, backpacks, cinch sacks, water bottles, travel mugs, balls, flying discs, bandanas, mugs, gloves, mittens, dog and cat bowls, dog and cat collars, dog and cat toys, golf club accessories, coffee mugs, stickers, tire covers, plastic figures, posters, letterhead, stationary, postcards, and greeting cards.  (Lemper Decl., Ex. 11 at p. 3.)



(<u>id.</u>, Ex. 1 at p. 20.)  And like its use of "Life is good." to adorn its products, Plaintiff uses these (and other) common sayings as declarative expressions to communicate a positive message. Further, like its use of "Life is good" as an expression, Plaintiff does not claim (or at least appear to claims) these other common declarative sayings as trademarks.  (<u>Id.</u>, Ex. 2 at 98:18-101:5, Ex. 3 at 27:16-30:16.)

Plaintiff attributes the commercial appeal and success of its products to the fact that "Life is good.", like these other declarative expressions, communicates an optimistic message that resonates with consumers and elicits a positive response.  (<u>Id.</u>, Ex. 2 at 65:4-69:3, 71:16-73:8, 87:21-88:3, Ex. 3 at 36:4-37:18, 39:11-42:17, 44:6-12, 55:22-56:7, 109:8-110:15, 111:4-16.)

### C.     Plaintiff Has Produced No Evidence That "Life is good." Is Well Known to Consumers *as a Trademark* That Identifies Plaintiff

Although the evidence demonstrates that consumers recognize "Life is good." *as an expression* communicating a message of optimism, it does not demonstrate that consumers recognize the words "Life is good." *as a trademark* identifying any of the companies who make products bearing that expression.  Plaintiff produced no evidence that consumers recognize or buy Plaintiff's products because they identify Plaintiff's use of "Life is good." as a trademark for a particular company, as opposed to a positive and optimistic message.  Plaintiff admits that it does not have any consumer surveys, studies, or research to show that people recognize "Life is good." as a trademark identifying Plaintiff.  (Lemper Decl., Ex. 2 at 92:17-93:5, Ex. 10 at 102:20-103:2.)

**D.    The Parties' Experts Agree That "Life is good." Is Not Well Known**
*as a Trademark* **That Identifies Plaintiff**

Plaintiff's survey expert, Mr. Robert Klein, admits that consumer awareness of "Life is good." is "relatively low," and that it is not famous for purposes of dilution. (Id., Ex. 12 at 42:9-43:20, 90:13-15.) That conclusion, based on an empirical pretest survey that he conducted, led Mr. Klein to specifically design a consumer survey (in support of Plaintiff's trademark infringement claim) for a trademark that *lacks* significant consumer awareness. (Id., Ex. 12 at 41:18-43:1.) According to Mr. Klein, his survey pretest showed "little awareness of Life is good. or association with any products." (Lemper Decl., Ex. 12 at 107:6-11.)

Defendants' linguistic expert, Dr. Ronald Butters, agrees that "Life is good." is not well known to consumers as a trademark, let alone one that identifies Plaintiff. Based on evidence that "Life is good" is an expression frequently used by others, Dr. Butters concludes that consumers primarily understand "Life is good." as a commonplace expression of optimism, and not as a trademark identifying Plaintiff's products. (Id., Ex. 1 at ¶ 27.)

Defendants' marketing expert, Dr. Maureen Morrin, confirms that "Life is good." is weak as a trademark. According to Dr. Morrin, Plaintiff's $60 million in annual sales represent a very small fraction of the sales of those companies Plaintiff identifies as its competitors, such as Nike ($10 billion), Adidas/Reebok ($12 billion), and Quicksilver ($1.2 billion), or by other clothing companies such as Levi Strauss ($4.1 billion). (Id., Ex. 13 at pp. 4-5, 16.) Similarly, Plaintiff's estimated $1.3 million annual advertising budget (consisting of non-traditional forms of advertising) is again infinitesimal to the overall $2.5 billion annually spent on apparel advertising, and a literal blip of the best known apparel brands' advertising, such as Nike ($573 million) and The Gap ($525 million). (Lemper Decl., Ex. 13 at p. 5.) Further, Plaintiff does not enjoy significant market share. For example, Plaintiff's $60 million in sales in 2005 (for all of its

6

products) would have represented only 1.6% of total U.S. t-shirt sales in 1998.  (Id.)  Based on these and other facts, Dr. Morrin concludes that Plaintiff's "Life is good." trademark "has not achieved any significant, let alone high level of brand awareness in the marketplace, and thus does not possess commercial fame and/or distinctiveness that trademark dilution presupposes."  (Id.)

Further, Defendants' expert on U.S. Patent and Trademark Office ("PTO") practice, Mr. Rany Simms (a former Administrative Law Judge of the PTO's Trademark Trial and Appeal Board), explains that sayings like "Life is good." are not registrable as trademarks when they are used ornamentally on products to communicate messages.  (Id., Ex. 14 at ¶¶ 9-10.)  This is why, Mr. Simms explains, the PTO rejected Plaintiff's efforts to register "Life is good." as a trademark in 1995—because consumers would view "Life is good." appearing across the front of Plaintiff's clothing *as an expression* communicating a message of optimism, and not as a trademark identifying Plaintiff.  (Id., Ex. 14 at ¶ 6, Ex. 10 at 29:12-31:18, Ex. 20.)[4]  Further, as noted by Mr. Simms, Plaintiff continues to use "Life is good." on its clothing in the same ornamental manner that led the PTO to refuse registration.[5]

Defendants' survey expert, Mr. Robert Reitter, confirms that "Life is good." is not well known to consumers as a trademark as used on Plaintiff's products.  Mr. Reitter conducted an empirical consumer survey showing that consumers attribute no more *trademark significance* to Plaintiff's use of "Life is good." on the fronts of its t-shirts than they do with the admittedly

---

[4]    Plaintiff's application was abandoned after Plaintiff failed to prove that it used "Life is good." as a trademark, and no appeal was filed.  (Lemper Decl., Ex. 14 at ¶¶ 6-7.)  Plaintiff later obtained a registration by submitting evidence that it used "Life is good." on labels and hangtags in a traditional trademark manner.  (Id. at ¶ 8.)

[5]    When Plaintiff first began selling shirts adorned with the words "Life is good." across the front, the labels inside the back of the collar of those shirts bore the word "Oneida" (the name of the company who made the shirts).  (Lemper Decl., Ex. 3 at 44:13-45:11.)  Later, Plaintiff sewed patches on the back of its shirts containing the name "Jacobs Gallery" to identify Plaintiff's predecessor.  (Id., Ex. 10 at 44:9-45:16.)  Plaintiff did not incorporate under the name "Life is good, Inc." until 1997.  See Plaintiff's corporate registration, http://corp.sec.state.ma.us/corp/corpsearch/CorpSearchSummary.asp?ReadFromDB=True&UpdateAllowed=&FEIN=000585485.

generic saying "We're #1" on the front of t-shirts.  (Lemper Decl., Ex. 15 at p. 7.)

**E.    Defendants' Use of "Life's Good" to Advertise Their Consumer Electronics Products Has Not "Blurred" the Distinctiveness or Lessened the Demand for Plaintiff's Unrelated Products**

Defendants market digitally sophisticated, premium-positioned consumer electronics products (e.g., televisions, appliances, computer hardware, cell phones) under the "LG" house mark and the LG logo (), which appear in their advertising and on their products.[6] (Lemper Decl., Ex. 16 at 42:8-18, 149:21-150:5, Ex. 17 at 33:4-10.)  Plaintiff admits that the parties' products are unrelated.  (Id., Ex. 2 at 51:3-52:7.)

In late 2003, Defendants began using "Life's Good" as a corporate tagline in advertising and promotional materials for their products.  (Lemper Decl., Ex. 16 at 35:13-15, 37:11-21.)  The tagline appears with the "LG" mark and LG logo as follows:

The majority (but not all) of Defendants' advertising includes the "Life's Good" tagline. (Lemper Decl., Ex. 16 at 42:19-43:5.)  The "Life's Good" tagline does not appear on Defendants' products themselves.  (Id., Ex. 16 at 37:18-21, Ex. 17 at 56:4-8.)  In addition to traditional advertising, Defendants engage in the common corporate practice of distributing free promotional items (e.g., gum, pens, calculators, shirts, hats, coffee mugs) to its employees, trade partners, and at trade shows.[7]  (Lemper Decl., Ex. 16 at 139:1-141:10, Ex. 17 at 104:25-105:11, 106:23-108:19.)

For well over two years, Defendants have used the "Life's Good" tagline.  Each year,

---

[6]    Plaintiff does *not* claim that the LG logo ( ) violates Plaintiff's rights in the "Jake" character ( ). (Lemper Decl., Ex. 2 at 58:18-59:3, 60:3-61:2, 229:10-231:6).

[7]    Plaintiff's President admits that it is a common practice for companies to distribute free promotional items such as clothing and accessories as a mean of promotion.  (Lemper Decl., Ex. 2 at 125:1-4.)

Defendants have spent more than $100 million in advertising, and generated more than $8 billion in sales. (Id., Ex. 16 at 18:16-19, 42:4-7, Ex. 17 at 105:23-106:1, 107:7-23, 108:12-18.)

Despite Defendants' extensive sales and advertising, Plaintiff has produced no evidence that Defendants' use of the "Life's Good" corporate tagline has actually "blurred" the distinctiveness of "Life is good." as a trademark of Plaintiff. Plaintiff has no research, studies, or surveys to show any decrease in consumer recognition of "Life is good." as a trademark of Plaintiff during that time. (Lemper Decl., Ex. 2 at 92:17-93:5, Ex. 10 at 102:20-103:2.) Similarly, Plaintiff has produced no evidence that Defendants' use of "Life's Good" has lessened consumer demand for Plaintiff's products. To the contrary, Plaintiff's sales have substantially grown every year since Defendants began using "Life's Good" in advertising and promotional materials for their unrelated consumer electronics. (Id., Ex. 2 at 88:9-89:1, 258:4-259:1, Ex. 21.) In 2003, the year Defendants began using "Life's Good" (December 2003), Plaintiff's sales were approximately $23 million. (Id., Ex. 21.) In 2004, the first full year Defendants used the "Life's Good" tagline, Plaintiff's sales increased well over 50% to approximately $39 million. (Id.) In 2005, Plaintiff's sales again jumped another 50% to approximately $60 million. (Id., Ex. 2 at 227:14.)

## III.  ARGUMENT

### A.  Summary Judgment Is Favored Where, as Here, the Material Facts Are Undisputed and the Moving Party Is Entitled to Judgment as a Matter of Law

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules designed to secure the just, speedy, and inexpensive determination of every action. Celotex Corp. v. Catrett, 477

U.S. 317, 327 (1986).

Summary judgment should be granted unless there is a genuine dispute of material fact. Pignons S. A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 486 (1st Cir. 1981). To be genuine, a factual dispute must be supported by substantial evidence. Id. The moving party may meet its burden by showing that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. Where the moving party makes such a showing, the nonmoving party cannot survive summary judgment by relying on evidence that is merely colorable, conclusory, speculative, or not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).

This Court has frequently granted, without reversal, summary judgment for defendants on claims under M.G.L., ch. 110B, § 12. See I.P. Lund Trading ApS v. Kohler Co., 118 F. Supp. 2d 92 (D. Mass. 2000); Carroll Shelby Licensing, Inc. v. Superformance Int'l, Inc., 251 F. Supp. 2d 983 (D. Mass. 2002); Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117 (D. Mass. 1999), aff'd 232 F.3d 1 (1st Cir. 2000); Black Dog Tavern Co. Inc. v. J. Peter Hall, 823 F. Supp. 48 (D. Mass. 1993); ITT Corp. v. XTRA Corp., 1985 U.S. Dist. LEXIS 23332 (D. Mass. 1985); Astra Pharm. Products, Inc. v. Beckman Instruments, 1983 U.S. Dist. LEXIS 18289 (D. Mass. 1983), aff'd 718 F.2d 1201 (1st Cir. 1983); Pignons S. A. de Mecanique de Precision v. Polaroid Corp., 498 F. Supp. 805 (D. Mass. 1980), aff'd 657 F.2d 482 (1981); Visa Service, Inc. v. State Street Bank & Trust Co., 1980 U.S. Dist. LEXIS 11620 (D. Mass. 1980).

### B.    Defendants Are Entitled to Summary Judgment on Plaintiff's Massachusetts State Law Trademark Dilution Claim

To prevail on it claim under the Massachusetts Anti-Dilution Act, Plaintiff must prove two elements:  (1) "Life is good." is a strong, distinctive trademark well known to consumers as a synonym for Plaintiff; and (2) Defendants' use of "Life's Good" is likely to dilute the

distinctiveness of "Life is good." as a trademark.[8]  See Pignons, 657 F.2d at 493-494, Visa, 1980 U.S. Dist. LEXIS 11620, at *31.

   The First Circuit and this Court have labeled the dilution standard "a rigorous one."[9]  I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 47 (1st Cir. 1998); Hasbro, 66 F. Supp. 2d at 137. Having established this high standard, this Court almost without exception has found no dilution (or even a likelihood of dilution) under M.G.L, ch. 110B, § 12.[10]  Because Plaintiff in this case cannot meet the rigorous standard for dilution under M.G.L., ch. 110B, § 12, summary judgment

---

[8]    The Massachusetts Anti-Dilution Act, M.G.L., ch. 110B, § 12, states:

   Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Plaintiff has not asserted a claim under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c).

[9]    The FTDA was based on "a patch-quilt system" of existing dilution laws in 25 states, including Massachusetts.  I.P. Lund, 163 F.3d at 45 (citing H.R. Rep. No. 104-374, at 3 (1995), reprinted at 1995 U.S.C.C.A.N. 1030).  "The standards for dilution under Massachusetts law are very similar to those under the FTDA."  Hasbro, 66 F. Supp. 2d at 137.

[10]    Cases denying relief under M.G.L., ch. 110B, § 12 include S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694 (1st Cir. 1979); Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 338 F. Supp. 2d 181 (D. Mass. 2004); I.P. Lund, 118 F. Supp. 2d 92; Carroll Shelby Licensing, 251 F. Supp. 2d 983; Hasbro, 66 F. Supp. 2d 117, aff'd 232 F.3d 1 (1st Cir. 2000); Q Division Records, LLC v. Q Records, 2000 U.S. Dist. Lexis 1773 (D. Mass. 2000); CCBN.com, Inc. v. C-call.com, Inc., 73 F. Supp. 2d 106 (D. Mass. 1999); Three Blind Mice Designs Co. v. Cyrk, Inc., 892 F. Supp. 303 (D. Mass. 1995); Black Dog Tavern, 823 F. Supp. 48; Infinity Broadcasting Corp. v. Great Boston Radio, II, Inc., 1993 U.S. Dist. Lexis 12284 (D. Mass. 1993), adopted by 1994 U.S. Dist. LEXIS 13731 (D. Mass. 1994); Northern Trust Corp. v. Northern Bank & Trust Co., 1991 U.S. Dist. LEXIS 20349 (D. Mass. 1991); Stratus Computers, Inc. v. NCR Corp., 1987 U.S. Dist. LEXIS 1819 (D. Mass. 1987); PPG Industries Inc. v. Clinical Data Inc., 620 F. Supp. 604 (D. Mass. 1985); ITT, 1985 U.S. Dist. LEXIS 23332; Astra Pharm., 1983 U.S. Dist. LEXIS 18289, aff'd 718 F.2d 1201 (1st Cir. 1983); Church of the Larger Fellowship v. Conservation Law of New England, 1983 U.S. Dist. LEXIS 15855 (D. Mass. 1983); Pignons, 498 F. Supp. 805, aff'd 657 F.2d 482 (1981); Visa Service, 1980 U.S. Dist. LEXIS 11620.

   In the only case finding dilution under the current statute, this Court's analysis consisted of a single sentence.  See Manpower, Inc. v. Foley, 1980 U.S. Dist. LEXIS 15315, at *9 (D. Mass. 1980).  That case is factually distinguishable because the parties there offered competing services, and the plaintiff's showing of commercial renown (28 years of use, $700 million in annual sales) far exceeds Plaintiff's showing here.  Id. at *4, 8.

   For the sake of completeness, Defendants note that this Court also entered judgment for the plaintiff under the current Massachusetts dilution statute in two uncontested cases.  Big Y Foods v. Retail Mktg. Network, 1995 U.S. Dist. LEXIS 2498 (D. Mass. 1995) (consent judgment); Nationwide Mut. Ins. Co. v. Hoyle Ins., 1994 U.S. Dist. LEXIS 8779 (D. Mass. 1994) (default judgment).  Further, only four cases found dilution under the prior version of the statute enacted in 1947.  See M.G.L., ch. 110, § 7A; Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836 (D. Mass. 1964); Francis H. Leggett & Co. v. Premier Packing Co., 140 F. Supp. 328 (D. Mass. 1956); Food Fair Stores, Inc. v. Food Fair, Inc., 83 F. Supp. 445 (D. Mass. 1948); Libby, McNeill & Libby v. Libby, 103 F. Supp. 968 (D. Mass. 1952).

is warranted.

      **1.**      **"Life is good." Is Not a Strong, Distinctive Trademark Well Known to Consumers as a Synonym for Plaintiff**

The standard for distinctiveness required to obtain protection under dilution laws is more rigorous than the standard for distinctiveness required to obtain protection under trademark infringement laws. I.P. Lund, 163 F.3d at 47. A mark that evokes an association with a particular company only when used in connection with certain goods is ordinarily not sufficiently distinctive to be protected against dilution when used by others on *unrelated* goods. Id. at 46-47 (quoting Restatement (Third) of Unfair Competition § 25 cmt. e (1995)).

For this reason, while the wording of the Massachusetts Anti-Dilution Act may be superficially read to require protection for even weak marks, the First Circuit and this Court have limited protection to only the "strongest" and "most distinctive" marks that are "well known to the public . . . [as] a synonym for a particular source of products."[11] ITT, 1985 U.S. Dist. LEXIS 23332, at *40; Kresge, 598 F.2d at 697 (statute protects only "the strongest" marks); Visa Service, 1980 U.S. Dist. LEXIS 11620, at *31 (statute protects only "the most distinctive" marks). The First Circuit rejects the view that the Act applies "no matter how weak the plaintiff's mark may be" to protect "whatever distinctive quality the plaintiff's mark may have." Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 544 (1st Cir. 1957) (applying M.G.L., ch. 110, § 7A, precursor to M.G.L., ch. 110B, § 12).

Given this higher standard, this Court has refused to find trademarks sufficiently distinctive for dilution purposes (to prevent a defendant's use of a mark on *unrelated* goods),

---

[11]   The sponsors of the FTDA identified DUPONT, BUICK, and KODAK as examples of marks entitled to protection under dilution law because they are associated with only one particular company, even when used on unrelated goods. See I.P. Lund, 163 F.3d at 45 (citing Sen. Hatch statement, 141 Cong. Rec. S19306, S19310, Dec. 29, 1995).

even where the marks were found sufficiently distinctive for infringement purposes (to prevent a defendant's use of a mark on *related* goods).  For example, in <u>ITT</u> this Court found on summary judgment that the plaintiff's mark XTRA was "entitled to strong protection in its existing field of operations," but not so "in other, completely unrelated fields of endeavor."  1985 U.S. Dist. LEXIS 23332, at *31-32.  Similarly, this Court in <u>Visa Service</u> found on summary judgment that the plaintiff's mark VISA had acquired sufficient secondary meaning to prevent others from using it in the plaintiff's field, but the mark was so weak that it "cannot be projected into areas outside the travel documentation field."  1980 U.S. Dist. LEXIS 11620, at *25.  <u>See</u> <u>also</u> <u>Church of the Larger Fellowship</u>, 1983 U.S. Dist. LEXIS 15855, at *17, 20 (finding that plaintiff's mark was of "average strength" and had acquired secondary meaning for purposes of trademark infringement, but that plaintiff's mark did not qualify for protection under M.G.L., ch. 110B, § 12 because it was "relatively weak").

The heavy burden a trademark owner faces in establishing distinctiveness under the dilution law is illustrated in this Court's decision in <u>Mr. Boston Seafoods Corp. v. Mr. Boston Distiller, Inc.</u>, 315 F. Supp. 574 (D. Mass. 1970).  In that case, the trademark owner presented evidence that it had used the marks "Mr. Boston" and "Old Mr. Boston" in connection with alcoholic and non-alcoholic beverages for over 23 years, that it owned federal registrations for both marks, that it had made "very substantial expenditures for advertising," and that it had achieved "annual sales of a very substantial nature dollarwise."  <u>Id.</u> at 575, 577.  This Court found that such evidence proved that the trademark owner's marks were sufficiently distinctive under the trademark infringement laws to prevent others from using those marks on similar or related products.  <u>Id.</u> at 576.  Even so, this Court held that the evidence failed to show that the marks were such "strong marks well known to the public" to be entitled under the trademark

dilution laws to prevent the use of those same marks for unrelated seafood.  Id. at 577.

In this case, "Life is good." is too weak and insufficiently distinctive as a trademark to be entitled to protection under the Massachusetts Anti-Dilution Act.  Even assuming Plaintiff's "Life is good." mark has acquired sufficient distinctiveness under the trademark infringement laws, it clearly has not acquired the considerably higher level of distinctiveness required for dilution.

### a.    "Life is good." Is an Inherently Weak Trademark Because It Is a Common, Well-Used Expression

Where a party adopts a common word or phrase as its trademark, it chooses a mark that is *already* diluted.  Esquire, 243 F.2d at 543; ITT, 1985 U.S. Dist. LEXIS 23332, at *31.  Common words and phrases are thus inherently weak trademarks entitled to only limited protection, even if a plaintiff can show acquired trademark distinctiveness .  See ITT, 1985 U.S. Dist. LEXIS 23332, at *30.  In Esquire, for example, the First Circuit found that the plaintiff's mark "Esquire" had "built-in attraction" as a trademark because of its common English word "implications of youthful gentility in an aura of wealth."  243 F.2d at 543.  The Court concluded that "Esquire" was an inherently weak mark that lacked sufficient distinctiveness to be protected under dilution law.  Id.  The Court warned that "a party cannot pluck a word with favorable connotations from the general vocabulary and appropriate it to his exclusive use, no matter how much effort and money he may expend in the attempt."  Id.; see ITT, 1985 U.S. Dist. LEXIS 23332, at *31; Visa Service, 1980 U.S. Dist. LEXIS 11620, at *26.

In addition, a word or phrase frequently used by others cannot be a strong or distinctive mark because of its association with many users.  See Kresge, 598 F.2d at 697 (finding that "mart" is clearly a weak trademark given evidence of third-party trademark registrations and corporate registrations using that term); Astra Pharm., 1983 U.S. Dist. LEXIS 18289, at *11, 14 (evidence of over 200 occurrences of the word "Astra" demonstrates that it "is far from a unique

mark" and fails to show that the mark is distinctive); <u>Church of the Larger Fellowship</u>, 1983 U.S. Dist. LEXIS 15855, at *17, 20 ("Use by several other concerns . . . weakens the mark.").

Here, Plaintiff's owners not only admit that "Life is good" is a common expression that conveys a message of optimism, they admit that they chose "Life is good." to exploit the inherent commercial appeal of that message. As one might expect, Plaintiff is not the only company, or even the first or the biggest, to use "Life is good" to leverage the phrase's inherent commercial appeal. The undisputed evidence shows that this common expression is frequently used by many others in advertising and on thousands of products.

<b>b.    "Life is good." Is Not Well Known as a Synonym for Plaintiff</b>

The parties' experts all agree that "Life is good." is not a strong and distinctive trademark well known to consumers as a synonym for Plaintiff or its products. Plaintiff's expert admits that consumer awareness of "Life is good." as a trademark is "relatively low," and that it is not famous for purposes of dilution. (Lemper Decl., Ex. 12 at 42:9-43:20, 90:13-15.) Defendants' marketing expert concludes that Plaintiff's "Life is good." trademark "has not achieved any significant, let alone high level of brand awareness in the marketplace," and does not possess the commercial distinctiveness required for dilution . (<u>Id.</u>, Ex. 13 at p. 5.) That opinion is confirmed by Defendants' empirical survey, which shows that Plaintiff's use of "Life is good." on the fronts of its t-shirts has no more *trademark significance* for consumers than the admittedly generic saying "We're #1." (Lemper Decl., Ex. 15 at p. 7.) Plaintiff has no studies, surveys, research, or expert testimony to the contrary. (<u>Id.</u>, Ex. 2 at 92:17-93:5.)

In sum, no credible evidence exists that consumers recognize "Life is good." as a trademark that uniquely identifies only Plaintiff, let alone that "Life is good." is a strong and distinctive trademark well known to consumers. At best, Plaintiff's evidence demonstrates that consumers recognize "Life is good." as Plaintiff intended, namely, to communicate a message of

15

optimism.  In the end, "Life is good." has insufficient trademark distinctiveness to warrant

protection under M.G.L., ch. 110B, § 12.

### 2.    Defendants' Use of "Life's Good" Is Not Likely to "Blur" the Trademark Distinctiveness of "Life is good."

The First Circuit has recognized three situations that give rise to a likelihood of dilution:

(1) where the defendant's use of a mark causes actual or potential consumer "confusion" with the

plaintiff's mark; (2) where the defendant's use of a mark "tarnishes" the goodwill and reputation

of the plaintiff's mark; and (3) where the defendant's use of a mark diminishes the uniqueness

and individuality of the plaintiff's mark, known as "blurring."  See Pignons, 657 F.2d at 494-

495; Hasbro, 66 F. Supp. 2d at 134-136.

Defendants need not address the first two types of dilution.  Plaintiff does not pursue a

claim of dilution based on "tarnishment" (Lemper Decl., Ex. 2 at 180:17-181:1), and, to the

extent Plaintiff's dilution claim is based on "confusion" arising from Defendants' use of "Life's

Good," it is duplicative of Plaintiff's trademark infringement claim, which is governed by the

same standard ("likelihood of confusion"), provides the same remedy (injunctive relief), and

requires the same analysis.  See Pignons, 657 F.2d at 494-495 (relying on "likelihood of

confusion" analysis for trademark infringement to dispose of claim for dilution by confusion);

Black Dog Tavern, 823 F. Supp. at 59 ("This court's determination that there is no likelihood of

confusion between the parties' marks precludes consideration of the first test for dilution."); PPG

Industries, 620 F. Supp. at 606 (holding that a prior finding of no likelihood of confusion applied

not only to plaintiff's trademark infringement and unfair competition claims but also to "the

'consumer confusion' interpretation of dilution").[12]

---

[12]    Of course, to successfully prove trademark dilution, a mark must be shown to meet the higher standard of trademark strength and distinctiveness discussed above, which Plaintiff cannot do.

A claim of dilution by "blurring" is predicated on showing that a mark is so distinctive and unique that it identifies *one and only one* company. "Blurring" occurs when the defendant's use of the plaintiff's mark "causes the public no longer to think *only* of the plaintiff's product" upon seeing the mark. Hasbro, 66 F. Supp. 2d at 134 (emphasis added); see Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836, 844 (D. Mass. 1964) (blurring is "a risk of an erosion of the public's identification of [a] very strong mark with *the plaintiff alone*.") (emphasis added). The injury from blurring is "the gradual whittling away" of the mark's ability to identify a single company as a result of the use of the mark by others.[13] I.P. Lund, 163 F.3d at 48. To prove "blurring," a plaintiff must show that the defendant's use of its mark is likely to cause a lessening of demand for products bearing the plaintiff's mark. I.P. Lund Trading ApS v. Kohler Co., 11 F. Supp. 2d 112, 125-126 (D. Mass. 1998), vacated in part on other grounds, 163 F.3d 27 (1st Cir. 1998).

Courts are reluctant to apply the expansive concept of dilution by blurring under the Massachusetts Anti-Dilution Act. Hasbro, 66 F. Supp. 2d at 137; PPG Industries, 620 F. Supp. at 608. As this Court judiciously cautioned, blurring is "a potent legal tool, which must be carefully used as a scalpel, not a sledgehammer . . . [and] cannot and should not be carried to the extreme of forbidding the use of every trademark on any and all products and services." Hasbro, 66 F. Supp. 2d at 135 (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 24:114 (4th ed. 1996)). And as further explained:

> If courts were compelled to find dilution every time a plaintiff showed that the plaintiff's and defendant's marks were similar and that the plaintiff's mark was famous, . . . no one other than the mark holder could ever use a trademark similar to one found to be famous. . . [and courts] would have to find per se dilution for [terms] that use famous

---

[13]   See, e.g., I.P. Lund, 163 F.3d at 49 ("No one would confuse Kodak pianos with Kodak film, but the use of the name on the piano could dilute its effectiveness as a mark for the film.")

> marks . . . .  These sweeping consequences fly in the face of the First
> Circuit's assertion of a rigorous standard . . . .

Id. at 135.  That rigorous standard and common sense alike both point to the obvious:

Defendants' use of "Life's Good" is not likely to blur or whittle away whatever level of

distinctiveness the expression "Life is good." enjoys as a trademark of Plaintiff.

### a. Defendants' Use of "Life's Good" Has Not Blurred the Trademark Distinctiveness of "Life is good."

Plaintiff cannot show *any* actual blurring of *any* trademark distinctiveness of "Life is

good." resulting from *any* of Defendants' actions.  Defendants' use of the "Life's Good"

corporate tagline has not lessened the demand for Plaintiff's products.  See I.P. Lund, 11 F.

Supp. 2d at 125-126.  In Black Dog Tavern, this Court relied on the plaintiff's annual sales

increases despite the defendant's "continuous and ever-expanding use" as evidence that the

defendant's marks had not blurred the plaintiff's mark.  823 F. Supp. at 59.  In this case,

Plaintiff's 50%+ sales increases per annum since 2003, despite Defendants' "massive advertising

and sales campaign" using the "Life's Good" tagline, proves that Defendants' activities have not

blurred Plaintiff's trademark.  (Complaint ¶ 18; Lemper Decl., Ex. 2 at 258:4-259:1, 227:14, Ex.

21.)  Moreover, Plaintiff has no research, studies, or surveys showing that trademark recognition

levels of "Life is good." have decreased or diminished during that time.  (Lemper Decl., Ex. 2 at

92:17-93:5, Ex. 10 at 102:20-103:2.)

### b. "Life is good." Is Already Diluted as a Trademark and Cannot Be Blurred By Any One Use

Where a party adopts a common phrase with "built-in" commercial appeal as its

trademark, it chooses a mark that is *already* diluted.  Esquire, 243 F.2d at 543; ITT, 1985 U.S.

Dist. LEXIS 23332, at *31.  Such mark is necessarily entitled to limited protection because a

trader cannot "pluck a word with favorable connotations out of the general vocabulary and

appropriate it to his exclusive use, no matter how much effort and money he may expend in the attempt." Esquire, 243 F.2d at 543; ITT, 1985 U.S. Dist. LEXIS 23332, at *31; Visa Service, 1980 U.S. Dist. LEXIS 11620, at *26. Moreover, dilution is *inherent* in the very nature of a trademark that is "a commonplace word, widely associated with many situations and products." Pignons, 657 F.2d at 495. The First Circuit in Pignons held that the "supposed incremental harm" caused by a defendant's use of "a commonplace word, widely associated with many situations and products" is an injury "so attenuated and speculative" that it is not cognizable under the Massachusetts Anti-Dilution Act. Id. at 495 (finding that the mark "Alpha" was not likely to dilute the mark "Alpa" as a matter of law); see Church of the Larger Fellowship, 1983 U.S. Dist. LEXIS 15855, at *20 ("[P]laintiff's mark [CLF] is relatively weak and shared by many others. . . . There can be no dilution on these facts.").

Plaintiff chose an inherently "blurred" expression to be its trademark. Plaintiff admits that "Life is good." is a common English expression, and that it decided to adopt and use "Life is good." because the ordinary, underlying meaning of that expression had commercial appeal. In this respect, Plaintiff is hardly unique: "Life is good" and similar expressions are frequently used in advertising and on products, including in national advertising campaigns by large retailers and on a diverse array of products. Any incremental blurring of Plaintiff's trademark distinctiveness resulting from Defendants' use of "Life's Good" (even assuming it was capable of being parsed from the thousands of other marketplace uses) is too attenuated and too speculative to be actionable under the Massachusetts Anti-Dilution Act.

Having chosen a commonly used expression for the intended purpose of communicating the underlying positive message inherent in that phrase, having used that expression as one of many traders to adorn products and advertising for products, and having exponentially increased

sales and business side-by-side with Defendants' advertising and use of "Life's Good" as a corporate tagline, Plaintiff cannot show that Defendants' use of "Life's Good" is likely to "blur" any presupposed trademark association of the everyday expression "Life is good." with Plaintiff and only Plaintiff.

Moreover, that Plaintiff may have invested substantial time, effort, and money in an attempt to pluck the common expression "Life is good." from the English language does not justify the monopoly Plaintiff seeks through its dilution claim. This Court has judiciously cautioned against such sweeping consequences.

Plaintiff's inability to establish a likelihood of dilution as a matter of law thus provides a second, independent ground for granting summary judgment on Plaintiff's trademark dilution claim.

## IV.    CONCLUSION

For the reasons stated above, Defendants are entitled to judgment as a matter of law on Plaintiff's claim under the Massachusetts Anti-Dilution Act.

Respectfully submitted,

Date: March 31, 2006            /s/ Timothy A. Lemper
                                FINNEGAN, HENDERSON, FARABOW,
                                GARRETT & DUNNER, L.L.P.
                                901 New York Ave., N.W.
                                Washington, DC 20001

                                Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that this document and exhibits filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 31, 2006.