20710
FIELD

1

1            UNITED STATES DISTRICT COURT

2             DISTRICT OF MASSACHUSETTS

3    - - - - - - - - - - - - - - - x

4    LIFE IS GOOD., INC.,

5            Plaintiff,              Civil Action

6    vs.                            No. 04-cv-11290-REK

7    LG ELECTRONICS, U.S.A., INC.,

8    LG ELECTRONICS MOBILECOMM

9    U.S.A., INC., (formerly        ORIGINAL

10   LG INFOCOMM U.S.A., INC.),

11           Defendants.

12   - - - - - - - - - - - - - - - x

13       DEPOSITION OF ROBERT KLEIN, a witness called by

14   and on behalf of the Defendants, taken pursuant to

15   the provisions of the Federal Rules of Civil

16   Procedure, before Dana Welch, a Registered

17   Professional Reporter and Notary Public in and

18   for the Commonwealth of Massachusetts, at the

19   offices of Finnegan, Henderson, Farabow, Garrett

20   & Dunner, LLP, 55 Cambridge Parkway, Suite 700,

21   Cambridge, Massachusetts, on Friday, January 24,

22   2006, commencing at 10:31 a.m.

ACE-FEDERAL REPORTERS, INC.

41

1    phrase on it.

2        A.   Okay.

3             MR. KIRBY:   Which LG ad?

4    BY MR. RETTEW:

5        Q.   Any LG ad for an appliance that had "Life's

6    Good" on it.

7        A.   Something like what's in the second page of

8    Exhibit 2?

9             MR. KIRBY:   Just so the record is clear,

10   it's tab 2 to Exhibit 81.

11   BY MR. RETTEW:

12       Q.   Well, let's be even more specific.   Let

13   me --

14            MR. RETTEW:   Let's mark this as the next

15   exhibit, please.

16            (Marked, Exhibit 82, LG ad.)

17   BY MR. RETTEW:

18       Q.   Okay.   Mr. Klein, I've shown you what's

19   been marked as Exhibit 82.   Let's say this was the

20   stimulus used in an Eveready format.   Do you think

21   that that would be an appropriate way of measuring

22   whether there is or is not confusion in this case?

20710
FIELD

42

1        MR. KIRBY:  And by Eveready format,

2    you're referring to Mr. Klein's general

3    understanding as described earlier?

4        MR. RETTEW:  Yes.

5        THE DEPONENT:  No, I don't think this

6    would work in this case.

7    BY MR. RETTEW:

8    Q.   Why is that?

9    A.   The -- I think the awareness of Life is

10   good. is relatively low and the context of something

11   like this, I think, leads respondents to be thinking

12   about other similar types of products.  And so I

13   don't think this would be an appropriate -- I don't

14   think an Eveready format would be appropriate here.

15   Q.   What do you mean when you say you think the

16   awareness of Life is good. is relatively low?

17   A.   I think that if you were to ask people to

18   spontaneously name companies that make T-shirts, few

19   of them would answer Life is good. as a company that

20   makes T-shirts.  And so I think that low level of

21   awareness coupled with the difference of the

22   category makes it inappropriate in this kind of

20710
FIELD

43

1    setting.

2        Q.   So you'd agree that Life is good. is not

3    famous?

4            MR. KIRBY:   Object to the form.

5            THE DEPONENT:   I'm not sure.   When you

6    say famous, could you --

7    BY MR. RETTEW:

8        Q.   What's your understanding of the term

9    "famous"?

10       A.   There are a number of different situations

11   in which the word "famous" could be used.   I'm

12   familiar with the notion of a famous mark relative

13   to dilution.   And so in that case, it would be a

14   mark that was widely recognized by consumers,

15   buyers, customers.   You know, Coca-Cola is an

16   example of a famous mark.   So I don't think Life is

17   good. is in the category of Coca-Cola.

18       Q.   So using that definition, fair to say Life

19   is good. is not famous?

20       A.   Using that definition, yes.

21       Q.   Now, you also said that the stimulus I

22   showed you in Exhibit 82 would not be appropriate

20710
FIELD

90

1    awareness of various slogan's including "Life is

2    good." as well as recognition of different symbols

3    and logos.  And finally, sort of testing different

4    ways of showing people products.

5        Q.  Why did you do that?

6        A.  It's an important step in any survey

7    research design is to first get a better

8    understanding.  Often, your client's version of kind

9    of what people believe or know can be different than

10   what you actually find in the market and it's

11   important to test those things yourselves.

12       Q.  What did this pretest show?

13       A.  Pretest showed that -- that awareness of

14   Life is good. as a trademark was relatively low,

15   that awareness of LG was relatively high as a -- as

16   a company that most people associated with cell

17   phones.  And kind of if we, you know, showed people

18   the Life is good. emblem and LG's use of "Life's

19   Good" with the face and the initials LG, that there

20   was -- that people saw the connection and identified

21   that in connection as being related to the use of

22   the phrase "Life's Good."

20710
FIELD

107

1      Q.   Do you know the results of that question?

2      A.   No.

3      Q.   Who would know?

4      A.   Either of the people who conducted the

5   interviews.

6      Q.   Did they ever tell you what the results

7   were?

8      A.   It's my recall that to the extent that this

9   question was asked, the -- there was, I'd say,

10  little awareness of Life is good. or association

11  with any products.

12     Q.   What makes you say that?

13     A.   I think I just answered that.  I said to

14  the extent that I remember, that's what I remember.

15     Q.   When I say what makes you say that, is that

16  because Ms. Schussheim told you or --

17     A.   Yes, yes.

18     Q.   Did she tell you anything else on that

19  topic, or was that it?

20     A.   Not really, no, not that I recall.

21     Q.   Did that affect the survey in any way?

22     A.   I think it reinforced our prior -- that the