<u>**Preliminary Expert Witness Report**</u>
<u>**Prepared by Rany L. Simms**</u>

**I. Qualifications**

1. I am a former Administrative Trademark Judge of the United States Patent and Trademark Office's (USPTO) Trademark Trial and Appeal Board (TTAB), and served as an Administrative Trademark Judge from 1981-2004. In that capacity, I wrote hundreds of trademark opinions over the years in appeals from refusals to register trademarks (and service marks), in opposition proceedings brought against applications to register trademarks and service marks, and in cancellation proceedings seeking to cancel registered trademarks and service marks. I have also written numerous articles for the Trademark Reporter, a publication of the International Trademark Association, and have spoken on a number of occasions to various groups about practice and procedure before the Trademark Trial and Appeal Board. See resume below.

**II.   Materials reviewed as of February 1, 2006**

2. I have reviewed the Complaint and Jury Demand of Life is good, Inc. (plaintiff); Defendants' Answer, Affirmative Defenses, and Counterclaims of LG Electronics U.S.A., Inc. and LG Infocomm U.S.A., Inc. (defendants); portions of the depositions of John Jacobs and Albert Jacobs; the entire deposition of Thomas Kenney; Application Serial No. 74/633170, filed February 12, 1995, by Jacobs Gallery (Exhibit 43); correspondence between Jacobs Gallery and the USPTO in connection with this application (Bates Nos. 002426-002444 and 002670-002674); Application Serial No. 75066995, filed March 4, 1996, by Jacobs Gallery (Exhibit 47); electronic copies of the pleaded registrations

**Exhibit 14 to**
**Lemper Declaration**

of plaintiff (Reg. No. 2,025,737, issued December 24, 1996; Reg. No. 2,481,887, issued August 28, 2001; 2,692,561, issued March 4, 2003; and Reg. No. 2,826,245, issued March 23, 2004); and the Web sites of plaintiff and LG Electronics U.S.A., Inc.

### III. Compensation

3. The undersigned will be paid at the hourly rate of $400.00.

### IV. Opinions

4. I have been asked by counsel for LG Electronics U.S.A., Inc. to form and express opinions on the following two issues. I have reached such opinions on these two questions on the basis of the materials I have reviewed and on the basis of my expertise.

**A. Under USPTO practice and procedure, is the ornamental or decorative use of the words "LIFE IS GOOD" on plaintiff's products entitled to registration and corresponding rights as a trademark?**

5. On this issue, I conclude that, according to USPTO practice and procedure, use of words "LIFE IS GOOD" on plaintiff's products, such as T-shirts, sweatshirts, mugs, etc., in an ornamental or decorative fashion is not entitled to registration and corresponding rights, that only use of the words "LIFE IS GOOD" by plaintiff in a trademark manner should be considered as plaintiff's trademark, and that plaintiff's rights should not extend beyond its trademark use of these words.

6. As background, in this case the plaintiff's predecessor, Jacobs Gallery, attempted to register

in the USPTO, in Application Serial No. 74/633170, filed February 13, 1995, the words or slogan "LIFE IS GOOD" for the following goods: "Sportswear, namely T-shirts, sweatshirts, polo shirts, hats, jackets, pants, shorts, socks." Applicant, Jacobs Gallery, recited the dates of use of the asserted mark on these goods as June 1, 1994 (first use on the goods) and January 27, 1995 (first use on the goods in commerce). The Trademark Examining Attorney assigned to handle this application refused registration of this slogan, under Sections 1, 2 and 45 of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that applicant's use of this slogan was "ornamental as used on the goods" and that the proposed mark would be perceived "merely as a decorative or ornamental feature of the goods and not as an indicator of the source of the goods." See Office Action issued July 19, 1995 (Bates Nos. 002441-002444). However, in this Office Action, the Examining Attorney advised applicant that it could attempt to show that the slogan had acquired distinctiveness as a result of promotion of the subject matter for which registration is sought "*as a mark*" (emphasis in the original), by showing expenditures for such promotion, by submitting dealer and consumer statements of recognition of the mark, or as a "secondary source" by showing it is a trademark for other goods. Applicant was also advised that it "may overcome the refusal by providing substitute specimens which demonstrate use of the proposed mark in a non-ornamental fashion." The Examining Attorney advised, however, that such specimens would have to be supported by a declaration or affidavit that those specimens were in use as of a date at least as early as the filing date of the application (February 13, 1995).

    7. Applicant responded with argument that the slogan was a trademark as well as a statement from Albert Jacobs, the co-owner and principal of

applicant, and similarly worded statements from some retailers that the slogan had become distinctive of a line of casual clothing. The Examining Attorney maintained her refusal and issued a final refusal under the noted statutory sections that applicant's manner of use was merely ornamental in nature. That application became abandoned as a result of failure of applicant to respond to or appeal from the last Office Action issued February 21, 1996.

    8.   Jacobs Gallery filed a new application, Serial No. 75066995, on March 4, 1996, to register the words or slogan "LIFE IS GOOD" for goods identified as "sportswear, namely T-shirts, sweatshirts, shirts, hats, pants, and shorts." Applicant again recited dates of use of this asserted mark on these goods as June 1, 1994 (first use on the goods) and January 27, 1995 (first use on the goods in commerce). (These are the same dates of use that were set forth in the earlier application, which was rejected on the basis of ornamental or decorative use of this slogan.) This time, however, the application was supported by specimens in the nature of hang tags or labels attached to the goods. This application was approved and the mark was registered as Registration No. 2,025,737, issued December 24, 1996.

    9.   As the Examining Attorney indicated in the original application, when words, a phrase or a slogan are used ornamentally or decoratively, such use is not considered trademark use. Phrases or slogans that are merely informational in nature or are relatively common laudatory phrases or statements that may ordinarily be used in a particular trade or industry are not registrable. See Section 1202.04 of the Trademark Manual of Examining Procedure (TMEP), Fourth Edition, April 2005, citing such cases as *In re Volvo Cars of*

*North America Inc.*, 46 USPQ2d 1455 (TTAB 1998) (DRIVE SAFELY perceived as an everyday, commonplace safety admonition that does not function as mark); *In re Manco Inc.*, 24 USPQ2d 1938, 1942 (TTAB 1992) (THINK GREEN found unregistrable for weatherstripping and paper products, the Board stating, "[R]ather than being regarded as an indicator of source, the term 'THINK GREEN' would be regarded simply as a slogan of environmental awareness and/or ecological consciousness..."); *In re Remington Products Inc.*, 3 USPQ2d 1714 (TTAB 1987) (PROUDLY MADE IN USA, for electric shavers, held incapable of functioning as a mark, notwithstanding use of letters "TM" in connection with the prominent display of the slogan on packages for the goods and a claim of acquired distinctiveness); *In re Tilcon Warren, Inc.*, 221 USPQ 86 (TTAB 1984) (WATCH THAT CHILD held not to function as a mark for construction material notwithstanding long use, where the only use was on the bumpers of construction vehicles in which the goods were transported); and *In re Schwauss*, 217 USPQ 361 (TTAB 1983) (FRAGILE used on labels and bumper stickers does not function as a mark).

    10. More particularly, slogans or phrases used on items such as T-shirts, sweatshirts, jewelry and ceramic plates have been refused registration by the USPTO as ornamentation or decoration that purchasers will perceive as conveying a message rather than as indicating source of the goods. See TMEP Section 1202.03(f)(i), citing such cases as *Damn I'm Good Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357, 212 USPQ 684 (S.D.N.Y. 1981) ("DAMN I'M GOOD," inscribed in large letters on bracelets and used on hang tags affixed to the goods, found to be without any source-indicating significance); *In re Pro-Line Corp.*, 28 USPQ2d 1141 (TTAB 1993) (BLACKER THE COLLEGE SWEETER THE KNOWLEDGE primarily ornamental slogan that is not likely to be perceived as source indicator); *In re Dimitri's*

*Inc.*, 9 USPQ2d 1666 (TTAB 1988) ("SUMO," as used in connection with stylized representations of sumo wrestlers on applicant's T-shirts and baseball-style caps); *In re Astro-Gods Inc.*, 223 USPQ 621, 624 (TTAB 1984) ("[T]he designation 'ASTRO GODS' and design is not likely to be perceived as anything other than part of the thematic whole of the ornamentation of applicant's shirts."); and *In re Original Red Plate Co.*, 223 USPQ 836 (TTAB 1984) ("YOU ARE SPECIAL TODAY" for ceramic plates found to be without any source-indicating significance).

    11.    As the foregoing authority indicates, if a slogan or phrase is used in an ornamental or decorative manner, such as on the front of a T-shirt or on a ceramic mug or plate, that use is not considered trademark use and is not acceptable use for registration, according to USPTO practice and procedure. In this case, the phrase or slogan "LIFE IS GOOD" has been registered by plaintiff's predecessor, but only as a result of the submission of specimens (labels or hang tags) that showed traditional trademark use of these words.

    12.    Furthermore, as noted by the Examining Attorney who handled the application of the predecessor, plaintiff uses the slogan "LIFE IS GOOD" on the front of T-shirts, for example, in connection with human-like figures shown engaging in various sporting, enjoyable or other pleasurable activities, such as golfing, playing tennis, backpacking, fishing, barbecuing, playing a guitar around a campfire, and relaxing on a hammock. The USPTO refused to accept such use of these words as a trademark eligible for registration because of the non-trademark message conveyed by the words or phrase "LIFE IS GOOD," which do not indicate origin of the goods.

    13.    From a review of plaintiff's Web site, plaintiff continues to make that very same type of

ornamental or decorative use on a variety of its products including, for example, T-shirts, sweatshirts, beach towels, and mugs. As is also apparent from plaintiff's Web site, the ornamental or decorative use of the slogan "LIFE IS GOOD" with depictions of various sporting or pleasurable activities is indistinguishable in nature from plaintiff's ornamental or decorative use of such other words or phrases as "Gone fishin'" (with an image of a pick-up truck with fishing gear and a dog), "Go with the flow." (with a human-like figure in a kayak), and "Chill out." (with a man relaxing with a drink in a boat). Under USPTO practice and procedure, plaintiff's past and current use of the phrase or slogan "LIFE IS GOOD" in an ornamental or decorative manner, such as conspicuous use on the front of T-shirts, sweatshirts, beach towels and mugs, is not trademark use. This is especially the case in light of an earlier refusal known to the applicant, plaintiff's predecessor, that such use of this slogan or phrase is not considered trademark use by the USPTO, and where that earlier rejection of the phrase or slogan "LIFE IS GOOD" as a trademark was eventually overcome by one of the means suggested by the Examining Attorney (submitting specimens in the nature of hang tags or labels attached to the goods showing the asserted mark used in a traditional trademark manner and not ornamentally).

**B. Under USPTO practice and procedure, is a registrant's use of the registration symbol (R in a circle (®) or such words as "Registered TM") in connection with goods or services not identified in a registration, a misuse of the registration symbol?**

14. The answer to this question is straight-

forward. First, the owner of a mark registered in the USPTO may give notice that its mark is registered by displaying with the mark the words "Registered in U.S. Patent and Trademark Office," the abbreviation "Reg. U.S. Pat. & Tm. Off.," or the letter R enclosed within a circle, ®. See Section 29 of the Trademark Act of 1946, as amended, 15 U.S.C. § 1111. See also TMEP Section 906 discussing this statutory provision. However, as that TMEP section states, the registration symbol should be used only on or in connection with the goods or services that are listed in a registration. Further, that section indicates that the federal registration symbol is not to be used with marks that are not actually registered in the USPTO, even if an application is pending. That is, the registration symbol may not be used until the mark is actually registered. Furthermore, if this improper use is deliberate and intended to deceive or mislead the public or the USPTO, such use is considered fraud. See TMEP Sections 906.02 and 906.04, citing the cases of *Copelands' Enterprises Inc. v. CNV Inc.*, 945 F.2d 1563, 20 USPQ2d 1295 (Fed. Cir. 1991); and *Wells Fargo & Co. v. Lundeen & Associates*, 20 USPQ2d 1156 (TTAB 1991).

15. From my review of the materials noted above, the USPTO informed plaintiff or its predecessor at least three times (on August 17, 2000, December 18, 2000, and March 11, 2002) that its use of the registration symbol was improper because applicant was using the symbol when the goods in connection with which the words "LIFE IS GOOD" were being used were not listed in an existing registration in the USPTO. In fact, TMEP Section 906.03 specifically instructs examining attorneys to tell applicants that the records of the Office do not show that the mark with which the federal registration symbol is used on the specimens is registered, and that the registration symbol may not be used until a mark is registered

in the Office.

    16. I note that Mr. Albert Jacobs, plaintiff's president, stated that he believed that, once a mark was registered, it could be used on all the products made by the registrant, even though those products might not be covered by a registration. See A. Jacobs dep., pp. 239-40. Mr. Jacobs' belief is incorrect. Under USPTO practice and procedure, a mistaken belief on the part of applicant does not cure its misuse of the registration symbol, nor does it excuse any continued misuse of the registration symbol by such party for goods that are not identified in a federal registration.

Date:    February 1, 2006

*Rany L. Simms*
Rany L. Simms
Former Administrative
Trademark Judge,
Trademark Trial and
Appeal Board

**Resume of Rany L. Simms**

Former Administrative Trademark Judge, Trademark Trial and Appeal Board (TTAB) of the U.S. Patent and Trademark Office, located in Alexandria, Va.

B.A. degree from the University of Illinois, Champaign-Urbana, in 1969

J.D. degree from the University of Illinois College of Law in 1972

I joined the U.S. Patent and Trademark Office in 1972 as a Trademark Examining Attorney. I worked for the TTAB as an Interlocutory or Staff Attorney from 1975 until 1980. I became an Acting Member of the TTAB in 1980 and was an Administrative Trademark Judge (formerly called Member of the Trademark Trial and Appeal Board) since 1981. In this capacity, sitting in panels of three, I wrote hundreds of trademark opinions over the years in appeals from refusals to register trademarks (and service marks), in opposition proceedings brought against applications to register trademarks and service marks, and in cancellation proceedings seeking to cancel registered trademarks and service marks. I have written numerous articles for the Trademark Reporter (published by the International Trademark Association) and have spoken on a number of occasions to various groups about practice before the Trademark Trial and Appeal Board. I have been sent by the Office to help the Lithuanian and the Romanian Patent Offices develop procedures for handling trademark applications. I have also spoken at the International Intellectual Property Institute's Intellectual Property Law Workshops held in Ho Chi Minh City and in Hanoi, Vietnam, in October 2002, and at a similar program held in the Philippines in June 2002. I retired from the Office in December 2004.

I am admitted to practice in the state of Maryland.