UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIFE IS GOOD, INC.,                    )
     Plaintiff                     )
                      )
v.                                     )     C.A. No. 04-11290-WGY
                         )
LG ELECTRONICS U.S.A., INC.            )
and LG INFOCOMM U.S.A., INC.           )
     Defendants                    )

## PLAINTIFF'S LOCAL RULE 56.1 STATEMENT

Plaintiff Life is good, Inc. ("Life is good") submits the following statement pursuant to

LR 56.1.[1]

### I. Response to Defendants' Statement of Alleged Undisputed Facts

Defendants' Statement

1.    "Life is good" is a common, everyday English declarative expression, bordering

on a cliché, that has ordinary meaning as a positive and optimistic belief about life. (Lemper

Decl., Ex. 1 at ¶¶ 15,22, 42.) Plaintiff's owners admit as much. (Id, Ex. 2 at 67:3-6, 74:6-19,

Ex. 3 at 40:11-20, 56:1-7.)

Plaintiff's Response

1.    Plaintiff's owners did not admit that "Life is good" borders on a cliché or that it

is a common, everyday expression. The deposition testimony cited by LG does not support the

propositions for which they are cited. Moreover, "Life is good" is not a common, everyday

English declarative expression when used by plaintiff as a trademark to designate the source of

its goods. That use is established by Life is good's five U.S. trademark registrations for "Life is

good," including one registration (Registration No. 2,025,737) for "sportswear, namely T-

---

[1] The defendants failed to comply with LR 56.1 by failing to include a concise statement of material facts to which they contend there is no dispute. In order to provide its response as required by LR 56.1, the plaintiff has arranged each of the factual statements in defendants' memorandum in numbered paragraphs, and has provided a response to each numbered paragraph.

shirts, sweatshirts, shirts, hats, pants, and shorts" that is now incontestable.  See Affidavit of

Thomas E. Kenney ("Kenney Aff."),    ¶¶ 3-4 and Exh. B-C.  In addition, Life is good is the

owner of six Massachusetts state trademark registrations for the mark "Life is good."  Kenney

Aff., ¶5 and Exh. D.

    Defendants' Statement

    2.    Not surprisingly, the expression "Life is good" is frequently used in advertising

and on products to exploit the commercial appeal of its positive and optimistic message.  (Lemper

Decl., Ex. 1 at ¶¶ 15-23.) A search by Defendants' linguistic expert uncovered more than 5,000

commercial items bearing the expression "Life is good" that are not related to either party in this

case.  (Id., Ex. 1 at ¶ 23.) Examples of such products include buttons, tote bags, framed prints,

messenger bags, mouse pads, posters, stationery, greeting cards, books, songs and music albums,

calendars, signs, mugs, baby bibs, dish cloths, and, in particular, clothing such as t- shirts,

sweatshirts, and hats.  (Q4, Ex. 1 at ¶¶ 15-20, 23; Kidwell Decl., Exs. 1-39.) For example,

Hallmark has used the expression "Life is good" on its greeting cards since 1989.  (Lemper

Decl., Ex. 4.) Similarly, Natural Life Collections has used "Life is good" as an optimistic

message on various products since 1995.  (Id., Ex. 6.)

    Plaintiff's Response

    2.    Life is good does not dispute that third parties have occasionally used the phrase

"Life is good" in a commercial setting.  Life is good denies that there is widespread third party

use of "Life is good" in a manner that is likely to cause confusion with Life is good's marks or to

dilute the dintinctiveness of Life is good's marks.  With respect to the uses cited by LG, there is

little or no evidence of the commercial nature and extent of such uses.  Further, many of the uses

referenced in paragraph two of the defendants' statement of facts have largely ceased, due to

policing actions by Life is good.  For instance, in the Kidwell Declaration, referenced in

paragraph two of defendants' statement, the defendants list 39 examples of commercial use of

"Life is good."  Nineteen of those uses are products sold on Cafepress.com.  Those uses have

largely ceased, due to the efforts of Life is good and its counsel.  Numerous e-mails sent and received by Life is good's counsel in efforts to stop infringing activity on Cafepress.com are attached to the Kenney Aff. as Exhibit E.  Moreover, a current search of the Cafepress.com website for the products referred to in the Kidwell Affidavit confirms that the uses have largely ceased.  <u>See</u> Affidavit of Deborah Woodbury, Exhs. 4-7, 13-25, 27-28 ("Woodbury Aff.").

<u>Defendants' Statement</u>

3.    "Life is good" is also frequently used in advertising.  (Lemper Decl., Ex. 1 at ¶¶ 21-22.) The same or similar expressions have been used in nationwide advertising campaigns on television, on radio, and in print by companies such as The Hershey Company, Miller Brewing Company, Forbes, and Sears.  For example:

- Miller Brewing Company used "Life is good" in a national television advertising campaign, and from 1995 to 2003, owned federal trademark registrations for the marks "Life is good" and "We've got Miller Lite.  We're in Texas.  Life is good."

- The Hershey Company has used the slogans "Life's Good Between Reese's Cups" and "Life Is Good Between Reese's Cups" on its website, on nearly one hundred million candy wrappers, on promotional items, and in television advertising as part of a multimillion dollar national advertising campaign since 2004.

- Forbes has used "The Good Life" as a trademark for a consumer magazine since 1996, and owned a federal registration for that mark since 1998.

- Sears has used the slogan "Good Life.  Great Price." in national television and radio advertising since 2003, and owns a federal registration for that trademark.

(Lemper Decl., Exs. 5, 7-9.) Plaintiffs records show that it was aware of many of these uses, as well as uses by others like Ford, Wal-Mart, and the American Red Cross, and federal registrations for the marks "Life is good ... There's ice cream!" and "Life is good.  We make it better." (Lemper Decl., Ex. 2 at 29:13-19, 122:12-124:22, 208:5-209:12, 211:7-212:6, 213:9-15, 214:14-215:20, Ex. 3 at 90:2-12, 92:11-20, Ex. 10 at 85:4-15, 87:10-21, 89:2-17, 94:5-11,107:8-13, 111:18-112:14,114:7-115:9, 121:5-8,124:5-125:3,127:8-17,129:1-16, 130:13-131:18, 133:19-135:5, 136:7-137:2,143:11-145:17, Exs. 18-19.)

Plaintiff's Response

3.      Miller Brewing Company abandoned its advertising campaign using "Life is good" prior to Life is good making a decision whether to object to the use. Kenney Aff., ¶18. Similarly, the Hershey and Ford campaigns appear to be short-term advertising campaigns. Neither Forbes nor Sears uses any mark or advertising slogan that contains "Life is good." There is no evidence that the marks "Life is good…There's Ice Cream!" and/or "Life is good." We make it better." are actually used in commerce or, if so, to what extent they are used.  There is no evidence that Wal-Mart currently uses "Life is good."  The American Red Cross has ceased all use of "Life is good" after communications with plaintiff's counsel.  Kenney Aff., ¶¶7, 18 and Exh. F.

Defendants' Statement

4.      What Plaintiff sells is a message of optimism.  It does so by offering casual clothing and assorted accessories adorned with the expression "Life is good."  Plaintiff decided to use "Life is good" *as an expression* because it communicates an optimistic belief about human life. (Lemper Decl., Ex. 2 at 66:4-69:3, 74:6-19, 87:21-88:3,136:13-137:19, Ex. 3 at 14:7-20, 38:14-41:2, 55:13-56:7, 59:2-6.) Plaintiff considered using similar expressions, such as "Life's great.", "It's all good", "It's all great.", and "Ain't life great," before settling on "Life is good." (Id., Ex. 2 at 74:20-75:3.) Plaintiff uses "Life is good" in the form of a declarative sentence (i.e., with the capitalization and punctuation of a short sentence).  (Id., Ex. 2 at 83:3-84:18.)

Plaintiff's Response

4.      Plaintiff does not "sell" a message of optimism.  What the plaintiff sells is a variety of goods under the brand and mark "Life is good."  The fact that the "Life is good" brand emanates a message of optimism does not diminish the distinctive value of the "Life is good" mark.  The distinctiveness of that mark is evidenced by the numerous federal and Massachusetts state registrations owned by Life is good as well as its sales of more than $7.5

million in Massachusetts between 2001-2005 and its expenditure of more than $ 4 million marketing the "Life is good" trademark since 1998. Jacobs Aff., ¶6. The registrations are prima facie evidence that the mark is used in connection with the goods stated therein -- not to sell a message of optimism.

Defendants' Statement

5.    Plaintiff admits that it does not own proprietary rights in the ordinary inherent meaning of the words "Life is good" as an expression communicating a message of optimism. (Lemper Decl., Ex. 10 at 95:14-96:14.)

Plaintiff's Response

5.    Plaintiff admits that it does not own proprietary rights in the ordinary inherent meaning of the words "Life is good," to the extent that there is such an ordinary inherent meaning of those words. Life is good does, however, own proprietary rights in its distinctive "Life is good" trademark as evidenced by its federal and Massachusetts registrations, its substantial sales of goods under that trademark and its marketing efforts with respect to that trademark. Kenney Aff., Exh. C-D; Jacobs Aff. ¶¶6-7.

Defendants' Statement

6.    Like its use of "Life is good," Plaintiff uses other common sayings on its products, examples of which include:



(Id., Ex. 1 at p. 20.) And like its use of "Life is good" to adorn its products, Plaintiff uses these (and other) common sayings as declarative expressions to communicate a positive message. Further, like its use of "Life is good" as an expression, Plaintiff does not claim (or at least appear to claims) these other common declarative sayings as trademarks. (Id., Ex. 2 at 98:18-101:5, Ex. 3 at 27:16-30:16.)

Plaintiff's Response

6.     Life is good admits that it uses other phrases or sayings on its products,
including those listed within paragraph six of defendants' statement.  However, unlike the "Life
is good" trademark, those phrases are not used on hang-tags, labels, on the back of products or
elsewhere to identify the source of the products and the defendant has not adopted these phrases
as either its corporate name or as its brand.  Jacobs Aff. ¶9.

Defendants' Statement

7.     Plaintiff attributes the commercial appeal and success of its products to the fact
that "Life is good," like these other declarative expressions, communicates an optimistic message
that resonates with consumers and elicits a positive response.  (Id., Ex. 2 at 65:4-69:3, 71:16-
73:8, 87:21-88:3, Ex. 3 at 36:4-37:18, 39:11-42:17, 44:6-12, 55:22-56:7, 109:8-110:15,111:4-
16.)

Plaintiff's Response

7.     Plaintiff admits that the "Life is good" brand and trademark communicate an
optimistic message that resonates with consumers.  Life is good does not agree that the
message is generated solely from the words placed at the front of its shirts or other products.
Rather, Life is good maintains that the distinctive quality of its brand as represented by its
trademark is substantially responsible for its commercial success.  Jacobs Aff., ¶10.

Defendants' Statement

8.     Although the evidence demonstrates that consumers recognize "Life is good" *as
an expression* communicating a message of optimism, it does not demonstrate that consumers
recognize the words "Life is good" *as a trademark* identifying any of the companies who make
products bearing that expression.  Plaintiff produced no evidence that consumers recognize or
buy Plaintiffs products because they identify Plaintiff's use of "Life is good" as a trademark for
a particular company, as opposed to a positive and optimistic message.  Plaintiff admits that it

does not have any consumer surveys, studies, or research to show that people recognize "Life is good" as a trademark identifying Plaintiff. (Lemper Decl., Ex. 2 at 92:17-93:5, Ex. 10 at 102:20-103:2.)

Plaintiff's Response

8.     There is an abundance of evidence indicating that consumers recognize the plaintiff's "Life is good" mark as a source identifier. That evidence includes the plaintiff's five U.S. and six Massachusetts registered trademarks for "Life is good," the plaintiff's $7.5 million in sales of products under the "Life is good" trademarks in Massachusetts between 2001-2005 and the plaintiff's expenditure of $ 4 million since 1998 marketing its goods under the "Life is good" trademark. Jacobs Aff., ¶6 . Numerous magazine articles have publicized the Life is good brand. Kenney Aff., Exhibit A. In addition, in the particular market for the sale of casual clothing and related goods, Massachusetts consumers recognize the "Life is good" brand and mark as identifying the source of a particular line of casual clothing and related goods. Jacobs Aff., ¶8.

Defendants' Statement

9.     Plaintiff's survey expert, Mr. Robert Klein, admits that consumer awareness of "Life is good" is "relatively low," and that it is not famous for purposes of dilution. (Id, Ex. 12 at 42:9-43:20, 90:13-15.) That conclusion, based on an empirical pretest survey that he conducted, led Mr. Klein to specifically design a consumer survey (in support of Plaintiff's trademark infringement claim) for a trademark that *lacks* significant consumer awareness. (Id., Ex. 12 at 41:18-43:1.) According to Mr. Klein, his survey pretest showed "little awareness of Life is good, or association with any products." (Lemper Decl., Ex. 12 at 107:6-11.)

Plaintiff's Response

9.     Mr. Klein's opinion and deposition testimony speak for themselves. Mr. Klein did not conduct a survey of consumer awareness, he did not formally opine on whether the

"Life is good" mark is "famous" for purposes of dilution, and his statement was not made with respect to consumer recognition within Massachusetts specifically.  In short, defendants have mischaracterized Mr. Klein's testimony.

<u>Defendants' Statement</u>

10.    Defendants' linguistic expert, Dr. Ronald Butters, agrees that "Life is good" is not well known to consumers as a trademark, let alone one that identifies Plaintiff.  Based on evidence that "Life is good" is an expression frequently used by others, Dr. Butters concludes that consumers primarily understand "Life is good" as a commonplace expression of optimism, and not as a trademark identifying Plaintiffs products.  (<u>Id.</u> Ex. 1 at ¶ 27.)

<u>Plaintiff's Response</u>

10.    Dr. Butters is a linguist who purports to testify about what is and is not well known to consumers as a trademark.  As such, Dr. Butters' "opinion" is of limited evidentiary value, if any.  Among other things, Mr. Butters failed to consider the plaintiff's five U.S. and six Massachusetts registered trademarks for "Life is good" and failed to consider the plaintiff's substantial sales of products bearing the "Life is good" mark, and the plaintiff's extensive marketing efforts with respect to the mark.  Dr. Butters also failed to consider the numerous magazine articles that have publicized the Life is good brand.  Kenney Aff., ¶¶3-5 and Exh. B-D; Jacobs Aff., ¶¶6-7.

<u>Defendants' Statement</u>

11.    Defendants' marketing expert, Dr. Maureen Morrin, confirms that "Life is good" is weak as a trademark.  According to Dr. Morrin, Plaintiffs $60 million in annual sales represent a very small fraction of the sales of those companies Plaintiff identifies as its competitors, such as Nike ($10 billion), Adidas/Reebok ($12 billion), and Quicksilver ($1.2 billion), or by other clothing companies such as Levi Strauss ($4.1 billion).  *QxL,* Ex. 13 at pp. 4-5,16.) Similarly, Plaintiffs estimated $1.3 million annual advertising budget (consisting of non-

traditional forms of advertising) is again infinitesimal to the overall $2.5 billion annually spent on apparel advertising, and a literal blip of the best known apparel brands' advertising, such as Nike ($573 million) and The Gap ($525 million).  (Lemper Decl., Ex. 13 at p. 5.)  Further, Plaintiff does not enjoy significant market share.  For example, Plaintiffs $60 million in sales in 2005 (for all of its products) would have represented only 1.6% of total U.S. t-shirt sales in 1998.  (Id.)  Based on these and other facts, Dr. Morrin concludes that Plaintiffs "Life is good" trademark "has not achieved any significant, let alone high level of brand awareness in the marketplace, and thus does not possess commercial fame and/or distinctiveness that trademark dilution presupposes."  (Id.)

> Plaintiff's Response

11.    Dr. Morrin's "opinion" on the strength of the plaintiff's trademark is inadmissible because she is not qualified to offer an opinion as to the relative strength of any particular mark.  Dr. Morrin's opinion is not based on any principles and methods that are recognized within any field as reliable and that are reliably applied to the facts of this case.  In addition, Dr. Morrin's opinion is based on standards under the Federal Trademark Dilution Act which are irrelevant to the Massachusetts Anti-Dilution Act and are based on data involving transactions outside of Massachusetts which are irrelevant to a claim under the Massachusetts Anti-Dilution Act.  In any event, despite Dr. Morrin's "opinion," plaintiff's "Life is good" mark is a strong trademark.  This fact is established by the incontestability of registration no. 2,025,737, as well as the registration of four other "Life is good" marks with the U.S.P.T.O. and six "Life is good" registrations in Massachusetts.  In addition, while Dr. Morrin downplays the plaintiff's sales of products under the "Life is good" trademark, in fact the plaintiff generated sales in Massachusetts in excess of $7.5 million on products under the "Life is good" trademark between 2001-2005, and has expended more than $ 4 million marketing products under that mark.  Further, numerous magazine articles have publicized the Life is good brand.  Kenney

Aff., ¶¶3-5 and Exh. B-D; Jacobs Aff., ¶6.

Defendants' Statement

12.    Further, Defendants' expert on U.S. Patent and Trademark Office ("PTO")

practice, Mr. Rany Simms (a former Administrative Law Judge of the PTO's Trademark Trial

and Appeal Board), explains that sayings like "Life is good" are not registrable as trademarks

when they are used ornamentally on products to communicate messages. (Id., Ex. 14 at ¶ 9-10.)

This is why, Mr. Simms explains, the PTO rejected Plaintiffs efforts to register "Life is good"

as a trademark in 1995—because consumers would view "Life is good" appearing across the

front of Plaintiffs clothing *as an expression* communicating a message of optimism, and not as a

trademark identifying Plaintiff. (Id, Ex. 14 at ¶ 6, Ex. 10 at 29:12-31:18, Ex. 20.)  Further, as-

noted by Mr. Simms, Plaintiff continues to use "Life is good" on its clothing in the same

ornamental manner that led the PTO to refuse registration.

Plaintiff's Response

12.    Mr. Simms' "opinion" as to the registerability of a trademark is inadmissible

speculation and is not the product of reliable principles and methods recognized within any

field that are applied reliably to the facts of this case.  Mr. Simms' "opinion" is purely a legal

conclusion based on his training as a lawyer.  Mr. Simms is not currently an employee of the

U.S.P.T.O., and did not consider the merits of any of plaintiff's trademark applications while he

was an employee of the U.S.P.T.O.  His "opinion" is nothing more than guesswork and has no

evidentiary value.  In fact, his "opinion" is directly contradicted by the fact that the U.S.P.T.O.

has permitted registration of the plaintiff's "Life is good" mark on five separate occasions.

Kenney Aff. ¶¶3-4 and Exh. B-C.

Defendants' Statement

13.    Defendants' survey expert, Mr. Robert Reitter, confirms that "Life is good" is not

well known to consumers as a trademark as used on Plaintiffs products.  Mr. Reitter conducted

an empirical consumer survey showing that consumers attribute no more *trademark significance* to Plaintiffs use of "Life is good" on the fronts of its t-shirts than they do with the admittedly generic saying "We're #1" on the front of t-shirts.  (Lemper Decl, Ex. 15 at p. 7.)

Plaintiff's Response

13.    Mr. Reitter's survey is flawed because, among other things, it failed to ascertain from respondents why they gave the various responses they gave and because the control group was not shown the infringing mark and instead was shown designations that were as likely to cause confusion as the designations at issue.  To the extent that Mr. Reitter purports to opine on the degree to which the Life is good mark is well known to consumers, Mr. Reitter's survey and report failed to consider the impact of plaintiff's incontestable trademark and its other four U.S. registered trademarks, and its six Massachusetts registered trademarks.  Further, Mr. Reitter's survey and report failed to consider plaintiff's sales in Massachusetts of more than $7.5 million on products bearing the mark "Life is good" between 2001-2005, and its expenditure of more than $ 4 million in marketing goods under that trademark since 1998.  Kenney Aff., ¶¶3-5 and Exh. B-D; Jacobs Aff., ¶6.  Also, Mr. Reitter did not consider the numerous magazine articles that have publicized the Life is good brand. Kenney Aff., Exh. A.

Defendants' Statement

14.    Defendants market digitally sophisticated, premium-positioned consumer electronics products (e.g., televisions, appliances, computer hardware, cell phones) under the "LG" house mark and the LG logo, which appear in their advertising and on their products.[6] (Lemper Decl., Ex. 16 at 42:8-18,149:21-150:5, Ex. 17 at 33:4-10.)  Plaintiff admits that the parties' products are unrelated.  (Id.. Ex. 2 at 51:3-52:7.)

Plaintiff's Response

14.    The plaintiff admits that some of the parties' respective products are unrelated.

However, the defendants sell and/or give away thousands of T-shirts and similar goods bearing

the "Life's Good" mark that are the same or similar to the goods offered for sale by the plaintiff

under its "Life is good" mark.  These products include T-shirts, hats, coffee mugs, water bottles,

and bags.  Photographs of such products bearing the "Life's Good" trademark are attached to

the Kenney Aff. as Exh. I.[2]  In addition, Life is good sells products that are "related" to the

defendants' appliance and electronic goods.  The "related" products sold by Life is good

include furniture, cellphone charms and coolers.  Jacobs Aff., ¶11.  Given the number of related

products sold by LG and the size of the parties and nature of the goods, consumers are likely to

perceive all of the goods at issue as coming from a single diversified source or as falling under

the ambit of a relationship of sponsorship, affiliation or other connection between the parties.

    <u>Defendants' Statement</u>

    15.    In late 2003, Defendants began using "Life's Good" as a corporate tagline in

advertising and promotional materials for their products.  (Lemper Decl., Ex. 16 at 35:13-15,

37:11-21.) The tagline appears with the "LG" mark and LG logo as follows:



The majority (but not all) of Defendants' advertising includes the "Life's Good" tagline.

(Lemper Decl., Ex. 16 at 42:19-43:5.)  The "Life's Good" tagline does not appear on

Defendants' products themselves.  (<u>Id.</u>, Ex. 16 at 37:18-21, Ex. 17 at 56:4-8.) In addition to

traditional advertising, Defendants engage in the common corporate practice of distributing free

promotional items (e.g., gum, pens, calculators, shirts, hats, coffee mugs) to its employees, trade

partners, and at trade shows.  (Lemper Decl., Ex. 16 at 139:1-141:10, Ex. 17 at 104:25-105:11,

106:23-108:19.)

---

[2] Within defendants' statement, the defendants assert that the plaintiff "does not claim that the LG logo violates plaintiff's rights in the 'Jake' character."  That is not completely accurate. The plaintiff contends that defendants' use of the letters "LG" and the LG logo in combination with the mark "Life's Good" violates plaintiff's rights in its "Life is good" trademark and its "Jake" trademark. <u>See Complaint.</u>

Plaintiff's Response

15.     The defendants refer to "Life's Good" as a corporate tagline and, at their

30(b)(6) depositions, asserted that they do not use "Life's Good" as a trademark. Second

Affidavit of Thomas Kenney ("Second Kenney Aff.), Exh. P. However, the defendants'

Korean parent, LG Corp., has applied for registration of "Life's Good" with the U.S.P.T.O.

Kenney Aff., ¶8 and Exh. G. In fact, the "Life's Good" mark does appear on certain of

defendants' promotional products , including T-shirts, hats, coffee mugs, water bottles, and

bags, and on the boxes for goods including air conditioners. Kenney Aff., ¶¶10-11 and Exh. I.

Furthermore, a jury can readily infer from LG's presentation of "Life's Good" alone that the

phrase is used as a trademark.

Defendants' Statement

16.     For well over two years, Defendants have used the "Life's Good" tagline. Each

year, Defendants have spent more than $100 million in advertising, and generated more than $8

billion in sales. (Id, Ex. 16 at 18:16-19, 42:4-7, Ex. 17 at 105:23-106:1, 107:7-23,108:12-18.)

Plaintiff's Response

16.     Defendants do not use "Life's Good" merely as a tagline, but use it as a

trademark as evidenced by the pending trademark application before the U.S.P.T.O. and their

advertisement in which they claim that "Life's Good" is a trademark of LG Electronics, Inc.

Kenney Aff., ¶¶8-9 and Exh. G-H. See response to ¶15, above.

Defendants' Statement

17.     Despite Defendants' extensive sales and advertising, Plaintiff has produced no

evidence that Defendants' use of the "Life's Good" corporate tagline has actually "blurred" the

distinctiveness of "Life is good" as a trademark of Plaintiff. Plaintiff has no research, studies, or

surveys to show any decrease in consumer recognition of "Life is good" as a trademark of

Plaintiff during that time. (Lemper Decl., Ex. 2 at 92:17-93:5, Ex. 10 at 102:20-103:2.)

Similarly, Plaintiff has produced no evidence that Defendants' use of "Life's Good" has

lessened consumer demand for Plaintiff's products. To the contrary, Plaintiffs sales have

substantially grown every year since Defendants began using "Life's Good" in advertising and

promotional materials for their unrelated consumer electronics. (Id. Ex. 2 at 88:9-89:1, 258:4-

259:1, Ex. 21.) In 2003, the year Defendants began using "Life's Good" (December 2003),

Plaintiffs sales were approximately $23 million. (Id, Ex. 21.) In 2004, the first full year

Defendants used the "Life's Good" tagline, Plaintiffs sales increased well over 50% to

approximately $39 million. (Id.) In 2005, Plaintiffs sales again jumped another 50% to

approximately $60 million. (Id., Ex. 2 at 227:14.)

   Plaintiff's Response

   17. The defendants have used and are continuing to use "Life's Good" so prominently and

to such a broad segment of the actual and prospective customers of Life is good who are exposed

to the "Life is good" mark that such persons are highly likely to have formed multiple

associations around the "Life is good" mark as a result of LG's practices. Accordingly, it is likely

that LG has already diluted the distinctive quality of the "Life is good" mark and it is likely that

the distinctive quality of the "Life is good" mark will be further diluted by defendants' continued

use. By defendants' own admission, they spend more than $100 million per year in advertising,

and the majority of defendants' advertising includes the use of "Life's Good." Defendants'

Memo., pp. 8-9. Defendants' goods are sold in at least 125 stores in Massachusetts. Kenney

Aff., ¶13. Thus, there can be little doubt that plaintiff's customer base is exposed to defendants'

overwhelming use of the "Life's Good" mark. Growth in sales for Life is good's products does

not disprove actual or likely dilution.

II. **Plaintiff's Statement of Material Facts in Dispute**

A.      The Plaintiff and its "Life is good" Trademark

1.      Life is good is a Massachusetts corporation in the business of designing, manufacturing, distributing and selling a wide array of products including, without limitation, t-shirts, hats, sweatshirts, shorts, socks, pajamas, baby and children's clothing, flying discs, bumper stickers, coffee mugs, water bottles, pet products, bags, furniture, coolers, and cell phone charms. Jacobs Aff., ¶2. Attached to the Jacobs Aff. as Exhibit A is Life is good's most recent catalog that shows many of the products offered for sale by Life is good.

2.      In 1994, Life is good's predecessor, Jacobs Gallery, developed the trademark "Life is good" as well as the logo mark "Jake," which is depicted as follows:



Jacobs Aff., ¶3.

3.      Since 1994, the plaintiff has continuously and pervasively utilized its "Life is good" trademark within this district and throughout the United States. Life is good uses the trademark on its products, on hang tags, displays, boxes, packaging and labels, at charitable festivals that it sponsors, at its website (www.lifeisgood.com), and in catalogs and other places. The plaintiff uses its "Life is good" trademark on every product it sells, typically on a hang tag or label. Jacobs Aff., ¶4.

4.      Life is good sells its products under the "Life is good" trademark throughout the United States, in numerous foreign countries, and at more than 280 outlets in Massachusetts. These outlets include third-party retailers such as City Sports, Olympia Sports, REI, Ski Market, Eastern Mountain Sports, The Rugged Bear and Dick's Sporting

Goods.  In addition, "Life is good" brand goods are sold at independent retailers such as The

Fresh Pond Golf Course in Cambridge, Champions Sporting Goods in Belmont, and the

Marblehead Sports Shop.  Further, "Life is good" products are sold at company owned stores

on Newbury Street in Boston and on State Street in Newburyport, and at outlets exclusively

dedicated to the sale of "Life is good" brand products, including Everything's Jake in

Harvard Square, Cambridge and Harbor Goods in Gloucester.  Also, "Life is good" brand

products are sold in Massachusetts and worldwide at Life is good's website

(www.lifeisgood.com) and through websites operated by third-parties such as

www.backpackingdeals.com and www.paintedkiwi.com.  Jacobs Aff., ¶5.

     5.     Life is good has generated substantial sales of products under the "Life is

good" brand and trademark.  Since 1998, Life is good has sold more than $150 million in

products bearing the "Life is good" mark, including $7.5 million of such products in the

Commonwealth between 2001-2005.  Additionally, since 1998 Life is good has incurred

more than $4 million marketing its goods under the "Life is good" mark.  These marketing

efforts include catalogs, packaging and labels, point of purchase displays, Life is good's

website, and attendance at trade shows.  Jacobs Aff., ¶6.

     6.     Further, Life is good has held charitable festivals (the Life is good Backyard

Festival in summer and the Life is good Pumpkin Festival in autumn) in Boston since 2004.

More than 150,000 people have attended these festivals.  Further, approximately 80,000

articles of "Life is good" clothing have been sold in connection with these festivals, with

proceeds benefiting families of children facing life threatening illnesses, and Life is good has

incurred more than $500,000 in out-of-pocket expenses holding these festivals.  The festivals

in Boston have generated more than $460,000 for charities.  The festivals have been

advertised in such media outlets as WBOS radio, Fox Net Sports, WCVB TV Channel 5,

Boston.com, the Improper Bostonian, and the Tab Newspapers.  Jacobs Aff., ¶7.

7.      Life is good and its "Life is good" brand products have been the subject of numerous newspaper and magazine articles in Massachusetts and elsewhere. Exemplars of such newspaper and magazine articles concerning Life is good and its brand products are attached to the Kenney Aff. as Exhibit A.

8.      Life is good has registered five (5) "Life is good" trademarks with the U.S.P.T.O. for various goods. One registration, covering "Sportswear, namely T-shirts, sweatshirts, shirts, hats, pants, and short," has become incontestable pursuant to 15 U.S.C. § 1065.[3] In addition, Life is good has registered six (6) "Life is good" trademarks with the Massachusetts Secretary of State. Kenney Aff., Exh. B-D.

9.      "Life is good" is recognized by the public as a distinctive trademark and brand. Hundreds of consumers have approached Albert Jacobs, Life is good's president, in Massachusetts and told him that they were fans and/or supporters of the "Life is good" brand of products. By way of example, back on May 20, 2006, a man named Chris Holland told him "I love your brand. I wear it all the time." Similarly, on April 24, 2006, Guy Neil, who is the General Manager of the Atlantic Fish Company in Boston, told him "Your brand is doing great. I see the bags everday." Jacobs Aff., ¶8.

10.     Life is good has taken substantial steps to protect its rights in its "Life is good" marks by challenging third-party uses of similar marks that may cause a likelihood of confusion or dilute the strength of the "Life is good" marks. Life is good and its counsel have sent dozens of cease and desist letters or otherwise pursued third-parties who have adopted designations similar to "Life is good." The vast majority of these third-parties have ceased their use after being contacted by Life is good or its counsel. By way of example, the defendants rely upon the Kidwell Declaration as evidence of third-party use of "Life is

---

[3] In addition, Life is good's "Jake" trademark has become incontestable pursuant to 15 U.S.C. § 1065. Kenney Aff., ¶4.

good." Nineteen of the 39 uses listed in the Kidwell Declaration are for t-shirts and related products sold on www.cafepress.com, an internet clearinghouse for parties that wish to sell goods. Life is good's general counsel, Karen Oliver, has sent numerous e-mails to cafepress.com and the actual sellers demanding that the sales cease. Those e-mails are attached to the Kenney Aff. as Exhibit E. Life is good understands that most if not all of the sales of products bearing the designation "Life is good" on cafepress.com have ceased. Kenney Aff., ¶6; Woodbury Aff., Exhs. 4-7, 13-25, 27-28.

11.     In addition, Life is good has successfully stopped other third-party uses referenced by the defendants in their memorandum. For example, The American Red Cross has ceased use of "Life is good" after communication with Life is good's counsel. Kenney Aff., ¶7.

B.      Defendants' Use of "Life's Good"

12.     In 2003 the defendants began using the "Life's good" trademark in connection with their electronics and home appliances products. Although the defendants maintain that they did not base the "Life's good" mark on the plaintiff's "Life is good" trademark, the defendants cannot explain the circumstances surrounding the selection of the "Life's good" mark. Second Kenney Aff., Exh. O-P.

13.     The defendants assert that they use "Life's good" as a "tagline" to advertise their products. At defendants' Rule 30(b)(6) deposition, Jason Lee, defendants' designee, testified under oath that the defendants do not use "Life is good" as a trademark. Second Kenney Aff., Exh. P.

14.     In fact, there can be no legitimate dispute that the defendants do use "Life's good" as a trademark. First of all, LG Corp., the Korean parent of the defendants, has filed a trademark application with the U.S.P.T.O. for a mark that includes "Life's good." In an advertisement for their refrigerator in the July 2004 issue of Bon Appetit, defendants placed

a notice at the bottom of the advertisement stating "LG Design and Life's Good are trademarks of LG Electronics, Inc." Despite their assertions in their memorandum, the defendants do not use "Life's good" solely as a "tagline" to advertise their goods. Defendants use "Life's good" on the packaging for at least some of their products, including air conditioners. Further, defendants place "Life's good" on a number of products that they either sell or offer as promotions, including t-shirts, hats, coffee mugs, bags and water bottles. Kenney Aff., ¶11 and Exh. I.

15.    The defendants' products are sold by at least 125 retailers in Massachusetts. These include 18 Best Buy stores, 17 Circuit City Stores, and 39 Home Depot Stores. Kenney Aff., ¶13.

16.    Both Life is good products and the defendants' products are offered for sale at the Cambridgeside Galleria, the Landmark Center in the Fenway, the Westgate Mall in Brockton, and at shopping plazas in Worcester, Millbury, Leominster, and Holyoke. Further, both Life is good products and defendants' products are offered for sale on Arsenal Street in Watertown, Worcester Street in Natick, Providence Highway in Dedham, Middlesex Turnpike in Burlington, South Washington Street in North Attleboro, Iyanough Road in Hyannis, Route 134 in South Dennis, and Highland Avenue in Seekonk. In addition, the Verizon store located at 225 Newbury Street, Boston, approximately two blocks from Life is good's flagship store at 285 Newbury Street, not only sells defendants' cellphones, but has a prominent sign near the entrance to the store featuring the defendants' "LG" and "Life's good" trademarks. Kenney Aff., ¶14.

17.    By their own admission, the defendants spend $100 million per year in advertising, and the majority of their advertisements contain "Life's Good." Defendants' Memo., pp. 8-9. Obviously, a portion of that substantial advertising reaches Massachusetts consumers.

18.    There are numerous examples of customer confusion resulting from the defendants' use of "Life's good." For example, numerous people have asked the principals of Life is good "are you making cell phones?" or "are you involved in LG Electronics?" Life is good's president, Albert Jacobs, has been told that "I love my 'Life is Good' cellphone," and his brother, John Jacobs, has been told words to the effect of "don't tell me that you guys are making cellphones now." Kenney Aff., Exh. K-L.

19.    Similarly, Shawn White of Life is good was asked by a friend (referring to one of defendants' advertisements) "Life's good...that's your company, right?" and "how's biz at Life's Good?" Carol Scully, a Life is good representative, was approached by a neighbor who had purchased one of defendants' refrigerators. The neighbor stated "I thought LIG was just selling T-shirts and hats. When did they get into appliances?" A potential customer walked into the Life is good store on Newbury Street in Boston and told Kat McGurdy, a Life is good employee, that she was confused about "Life is good" after seeing an LG ad in Times Square. Kenney Aff., ¶17 and Exh. M.

20.    In addition, a woman shopping for a refrigerator at Best Buy was told by the sales associate that the product was made by "Life is Good." A woman named Karen Lynch has told Life is good's customer service representative that when she bought an LG flatscreen television in Cambridge, Massachusetts she was told by the sales person that LG stood for "Life is good." Ms. Lynch told Life is good's customer service representative that she told everyone that LG was the same company that sold cool hats and T-shirts. Kenney Aff., Exh M.

21.    Further, Mike Savourin, a Life is good employee, told his former employer that he was leaving to work for Life is good. His employer exclaimed "I was at Best Buy last night, looking at flat screens, and who made it, but Life is Good." A consumer named Rich Horvatic visited Life is good's website, www.lifeisgood.com to report that his LG

cellphone had broken.  Kenney Aff., Exh. L-M..

LIFE IS GOOD, INC. ,
By its attorneys,

/s/
Robert L. Kirby, Jr. (BBO#550538)
Mark D. Robins (BBO#559933)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 021110
(617) 345-1000

Robert R. Pierce (BBO#549172)
Thomas E. Kenney (BBO#561590)
PIERCE & MANDELL, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
June 1, 2006                                          (617) 720-2444

### CERTIFICATE OF SERVICE

I, Robert L. Kirby, Jr., hereby certify that a true copy of the above document was served upon the attorneys of record for each other party electronically on June 1, 2006.

/s/
Robert L. Kirby, Jr.