UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIFE IS GOOD, INC.,<br><br>           Plaintiff,<br><br>      v.<br><br>LG ELECTRONICS U.S.A., INC., and<br>LG ELECTRONICS MOBILECOMM<br>U.S.A., INC.,<br><br>           Defendants. | Civil Action No. 04 11290 WGY<br><br>Hon. William G. Young |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

Mark Sommers (MA BBO# 545297)
Douglas A. Rettew (*pro hac vice*)
Timothy A. Lemper (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001
Telephone:  202-408-4000
Facsimile:  202-408-4400

Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO#656282)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142
Telephone:  617-452-1600
Facsimile:  617-452-1666

Plaintiff's opposition to Defendants' motion to strike Plaintiff's jury demand is based on two principal grounds, both of which are flawed.

First, Plaintiff wrongly asserts that Defendants' prayer that the "Court" award "attorneys' fees and costs" (among other relief) on their counterclaims is a claim for the legal remedy of "damages," entitling Plaintiff to a jury trial, because that prayer references Section 38 of the Lanham Act, 15 U.S.C. § 1120. However, attorneys' fees and costs are not "damages" within the meaning of Section 38, and are not legal remedies triable to a jury. To the contrary, attorneys' fees and costs are equitable remedies rooted in the Court's equity jurisdiction that may only be recovered on a fraudulent registration counterclaim *as a matter of equity*. Defendants' prayer for attorneys' fees and costs "pursuant to" Section 38 does not raise a legal claim, and purposefully did not include a specific request for "damages." Nonetheless, Defendants are moving to amend the "Prayer for Relief" on their counterclaims to withdraw their request for "attorneys' fees and costs" and their reference to Section 38 concurrently with this reply brief to, among other things, remove any doubt that this case involves purely equitable issues. That amendment renders moot Plaintiff's claim that it has a right to a jury trial.

Second, Plaintiff wrongly suggests that an advisory jury is uniquely suited to trademark cases and would not be more burdensome or inefficient than a bench trial. Plaintiff's argument confuses the role of the fact finder in trademark cases and improperly assumes that a jury may serve as a proxy for the consuming public. Taken to its logical end, Plaintiff's arguments would require a jury in *every* trademark case, supplanting expert testimony based on controlled consumer survey methodology with the gut reactions of an unrepresentative group of lay jurors. Plaintiff also overlooks the inefficiency of impaneling an *advisory* jury, whose decision is not binding and would still require the Court to make its own findings of fact and conclusions of law.

An advisory jury creates more work for the parties and the Court, not less.  Plaintiff fails to cite, and Defendants have not found, a single reported case where this Court has impaneled an advisory jury to decide a trademark infringement or dilution claim.  Plaintiff presents no compelling argument why the Court should do so here.

## I.  NO RIGHT TO A JURY TRIAL EXISTS BECAUSE OF DEFENDANTS' PRAYER FOR ATTORNEYS' FEES AND COSTS

### A.  Defendants' Prayer for Attorneys' Fees and Costs Is a Request for Equitable Relief, Not Legal Relief

Plaintiff's argument that it is entitled to a jury trial on Defendants' prayer for attorneys' fees and costs pursuant to Section 38 is wrong for three reasons.

First, Plaintiff incorrectly argues that Defendants' prayer for attorneys' fees and costs is a request for "damages" under Section 38.[1]  It is well established that attorneys' fees and costs are not "damages" within the meaning Section 38.[2]  See Aromatique, Inc. v. Gold Seal, 28 F. 3d 863, 875-77 (8th Cir. 1994); Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 989 F.2d 985, 991 n.5 (8th Cir. 1993), cert. denied 510 U.S. 928 (1993); Exxon Corp. v. Exxene Corp., 696 F. 2d 544, 550-51 (7th Cir. 1982); Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 578 F.2d 727, 734 (8th Cir. 1978); Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 438-439 (2d Cir. 1974);[3]

---

[1]  Plaintiff incorrectly argues that Defendants "asserted a *counterclaim* under Section 38 of the Lanham Act, [15 U.S.C. § 1120]."  (Opposition, p. 1, emphasis added.)  As Defendants' pleading clearly shows, Defendants asserted counterclaims under 15 U.S.C. §§ 1052 and 1064, and only referenced 15 U.S.C. § 1120 in their prayer for relief.  (Defendants' Amended Answer, Affirmative Defenses, and Counterclaims, Document No. 23, pp. 13-16.)

[2]  See also Summit Valley Indus., Inc. v. United Bhd. of Carpenters, 456 U.S. 717, 723 (1982) ("The American Rule presumes the word 'damages' means damages exclusive of fees.").

[3]  Blue Bell implicitly overruled two prior district court decisions holding that attorneys' fees and costs were recoverable as "damages" under Section 38.  497 F.2d at 438-439 (discussing Merry Hull & Co. v. Hi-Line Co., 243 F. Supp. 45 (S.D.N.Y. 1965) and Academy Award Products, Inc. v. Bulova Watch Co., 129 F. Supp. 780 (S.D.N.Y. 1955)).  One unpublished case decided after Blue Bell held that attorneys' fees and costs are "damages" under
(continued)

3

Louis Ender, Inc. v. General Foods Corp., 467 F.2d 327, 330-31 (2d Cir. 1972), cert. denied, 410 U.S. 930 (1973); Landstrom v. Thorpe, 189 F.2d 46, 54 (8th Cir. 1951).  Indeed, Plaintiff concedes, as it must, that attorneys' fees and costs are not "damages" within the meaning of Section 38.  (Opposition, p. 5, citing Aromatique, Exxon, and Blue Bell.)  Defendants specifically and purposefully did not ask for "damages" in their prayer for relief to limit their prayer to equitable remedies to be determined by the "Court," not a jury.

Second, Plaintiff argues that Defendants' prayer for attorneys' fees and costs must be a claim for "damages" under Section 38 on the ground that there is no other basis for recovering attorneys' fees and costs.  This is not so.  In Blue Bell, the Second Circuit held that in appropriate cases a party asserting a Section 38 counterclaim may recover its attorneys' fees and costs "*as a matter of equity* quite apart from Section 38."  497 F.2d at 439 (emphasis added).  Blue Bell is still good law and was cited with approval by the Seventh Circuit in Exxon and by Plaintiff in its brief.  Exxon, 696 F.2d at 550-51; Opposition, p. 5.  Thus, under the case law, attorneys' fees and costs are either recoverable as a matter of equity or are not recoverable at all.

Defendants' prayer for attorneys' fees and costs "pursuant to" Section 38 is admittedly inartfully pled because, under Blue Bell, such relief is available "as a matter of equity quite *apart from Section 38*."  497 F.2d at 439.  But that technically incorrect prayer does not transform an equitable claim into a legal one.  In Dairy Queen, upon which Plaintiff relies, the Supreme Court held that the right to a jury trial does not depend on the choice of words used in the pleadings,

---

(continued)
Section 38.  Polo Fashions v. Extra Special Products, No. 77 Civ. 5023, 1980 U.S. Dist. LEXIS 16290 (S.D.N.Y., March 5, 1980).  The district court in that case relied on Blue Bell but omitted the Second Circuit's reference to the equitable basis for awarding fees and costs.  To the extent the district court's decision in Polo Fashions held that fees and costs are "damages" under Section 38, it is contrary to the Blue Bell decision by the Second Circuit—its reviewing court.

4

but rather on the nature and availability of the relief sought. 369 U.S. at 477-78. There, the Supreme Court specifically held that the plaintiffs' request for "an accounting to determine the exact amount of money ow[ed]" stated a claim for legal relief, even though it was improperly pled as an equitable claim for an accounting. Id. at 477-78. As Dairy Queen makes clear, the equitable nature of Defendants' prayer for attorneys' fees and costs, and the unavailability of those remedies as "damages" under Section 38, makes them indisputably equitable remedies, even though pled pursuant to Section 38.[4]

Finally, Plaintiff wrongly assumes that attorneys' fees and costs are legal remedies triable to a jury. To the contrary, it is well established that awards of attorneys' fees and costs are equitable remedies rooted in "the historic equity jurisdiction of the federal courts." Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 164-166 (1939).[5]

Awards of attorneys' fees and costs have traditionally been made by the court, not the jury, because such awards are uniquely within the Court's expertise and beyond the practical abilities and limitations of most lay jurors.[6] See 10 Wright, Miller & Kane, Federal Practice and

---

[4] Indeed, for that very reason, it cannot be said that Defendants' request for an Order canceling and denying Plaintiff's trademark registrations and applications is a claim for "damages" or other legal relief merely because it is referenced in the prayer for relief "pursuant to 15 U.S.C. §§ . . . 1120" (among other sections of the Lanham Act). (See Opposition, pp. 2-6; Defendants' Amended Answer, Affirmative Defenses, and Counterclaims, Document No. 23, p. 16, ¶ a.) Under Plaintiff's reasoning, if a party improperly requested an injunction "pursuant to" Section 38, it would be treated as a legal claim, not an equitable one.

[5] See also Hall v. Cole, 412 U.S. 1, 5 (1973) ("[T]he power to award [attorneys'] fees is part of the original authority of the chancellor to do equity in a particular situation"); Wheeless v. Gelzer, 765 F. Supp. 741, 744 (N.D. Ga. 1991) ("[T]he allowance of attorney's fees and other expenses as court costs has long been considered 'part of the historic equity jurisdiction of the federal courts.'") (quoting Sprague); 10 Wright, Miller & Kane, Federal Practice and Procedure, § 2675.1, p. 361 (2005) (noting "the equitable genesis of the authority to award attorney's fees"); id., § 2665, p. 201 & n.17 (noting the "equitable origins of contemporary cost practice" as one basis for making the award of costs should a judicial function rather than a jury function).

[6] See Ross v. Bernhard, 396 U.S. 531, 538 n.10 (1970) (noting that the "practical abilities

(continued)

5

Procedure, § 2675.1, p. 361 (2005) (noting "the inappropriateness as well as the inefficiency of having a jury compute costs" as another basis for making the award of costs a judicial function rather than a jury function). Awards of attorneys' fees involve factors such as the reasonableness of the time expended, the prevailing rates charged in the community for similar work, the availability of adequate local counsel, customary billing rates, the experience of the attorney, the complexity of the work, and equitable considerations—all of which are more familiar to and appropriately handled by the Court. Id., § 2675.1, pp. 361, 366, 370-379.

Not surprisingly, federal courts have held that a request for attorneys' fees and costs on purely equitable claims under the Lanham Act does not raise a jury trial right.[7] Thus, Defendants' prayer for attorneys' fees and costs on their counterclaims, even though incorrectly referenced in the prayer as "pursuant to" Section 38, is a claim for equitable relief, not legal

---

(continued)
and limitations" of juries is a factor in determining whether an issue is legal or equitable).

[7] See, e.g., Sanijet Corp. v. Jacuzzi Inc., No. 3:01-CV-0897-P, 2002 U.S. Dist. LEXIS 2463, at *6-7 (N.D. Tex., Feb. 14, 2002) ("It is well settled that an award of attorney's fees under [Section 35] is equitable in nature and is to be decided by the court, and not by a jury"); Nikon, Inc. v. Ikon Corp., 803 F. Supp. 910, 928 (S.D.N.Y. 1992) ("an award of attorney's fees under [Section 35 of] the statute is equitable in nature and is to be decided by the court, and not by a jury"); Emmpresa Cubana del Tabaco v. Culbro Corp., 123 F. Supp. 2d 203, 211 (S.D.N.Y. 2000) ("a claim for attorneys' fees and costs under [Section 35 of] the Lanham Act does not entitle a party to a trial by jury"), rev'd in part on other grounds, 399 F.3d 462 (2d Cir. 2005); Ringling Bros. v. Utah Div. of Travel Dev., 955 F. Supp. 598, 605 (E.D. Va. 1997) ("the availability of a costs remedy, by itself, provides no basis for a constitutionally mandated jury right"), reversed in part on other grounds, Moseley v. V Secret Catalogue, 537 U.S. 418, 433 (2003). Courts have reached the same holding in non-trademark cases. See, e.g., Northgate Homes v. City of Dayton, 126 F.3d 1095, 1099 (8th Cir. 1997) ("Northgate's request for [attorneys'] fees and costs does not alter the fundamentally equitable nature of its claim for declaratory judgment"; affirming denial of jury trial on claims for attorneys' fees and costs); Whiting v. Jackson State Univ., 616 F.2d 116, 122 n.3 (5th Cir. 1980) (the inclusion of a request for attorney's fees and costs "does not raise the right to a jury in an otherwise purely equitable action"); Wheeless v. Gelzer, 765 F. Supp. 741, 744 (N.D. Ga. 1991) ("[T]he mere inclusion of a request for attorney's fees, where Plaintiff's other claims are exclusively equitable in nature, does not entitle Defendant to a jury trial pursuant to the Seventh Amendment.").

6

relief. As such, Plaintiff is not entitled to a jury trial.

### B. Plaintiff Relies on Cases That Are Not on Point and Ignores Relevant Holdings in the Cases It Cites

The cases cited by Plaintiff do not support its claim that a request for attorneys' fees and costs pursuant to Section 38 is a legal claim properly tried to a jury. Rather, those cases recognize the right to a jury trial only on claims for compensatory "damages" under Section 38. Further, in those cases that did address claims for attorneys' fees and costs, the courts held that such remedies are not "damages" under Section 38. Gilbert/Robinson, 989 F.2d 985, 991 (8th Cir. 1993), Exxon, 696 F. 2d at 550-51.

Plaintiff also ignores the holding in Exxon, which contradicts rather than supports Plaintiff's argument. In Exxon, the defendant asked the jury to award its attorneys' fees as a form of "damages" under Section 38, rather than moving the court for a fee award. 696 F. 2d at 551. The jury awarded the defendant "damages" of $250,000, comprised entirely of attorneys' fees. Id. at 550. On appeal, the Seventh Circuit held that the defendant could not recover attorneys' fees as "damages" under Section 38. Id. at 550-51. The court went on to hold, however, that "[i]f attorney's fees are allowable in a section 38 case," such awards would presumably be awarded by the *court* and not by the *jury*. Id. For both of these reasons, the court held that it was error for the district court to submit the defendant's claim for attorneys' fees to the jury, and reversed the jury's award of $250,000 in attorneys' fees as "damages" under Section 38. Id. at 551. Exxon thus rejects Plaintiff's contention that Defendants' request for attorneys' fees and costs is one for "damages" under Section 38 properly tried to a jury, and accepts Defendants' contention that their request for the "Court" (not the jury) to award

7

"attorneys' fees and costs" (not damages) is one of equity to be decided by the Court.[8]

### C. The Amendment of Defendants' Counterclaims to Delete the Reference to Section 38 and the Request for "Attorneys' Fees and Costs" Leaves No Doubt That Plaintiff Has No Right To A Jury Trial

Although Defendants believe Plaintiff is clearly not entitled to a jury trial on Defendants' prayer for attorneys' fees and costs pursuant to Section 38, Defendants are filing, concurrently with this reply brief, a motion seeking leave to amend the "Prayer for Relief" in their counterclaims to delete the reference to Section 38 and the request for "attorneys' fees and costs." Defendants' amendment removes any possible doubt that this case involves purely equitable issues, and renders moot Plaintiff's arguments that it is entitled to a jury trial.[9]

## II. AN ADVISORY JURY IS NOT BETTER SUITED TO DECIDE TRADEMARK CASES, AND WOULD BE MORE BURDENSOME AND INEFFICIENT

Plaintiff's arguments for an advisory jury misplaces the fact finder's role in trademark cases and underestimates the burden and inefficiency of impaneling an advisory jury.

### A. An Advisory Jury is Not a Proxy for the Ordinary Consuming Public

Plaintiff's argument rests on the faulty premise that a handful of jurors from the same geographic area constitute a representative cross-section of the relevant consuming public, such that the jurors can simply decide the case by determining whether they are personally confused.

---

[8] Similarly, Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), contradicts rather than supports Plaintiff's claim. While Dairy Queen recognized the right to a jury trial on damages and "incidental" legal claims, as Plaintiff argues, it did not hold that a request for attorneys' fees and costs is a claim for damages or other legal relief, "incidental" or not. In fact, the case did not even involve a claim for attorneys' fees and costs.

[9] Defendats are also dropping their request for attorneys' fees and costs on their counterclaims because discovery has shown that it will be difficult for Defendants to establish that Plaintiff fraudulently procured its trademark registrations for the express purpose of bringing vexatious litigation. See Blue Bell, 497 F.2d at 439. As such, this amendment is also made to streamline the issues for trial.

(Opposition, pp. 7-8.)[10]  This argument fails in two respects.

First, an advisory jury is not a proxy for the relevant consuming public.  A lay jury drawn from the same geographic area may be competent and effective to express the standards of morality, decency, and justice in a particular community (see Opposition, p. 7, discussing NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435 (E.D.N.Y. 2003)), but it is not a representative cross-section of the relevant consumers of the parties' products, particularly where, as here, those products are sold nationwide.  Parties in trademark cases typically engage experts to design and conduct consumer surveys under the rigors of established scientific methodologies to ensure the results are reliable and projectable across the universe of relevant consumers.  In this case, both parties have retained experts who have conducted consumer surveys.  While lay juries are competent to consider such evidence, they are no substitute for such evidence.[11]

Second, Plaintiff's argument ignores the proper role of the trier of fact in trademark infringement cases, contravening the basic principle that the trier must not reach a decision based on whether it personally finds the marks confusing, but rather on whether an *appreciable number* of ordinary purchasers of the parties' products in the marketplace are likely to be confused.[12]  In

---

[10]  Plaintiff does not argue that a jury is better suited to make the more complex determination of whether Defendants' use of "Life's Good" blurs or lessens the distinctive value of "Life is good" as a trademark identifying Plaintiff.  For the same reason that there is no right to a jury trial on Plaintiff's infringement and unfair competition claims, there is no right to a jury on its dilution claim.  See Ringling Bros. v. Utah Div. of Travel Dev., 170 F.3d 449, 465 (4th Cir. 1999).

[11]  Taken to its logical conclusion, Plaintiff's argument would permit consumer surveys of just six to twelve people from one geographic area as representative of the entire national purchasing public.  Neither statistical science nor the courts condone such a result.  See General Motors Corp. v. Cadillac Marine & Boat Co., 226 F. Supp. 716, 737 (W.D. Mich. 1964) (150 people in single area not adequate to sample entire U.S. market); Exxon Corp. v. Xoil Energy Resources, Inc., 552 F. Supp. 1008, 1021 (S.D.N.Y. 1981) (194 people interviewed at New York City train stations not projectable over national market).

[12]  International Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103

(continued)

his treatise on trademark law, Professor McCarthy explains that the trademark infringement determination "is not a subjective judgment as to whether the judge, jury or Trademark Examiner would personally be confused, but rather, whether the ordinary, prudent customer in the marketplace would likely be confused." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:63 (4th ed. 2001). McCarthy emphasizes that "the fundamental issue is whether the ordinary person in the marketplace is likely to be confused, whether the decision-maker personally agrees or not." Id. at § 23:58. Following this reasoning, the First Circuit held that it was improper for this Court to deny a preliminary injunction in a trademark case based on the fact that the judge personally was not confused between the parties' marks, rather than on whether the relevant consuming public was likely to be confused. See Chart House, Inc. v. Bornstein, 636 F.2d 9, 10-11 (1st Cir. 1980).[13]

### B. Plaintiff Understates the Inefficiency of an Advisory Jury

Plaintiff further contends that the supposed efficiencies of a bench trial over jury trial are "more apparent than real." (Opposition, p. 8.) Plaintiff's argument is incorrect in two respects.

First, the Supreme Court has rejected Plaintiff's argument. The Supreme Court has held that "a jury trial is more burdensome than a bench trial" because "[t]he parties may challenge the

---

(continued)
F.3d 196, 200-201 (1st Cir. 1996) (holding that the law requires a showing of a likelihood of confusion among "an appreciable number" of consumers, and that isolated instances of confusion do not prove probable confusion).

[13] The Eighth Circuit has similarly held that the trier of fact must determine the likelihood of confusion in a trademark case based on "what a reasonable purchaser in market conditions would do," and not on what the trier of fact would do. Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 504 (8th Cir. 1987). Other courts have likewise taken the view that the fact finder must "determine, not dictate, the consumers' state of mind." 3 McCarthy at § 23:58 (citing cases). These courts have taken a contrary view to the Fourth Circuit's suggestion that juries are better suited than judges to determine trademark cases. (See Opposition, pp. 7-88, quoting Anheuser-Busch Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992)).

selection of the venire; the jury itself must be impaneled; [and] witnesses and arguments must be prepared more carefully . . . ." United States v. Goodwin, 457 U.S. 368, 383 (1982). Although Goodwin was a criminal case, courts have reached the same conclusion in civil cases. See Sprague v. General Motors Corp., 145 F.R.D. 418, 420 (E.D. Mich. 1992) ("Usually, jury trials are much more time consuming than bench trials, as they include voir dire, motions in limine, jury instructions, etc."); Rosen v. Dick, 83 F.R.D. 540, 544 (S.D.N.Y. 1979) ("A bench trial always moves more expeditiously than a jury trial.")

Second, Plaintiff's argument overlooks the inherent inefficiency of using an *advisory* jury. Impaneling an advisory jury imposes an even greater burden and expense on the Court, the public, and the parties because an advisory jury's findings of fact are not binding on the Court. Even if an advisory jury is impaneled, the Court still must enter its own findings of fact and conclusions of law, just as it must do in a bench trial. Fed. R. Civ. P. 52(a). According to one court, "[t]hat requirement, and the reluctance to take days or weeks of jury person's lives for service as mere advisors, appear to count for the virtually universal non-use of advisory juries." Percan-Elmer Corp. v. Computer Vision Corp., 732 F.2d 888 (Fed. Cir.), cert. denied, 469 U.S. 857 (1984). Another court noted that "it makes absolutely no sense to this Court to have to be bound by a jury verdict when the Court has already determined that no right to a jury trial exists on the basic issues in this case." Transmatic, Inc. v. Gulton Indus., Inc., 835 F. Supp. 1026, 1032 (E.D. Mich. 1993), aff'd, 53 F.3d 1270 (Fed. Cir. 1995).

The potential for even greater inefficiencies in trying this case to an advisory jury is apparent from one of the cases cited by Plaintiff, where the advisory jury impaneled by the court failed to reach a unanimous verdict. See NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 466 (E.D.N.Y. 2003). To the extent some members of an advisory jury find no likelihood of

11

confusion and other members find confusion likely but for different reasons, an advisory jury would be of questionable assistance to the Court.  The inefficiencies of an advisory jury are also demonstrated by the Gateway case cited by Plaintiff.  (Opposition, pp. 7-8.)  There, after conducting a trial before an advisory jury, the court disregarded the jury's verdict in a decision that was upheld on appeal by the Eighth Circuit.  See Gateway, Inc. v. Companion Prods., No. 01-4096-KES, 2003 U.S. Dist. LEXIS 25497, at *4 (D.S.D. Dec. 19 2003), aff'd 384 F.3d 503, 507 (8th Cir. 2004).  See also C.D. Fleet Co. v. SmithKline Beecham Consumer Health Care, 131 F.3d 430, 434 (4th Cir. 1997) (affirming district court's rejection of advisory jury's verdict).

This Court is perfectly capable, and well suited, to try the equitable claims in this case without the need for an advisory jury.

## CONCLUSION

For the reasons set forth in this brief and the brief supporting their motion, Defendants respectfully request that the Court grant Defendants' Motion to Strike Plaintiff's Jury Demand.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.

Date:  June 1, 2006                     /s/  Timothy A. Lemper

Attorneys for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 1, 2006.

/s/  Timothy A. Lemper