# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIFE IS GOOD, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>LG ELECTRONICS U.S.A., INC., and<br>LG ELECTRONICS MOBILECOMM U.S.A.,<br>INC., (formerly LG INFOCOMM U.S.A., INC.)<br><br>       Defendants. | Civil Action No. 04 11290 WGY<br><br>Hon. William G. Young |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT ON PLAINTIFF'S TRADEMARK DILUTION CLAIM

Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142
Telephone: 617-452-1600
Facsimile: 617-452-1660

Mark Sommers (MA BBO# 545297)
Douglas A. Rettew (*pro hac vice*)
Timothy A. Lemper (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001
Telephone: 202-408-4000
Facsimile: 202-408-4400

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.     AS THE PARTY WITH THE BURDEN OF PROOF AT TRIAL, PLAINTIFF WAS OBLIGATED TO PRESENT EVIDENCE TO SUPPORT ITS CLAIM ...............2

II.    SUMMARY JUDGMENT IS WARRANTED AS A MATTER OF LAW ON PLAINTIFF'S MASSACHUSETTS ANTI-DILUTION ACT COUNT ...........................2

III.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT "LIFE IS GOOD." IS NOT A DISTINCTIVE TRADEMARK.............................3

        A.     The Massachusetts Anti-Dilution Act Requires Proof of Distinctiveness Beyond Mere Registration or Validity as a Trademark ...........................................3

        B.     Plaintiff Fails to Raise a Genuine Issue for Trial That "Life is good." Lacks the Distinctiveness Required for Protection under M.G.L. Ch. 110B, § 12 ............6

                1.     Defendants' Evidence Shows That Consumers View Plaintiff's Use of "Life is good." Primarily as a Common Expression, Not as a Distinctive Trademark ................................................................................6

                2.     Plaintiff's Evidence Fails to Show That Consumers View "Life is good." as a Distinctive Trademark, and Not as a Common Expression ......8

                        a.     Plaintiff Fails to Present Direct Evidence That Consumers Recognize "Life is good." as a Distinctive Trademark...................9

                        b.     Plaintiff's Registrations Fail to Show That Consumers Recognize "Life is good." as a Distinctive Trademark.................10

                        c.     Plaintiff's Media Coverage Confirms That It Uses "Life is good." as a Common Expression ....................................................11

                        d.     Plaintiff's Sales and Advertising Fail to Show That Consumers Recognize "Life is good." as a Distinctive Trademark.................11

                        e.     Plaintiff's Enforcement Efforts Show that "Life is good." is Frequently Used on Products and in Advertising ..........................12

IV.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THERE IS NO LIKELIHOOD OF "DILUTION BY BLURRING" ....................12

        A.     "Blurring" Requires Evidence That A Mark is Unique and Likely to be Blurred ................................................................................................................12

B.      Plaintiff Fails to Raise A Genuine Issue of Material Fact That "Life is good." Is A Unique Trademark ..............................................................................13

C.      Plaintiff Presents No Evidence That Defendants' Use of "Life's Good" Has Blurred any Trademark Distinctiveness of "Life is Good." ..................................14

V.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THERE IS NO LIKELIHOOD OF "DILUTION BY CONFUSION" .................14

A.      Plaintiff Applies The Wrong Legal Standard For Dilution By Confusion ...........14

B.      No Genuine Issue of Material Fact Exists That There is No Dilution by Confusion Under the Correct Standard .................................................................17

1.      Defendants' Well-Known "LG" Mark Prevents Any Likelihood of Confusion and the Marks Carry Different Contextual Meanings .............17

2.      Plaintiff's Relatively Inexpensive Products are Not Related to Defendants' Expensive Products and Promotional Giveaways ................18

3.      There is No Evidence of Actual Confusion  Among an Appreciable Number of Consumers ...........................................................................19

CONCLUSION.....................................................................................................................20

## INTRODUCTION

Plaintiff opposes Defendants' motion for summary judgment on Plaintiff's claim under the Massachusetts Anti-Dilution Act by (1) disputing the applicable legal standards, (2) raising issues of fact that are not material to the ultimate disposition of this count, and (3) relying on unsupported factual innuendo grounded in attorney argument. None of Plaintiff's points, collectively or individually, suffices to defeat Defendants' motion.[1]

Plaintiff cannot meet its burden of showing the level of "trademark" distinctiveness to the common declarative expression "Life is good." required under the first prong of the Massachusetts Anti-Dilution Act, as that standard has been applied by this Court and the First Circuit over the past four decades. Ignoring the intervening 40 years of judicial application of the Massachusetts dilution statute by the federal courts, Plaintiff relies on the Massachusetts Supreme Judicial Court's 1958 and 1965 decisions in Skil Corp. v. Barnet and Great Scott Food Market v. Sunderland Wonder. Plaintiff's disregard of the intervening precedent comes as no surprise, for this Court's and the First Circuit's holdings doom its Massachusetts dilution claim.

Even assuming Plaintiff could raise a material issue of fact under its outdated reading of the statute's legal standard, Plaintiff nonetheless cannot meet its burden of showing Defendants' clever corporate tagline "Life's Good," which plays off the well-known consumer house mark LG (ranked among the top 100 brands in the world by the leading brand valuation service, with an estimated brand value of $2.6 billion) and which is used to advertise and promote Defendants and their LG branded consumer electronics, will "blur" whatever trademark "uniqueness and individuality" Plaintiff enjoys in the ubiquitous colloquial saying "Life is good."

The single most important dispositive fact remains undisputed: "Life is good." is first and foremost an everyday saying, not an exclusive proprietary expression coined by Plaintiff and

---

[1] Citations are to Defendants' Memorandum in Support of Motion for Summary Judgment on Plaintiff's Trademark Dilution Claim ("Defs.' Mem."), Plaintiff's opposing memorandum ("Pl.'s Opp."), and the Declarations of Danny Awdeh ("Awdeh Decl.") and Dana Nicoletti ("Nicoletti Decl."). The Awdeh and Nicoletti declarations are being filed with this Reply.

owned by it in gross. "Life is good." was blurred the day Plaintiff adopted this handy, oft-used phrase to adorn the fronts of its products; not years later when Defendants began using "Life's Good" as a global corporate tagline. Indeed, it is Plaintiff's own schismatic use of "Life is good.", as both an optimistic statement ornamenting its products and as a trademark designating the source of its products, that most blurs and dilutes "Life is good." and prevents it from serving as a "unique" identifier of Plaintiff.

## ARGUMENT

### I.    AS THE PARTY WITH THE BURDEN OF PROOF AT TRIAL, PLAINTIFF WAS OBLIGATED TO PRESENT EVIDENCE TO SUPPORT ITS CLAIM

As the party without the burden of proof, Defendants need only point out the absence of evidence to support Plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once Defendants met that burden, the pendulum swung to Plaintiff to oppose the motion by presenting facts that show the existence of a "genuine issue for trial." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986). It has failed to do so.

To establish a genuine issue for trial, Plaintiff may not rest upon mere allegation, conclusions, or denials in its pleadings. Id.; 11 James Wm. Moore et al., Moore's Federal Practice § 56.13[1] (3d ed. 2005). It cannot rely on "evidence that is merely colorable or suggestive . . . or evidence that lacks substance . . . or evidence that is inherently incredible." Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996). Its evidence cannot be "conjectural or problematic," but "must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Mesnick v. General Elex. Co., 950 F.2d 816, 822 (1st Cir. 1991). It cannot rely on the possibility of "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### II.    SUMMARY JUDGMENT IS WARRANTED AS A MATTER OF LAW ON PLAINTIFF'S MASSACHUSETTS ANTI-DILUTION ACT COUNT

The Massachusetts Anti-Dilution Act protects "the distinctive quality of a mark registered under this chapter, or a mark valid at common law . . . ." M.G.L. ch. 110B, § 12. To

prevail on its claim under the Massachusetts Anti-Dilution Act, Plaintiff must prove two elements:  (1) distinctiveness; and (2) likelihood of dilution.  Plaintiff urges application of low legal standards for both elements, specifically, (1) that Plaintiff need only show that its mark is registered or valid at common law and (2) that Defendants' mark is identical or similar to Plaintiff's mark.  This, however, is directly contrary the First Circuit's and this Court's rulings indicating that the dilution standard is "a rigorous one."  Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 137 (D. Mass. 1999), aff'd 232 F.3d 1 (1st Cir. 2000) (discussing I.P. Lund Trading v. Kohler Co., 163 F.3d 27 (1st Cir. 1998)).

## III.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT "LIFE IS GOOD." IS NOT A DISTINCTIVE TRADEMARK

### A.    The Massachusetts Anti-Dilution Act Requires Proof of Distinctiveness Beyond Mere Registration or Validity as a Trademark

The First Circuit and this Court require proof of a higher level of distinctiveness to obtain injunctive relief under the Act than the level of distinctiveness required to show that a mark is a valid trademark.  Far from protecting all valid trademarks, the decisions of this Court, and its reviewing Circuit Court, have limited the Act's protection to all but the "strongest" and "most distinctive" marks that are "well known to the public . . . [as] a synonym for a particular source of products."  (Defs.' Mem. 12); ITT Corp. v. XTRA Corp., 1985 U.S. Dist. LEXIS 23332, at *40 (D. Mass. 1985); Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 697 (1st Cir. 1979) (statute protects only "the strongest" marks); Visa Service, Inc. v. State Street Bank & Trust Co., 1980 U.S. Dist. LEXIS 11620, at *31 (D. Mass. 1980) (statute protects only "the most distinctive" marks); see also Pignons S.A. v. Polaroid Corp., 657 F.2d 482, 494 (1st Cir. 1981) (finding a genuine issue of fact as to distinctiveness where the plaintiff's evidence could support a support a finding that its mark "is a strong mark well known to the public, used frequently as a synonym for quality of a very high degree").

As explained in Defendants' moving brief, this Court has previously found particular trademarks to be valid and protectable, but nonetheless lacking in the level of distinctiveness required to obtain injunctive relief under the Massachusetts Anti-Dilution Act.  See Defs.' Mem.

12-14, ITT, 1985 U.S. Dist. LEXIS 23332, at *31-32; Visa Service, 1980 U.S. Dist. LEXIS 11620, at *25; Church of the Larger Fellowship v. Conservation Law of New England, 1983 U.S. Dist. LEXIS 15855, at *17, 20 (D. Mass. 1983); Mr. Boston Seafoods Corp. v. Mr. Boston Distiller, Inc., 315 F. Supp. 574, 575-77 (D. Mass. 1970) (applying M.G.L., ch. 110, § 7A).

This Court's decision in Mr. Boston Seafoods is particularly instructive. In that case, the trademark owner had used the marks "Mr. Boston" and "Old Mr. Boston" for over 23 years, owned federal registrations for both marks, made "very substantial expenditures for advertising," and achieved "annual sales of a very substantial nature dollarwise." Id. at 575, 577. Even though this Court found that the trademark owner's marks were sufficiently distinctive to be entitled to protection under *trademark infringement* law, it held that the marks were not such "strong marks well known to the public" to be entitled to protection under the Massachusetts *trademark dilution* statute. Id. at 576-77.

Ignoring decades of precedent in the First Circuit, Plaintiff contends that it need only prove ownership of a valid trademark to prove "distinctiveness" under the Act. Plaintiff's argument is based on two cases decided by the Massachusetts Supreme Judicial Court 40+ years ago, during the infancy of the original Massachusetts Anti-Dilution Act.[2] See Pl.'s Opp. 4-6, citing Great Scott Food Market, Inc. v. Sunderland Wonder, Inc., 348 Mass. 320 (1965); Skil Corp. v. Barnet, 337 Mass. 485 (1958).

But even under Skil and Great Scott, Plaintiff's argument fails. In two of the earliest decisions interpreting the Act, the First Circuit held that the Act did not require courts to award injunctive relief where the plaintiff owns a valid mark, "no matter how weak the plaintiff's mark may be," to protect "whatever distinctive quality the plaintiff's mark may have. Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 544 (1st Cir. 1957); see Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177, 179-80, 185-86 (1st Cir. 1949). The First Circuit held that it would

---

[2] The original Act, enacted in 1947 and codified at M.G.L., ch. 110, § 7A, was repealed in 1973 and recodified at M.G.L. ch. 110B, § 12.

construe the statute as *permitting* but not *requiring* injunctive relief "until the Supreme Judicial Court of Massachusetts gives clear indication to the contrary." Esquire, 243 F.2d at 544.

The SJC's decisions in Skil and Great Scott relied on those First Circuit decisions, noted their permissive construction of the Act, and followed those cases rather than rejected them. Skil, 337 Mass. at 489-91; Great Scott, 348 Mass. at 324. The SJC held that the Act did not require marks to be unique or coined to qualify for protection, but neither did it require injunctive relief to protect valid but weak marks. Skil, 337 Mass. at 489-91 & n.1, Great Scott, 348 Mass. at 324. Thus, even if this Court were to apply this old standard, Plaintiff's evidence that it owns a valid mark, without more, would not entitle it to an injunction preventing Defendants from using their "Life's Good" corporate tagline. In fact, the Food Fair, Esquire, and Skil courts all allowed the defendants to continue using the challenged marks, with some restrictions, despite finding that the plaintiffs had valid marks. Food Fair, 177 F.2d at 185-86; Esquire, 243 F.2d at 546; Skil, 337 Mass. at 494-95.[3]

Finally, Plaintiff mischaracterizes the First Circuit's decision in Pignons as holding that distinctiveness is not a proper ground for summary judgment on a claim under the Massachusetts Anti-Dilution Act. (Pl.'s Opp. 6-7, quoting Pignons, 657 F.2d at 494.) Pignons made no such holding. As the quotation in Plaintiff's own brief clearly shows, the First Circuit merely found that the plaintiff's evidence of distinctiveness raised a genuine issue of fact sufficient to defeat summary judgment. 657 F.2d at 494. Lack of distinctiveness *is* a proper ground for summary judgment and this Court has granted post-Pignons defendants summary judgment on a Massachusetts dilution claim based on lack of distinctiveness. See I.P. Lund Trading ApS v. Kohler Co., 118 F. Supp. 2d 92, 114 (D. Mass. 2000); ITT, 1985 U.S. Dist. LEXIS 23332, at *39-40; Astra Pharm. Products, Inc. v. Beckman Instruments, Inc., 1983 U.S. Dist. LEXIS

---

[3] Since Skil and Great Scott were decided, the First Circuit's and this Court's decisions have rejected Plaintiff's argument that ownership of a valid trademark suffices to prove the "distinctiveness" required by the Massachusetts Anti-Dilution Act. The First Circuit, this Court, and the SJC have never suggested that the cases applying this heightened standard of "distinctiveness" are contrary to Skil or Great Scott.

18289, at *13-14 (D. Mass. 1983).[4]

**B.      Plaintiff Fails to Raise a Genuine Issue for Trial That "Life is good." Lacks the Distinctiveness Required for Protection under M.G.L. Ch. 110B, § 12**

Plaintiff fails to present evidence to support a reasonable inference that, as a result of its business activities, "Life is good." has become well-known to consumers as a trademark identifying Plaintiff.  To the contrary, Plaintiff's evidence confirms Defendants' evidence that "Life is good." is well known to consumers as a common expression of optimism, and not as a trademark of Plaintiff.  That evidence thus stands unrebutted.

**1.      Defendants' Evidence Shows That Consumers View Plaintiff's Use of "Life is good." Primarily as a Common Expression, Not as a Distinctive Trademark**

In support of summary judgment, Defendants established that "Life is good." is primarily known to consumers as a common declarative expression communicating an optimistic message, and not as a distinctive trademark identifying Plaintiff.  (See Defs.' Mem. 2-5, 6-8.)

First, Defendants presented evidence that "Life is good" frequently appears in advertising and on products that convey this optimistic message.  This evidence includes:

- A report by Dr. Ronald Butters, a linguistics expert, explaining that "Life is good" is a commonplace phrase, bordering on a cliché, that is frequently used in advertising and on products (Defs.' Mem. 2-4; Lemper Decl., Ex. 1);
- Evidence that "Life is good" is used as an upbeat message on a range of products, especially T-shirts, offered for sale (Defs.' Mem. 3; Kidwell Decl., Exs. 1-39);
- Evidence that "Life is Good," "Life's Good," and other such slogans are used and have been used in national advertising campaigns by large retailers such as Miller Brewing Company, The Hershey Company, Forbes, Sears, Ford, and Wal-Mart (Defs.' Mem. 3-4; Lemper Decl., Exs. 5, 7-9, 18-19).

Second, Defendants presented evidence that Plaintiff adopted, began using, and continues to use "Life is good." *as a declarative expression* that adorns its products to capitalize on the commercial appeal of those words as an optimistic saying with positive connotations, not as a distinctive trademark that identifies Plaintiff.  This evidence includes:

---

[4]  Two of those cases relied on Pignons in finding that the defendant was entitled to summary judgment based on lack of distinctiveness.  See ITT, 1985 U.S. Dist. LEXIS 23332, at *39-40 & n.7; Astra, 1983 U.S. Dist. LEXIS 18289, at *14-15.

- Testimony by Plaintiff's President and Vice President that: (1) "Life is good." is a saying that conveys optimism; (2) they selected "Life is good." from a list of sayings because of its positive and optimistic message; (3) they initially used the expression "Life is good." to adorn the fronts of their T-shirts, back when they were operating as "Jacobs Gallery" and the labels on the shirts said "Oneida"; (4) the optimistic message communicated by "Life is good." is central to the commercial appeal of Plaintiff's products; and (5) Plaintiff continues to use "Life is good." in sentence form to adorn the fronts of its T-shirts and other products in the same manner as other expressions Plaintiff uses (such as "Ride on.", "Chill out.", "Go with the flow.", "Think outside the box.", and "Dream on.") but does not consider to be trademarks (Defs.' Mem. 2-5, 7 n.5; Lemper Decl., Exs. 2-3);

- Evidence from the U.S. Patent and Trademark Office (PTO), testimony by Mr. Thomas Kenney (Plaintiff's outside trademark counsel), and an expert report by Mr. Rany Simms (a former judge on the PTO's Trademark Trial and Appeal Board) establishing that: (1) the PTO refused Plaintiff's application to register "Life is good." as a trademark because consumers would perceive "Life is good." adorning the front of Plaintiff's T-shirts as a decorative or ornamental feature of the product and a comment on the merits of the simple life, and not as a trademark that identifies Plaintiff; (2) the PTO refused to accept affidavits from Plaintiff's President and its retailers stating that the slogan had become distinctive of Plaintiff's products; and (3) Plaintiff was only able to obtain a registration for "Life is good." by abandoning its original application and submitting a new application showing the use of "Life is good." on the labels and hangtags of Plaintiff's products (Defs.' Mem. 7 & n.4; Lemper Decl., Exs. 10, 14, 20);

Finally, Defendants presented evidence confirming that consumers view Plaintiff's use of "Life is good." *as an expression* communicating a positive message, not as a distinctive trademark identifying Plaintiff. This evidence includes:

- Testimony by Dr. Robert Klein, Plaintiff's survey expert, that the results of the pretest for Plaintiff's confusion survey showed "little awareness of Life is good. or association with any products," "relatively little association of specific products and services with Life is good.", that "awareness of Life is good. as a trademark was relatively low", and that "awareness of LG is significantly greater than the awareness of Life is good." (Awdeh Decl. ¶ 2 & Ex. 1; Defs.' Mem. 6; Lemper Decl., Ex. 12);

- A report by Mr. Robert Reitter, Defendants' survey expert, detailing survey results that showed respondents attribute the same degree of source association between, on the one hand, "Life is good." on the front of one of Plaintiff's T-shirts and "Life's Good" in Defendants' advertising, and, on the other hand, "We are #1" on the front of a T-shirt and "We're #1" (substituted for "Life's Good") in Defendants' advertising (Defs.' Mem. 7-8; Lemper Decl., Ex. 15);

- A report by Dr. Maureen Morrin, a marketing expert, concluding that Plaintiff has not achieved significant brand equity, awareness, or market share, and that its sales and advertising are miniscule compared to known apparel brands. (Defs.' Mem. 6-7; Lemper Decl., Ex. 13.)

Thus, Defendants have come forward with ample evidence establishing that "Life is good." is a common expression, that Plaintiff ornamentally uses "Life is good." as a declarative

expression, that consumers perceive Plaintiff's use of "Life is good." on its products as an expression, and that consumers purchase Plaintiff's products, at least in part, because of the optimistic message communicated by that expression. Defendants also presented direct survey evidence showing that consumer recognition of "Life is good." as a trademark is relatively low. These facts are sufficient to establish that "Life is good." is neither strong nor well-known as a trademark, and therefore lacks the level of distinctiveness required under the Massachusetts Anti-Dilution Act.

> **2.    Plaintiff's Evidence Fails to Show That Consumers View "Life is good." as a Distinctive Trademark, and Not as a Common Expression**

Defendants' evidence shifted the burden to Plaintiff to come forward with evidence that "Life is good." is strong and well known to consumers as a "trademark" identifying Plaintiff. Plaintiff failed to do so.

Consumer surveys and testimony are the only direct evidence of trademark recognition. Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 182 (1st Cir. 1993). Facts relating to (1) the length and manner of a mark's use, (2) the nature and extent of a mark's advertising and promotion, and (3) efforts to associate the mark with a company or product in the minds of consumers are all circumstantial evidence that a term has acquired distinctiveness as a mark. Id.

In opposing summary judgment on distinctiveness, Plaintiff presents only circumstantial evidence that cannot support a reasonable inference that consumers recognize "Life is good." as a strong and well-known "trademark." Plaintiff's evidence is limited to the following:

- Statements by Plaintiff's President about two specific alleged hearsay statements by people commenting on Plaintiff's "brand," and a general statement that "literally hundreds of people have approached me in Massachusetts and told me that they were fans and/or supports of the 'Life is good' brand of products"(Pl.'s L.R. 56.1 Stmnt. 9; Jacobs Aff., ¶ 8);

- Plaintiff's trademark registrations for "Life is good." (Pl.'s L.R. 56.1 Stmnt. 17, Kenney Aff., Exs. B-D);

- Newspaper and magazine articles about Plaintiff (Pl.'s L.R. 56.1 Stmnt. 17; Kenney Aff., Ex. A);

- Evidence of Plaintiff's advertising and sales of products bearing "Life is good." (Pl.'s L.R. 56.1 Stmnt. 15-16; Jacobs Aff., ¶¶ 4-7);

- Evidence of Plaintiff's legal efforts to prevent others from making commercial

use of "Life is good" (Pl.'s L.R. 56.1 Stmnt. 17-18; Kenney Aff., ¶¶ 6-7 & Ex. E; Woodbury Aff., Exs. 4-7, 13-25, 27-28).

Plaintiff's evidence fails to show that "Life is good." is among the strongest and most distinctive marks, well known to the public as a synonym for Plaintiff. To the contrary, Plaintiff's evidence confirms that consumers view "Life is good." principally as a common expression communicating an optimistic message, and not as a trademark identifying Plaintiff.

### a.    Plaintiff Fails to Present Direct Evidence That Consumers Recognize "Life is good." as a Distinctive Trademark

The only arguably direct evidence offered by Plaintiff that consumers recognize "Life is good." as a trademark are three statements by Plaintiff's President:

- "Literally hundreds of people have approached me in Massachusetts and told me that they were fans and/or supporters of the 'Life is good' brand of products"
- A man named Chris Holland told him "I love your brand. I wear it all the time."
- Guy Neil, the manager at Atlantic Fish Company, told him "Your brand is doing great. I see the bags everyday."

(Pl.'s L.R. 56.1 Stmnt. 9; Jacobs Aff., ¶ 8).

Such self-serving hearsay statements cannot constitute evidence that "Life is good." is among the strongest and most distinctive trademarks. Among its many infirmities, the first statement is so broad and conclusory that it is wholly without evidentiary value. The remaining two hearsay statements are ambiguous at best. In both, it is unclear whether the alleged references to Plaintiff's "brand" refer to the words "Life is good," the "Jake" cartoon character, the look and feel of Plaintiff's trade dress, or something else.[5]

Apart from these three statements by its President, Plaintiff produced no other direct evidence that consumer recognize "Life is good." as a distinctive trademark of Plaintiff. (Defs.' Mem. 5; Lemper Decl., Ex. 2, 10.)

It is telling that Plaintiff chose not to conduct a brand recognition survey, despite having

---

[5] It is also not clear what relationship the alleged speakers have to Plaintiff. <u>Pump, Inc. v. Collins Mgmt., Inc.</u>, 746 F. Supp. 1159, 1170 (D. Mass. 1990) (incidents of confusion involving friends is less probative of actual confusion). That the Atlantic Fish Company is just two blocks from Plaintiff's flagship store on Newbury Street (<u>see</u> Nicoletti Decl., ¶ 2) suggests that Mr. Neil is particularly familiar with Plaintiff's store, and possibly with Plaintiff's President as well.

the time and resources to do so, to obtain direct evidence that consumers recognize "Life is good." as a distinctive trademark. Plaintiff's decision is no doubt explained by the "pretest" results for Plaintiff's "confusion" survey, which asked a chosen sample of respondents first, "When I say LIFE IS GOOD what comes to mind?" and then, "Do you or do you not associate LIFE IS GOOD with any product or services?" (Awdeh Decl., ¶ 3 & Ex. 2.) The response to those questions showed "little awareness of Life is good. or association with any products." (Awdeh Decl., ¶ 2 & Ex. 1.) Under the circumstances, Defendants are entitled to an inference that a larger consumer recognition survey would have yielded similar results. See Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F. Supp. 571, 583 (D.N.J. 1985) ("Failure of a trademark owner to run a survey to support its claims of brand significance . . ., where it has the financial means of doing so, may give rise to the inference that the contents of the survey would be unfavorable, and may result in the court denying relief.") (citations omitted).

### b.    Plaintiff's Registrations Fail to Show That Consumers Recognize "Life is good." as a Distinctive Trademark

Believing it need only show ownership of a valid mark, Plaintiff relies on its trademark registrations to prove that "Life is good." is a distinctive trademark.[6] (Pl.'s Opp. 7.) This, however, is not enough as a matter of law. In ITT, this Court found that the plaintiff's four federal registrations, among other evidence, failed to raise a genuine issue of fact that its mark was not "distinctive" for dilution purposes. 1985 U.S. Dist. LEXIS 23332, at *2-3, *39-40. This Court found that although the plaintiff's mark "XTRA" was registered, it was a weak and "already diluted" mark because it was the phonetic equivalent of a common word. The Court concluded that Plaintiff's evidence, including its registrations, failed to show that the plaintiff's mark was "a strong mark well known to the public, that is a synonym for a particular source of products." Id. at *28-32, 39-40. As in ITT, Plaintiff's "Life is good." trademark, even if valid, is

---

[6]    Plaintiff did not own any of its Massachusetts registrations for "Life is good." at the time it filed this lawsuit. It obtained those registrations for "Life is good." *after* it filed suit. (Compare Complaint, Docket Entry No. 1, filed June 10, 2004, with Kenney Aff., Ex. D, registrations issued June 22, 2004, Oct. 18, 2004, and Nov. 22, 2004).

weak and "already diluted" because it is a frequently used expression and Plaintiff's registrations do not show that this common expression has become well known as a trademark.

### c.    Plaintiff's Media Coverage Confirms That It Uses "Life is good." as a Common Expression

Plaintiff also produces a handful of newspaper and magazine articles as circumstantial evidence that "Life is good." has become distinctive as Plaintiff's trademark.  (Pl.'s pp 13; Kenney Aff., Ex. A.)  Yet those articles provide definitive proof that Plaintiff's use of "Life is good." as an expression communicating a message of optimism overshadows the trademark significance Plaintiff claims in the use of its name on hangtags and product labels.

In each article, Plaintiff's owners explain that they selected and began using "Life is good." as a slogan on T-shirts because it was a saying that communicated a positive and optimistic message that "touched on a nerve" with consumers.  (Kenney Aff., Ex. A.)  The articles also make it clear that Plaintiff continues to use "Life is good." *as an expression* to exploit the built-in commercial appeal of its optimistic message.  Plaintiff's President is quoted as saying, "We're selling a message, and that is optimism."  (Id.,)  Finally, the articles establish that consumers purchase Plaintiff's products because "Life is good." conveys an optimistic message, not because it identifies Plaintiff as the source of the products.

### d.    Plaintiff's Sales and Advertising Fail to Show That Consumers Recognize "Life is good." as a Distinctive Trademark

Plaintiff's advertising and sales of products bearing "Life is good." likewise fail to raise a genuine issue of fact as to distinctiveness.  Whether this circumstantial evidence supports an inference that consumers recognize "Life is good." *as a distinctive trademark* depends on the manner in which Plaintiff uses it on its products and in its advertising.  Boston Beer, 9 F.3d at 182.

As detailed above, Defendants evidence establishes that Plaintiff uses "Life is good." *as a declarative expression* in its advertising and on its products, that Plaintiff uses "Life is good." to exploit the commercial appeal of that expression's positive and optimistic message, and that Plaintiff's use of "Life is good." as a trademark enjoys only a "relatively low" level of consumer brand recognition (according to Plaintiff's own survey expert).

To rebut Defendants' evidence, Plaintiff could not afford to simply rely on evidence of sales and advertising, and instead needed to come forward with evidence that the impact of its advertising and sales was public recognition of "Life is good." as a well known "trademark" of Plaintiff.  See Mr. Boston Seafoods, 315 F. Supp. at 575-77.

### e. Plaintiff's Enforcement Efforts Show that "Life is good." is Frequently Used on Products and in Advertising

Plaintiff submits evidence of its legal efforts preventing others from using "Life is good" on products and in advertising.  (Pl.'s L.R. 56.1 Stmnt. 17-18; Kenney Aff., ¶¶ 6-7 & Ex. E; Woodbury Aff., Exs. 4-7, 13-25, 27-28).  Specifically, Plaintiff presents evidence that 25 of the 39 third-party products identified by Defendants are no longer on the market.  However, in the two months since Defendants filed their brief, Defendants have discovered just as many different third-party products bearing "Life is good" are now available in the marketplace.  (See Nicoletti Decl., ¶¶ 3-4 & Exs. 1-23) (submitting evidence of 23 additional third-party products).

Plaintiff's contention that such evidence shows only non-trademark use, or fails to show the scope of each use, misses the mark.  (Pl.'s Opp. 13-15.)  Far from substantiating that "Life is good." is well-known to consumers as a trademark, Plaintiff's timeless struggle to police the frequent decorative use of "Life is good." confirms that common saying's universal appeal as an optimistic expression.  Such well-used phrases are inherently weak marks because they are *already* diluted.  (Defs.' Mem. 14-15); Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 543 (1st Cir. 1957); S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 697 (1st Cir. 1979); Astra, 1983 U.S. Dist. LEXIS 18289, at *11, 14; Church of the Larger Fellowship, 1983 U.S. Dist. LEXIS 15855, at *17, 20.

## IV. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THERE IS NO LIKELIHOOD OF "DILUTION BY BLURRING"

### A. "Blurring" Requires Evidence That A Mark is Unique and Likely to be Blurred

The First Circuit recognizes likelihood of dilution based on three types of injuries:  (1) actual or potential confusion; (2) tarnishment of goodwill and reputation; and (3) diminution in

the uniqueness and individuality of the plaintiff's mark, known as "blurring."  See Pignons, 657 F.2d at 494-495; Hasbro, 66 F. Supp. 2d at 134-136.[7]

Plaintiff concedes that Pignons requires proof that its mark is "unique" to show blurring, but relies on a dictionary definition to argue that "unique" does not mean "one of a kind."  Again reaching back 40+ years to Skil and Great Scott, Plaintiff contends that the correct standard is "relative uniqueness" and that "Life is good." is "highly distinctive."  (Pl.'s Opp. 12-13.)

This low standard ignores this Court's warnings about the sweeping consequences of applying the expansive concept of blurring to enjoin all other uses of a mark on any other product or service.  See Defs.' Mem. 17-18, discussing Hasbro, 66 F. Supp. 2d at 135-37; PPG Industries, 620 F. Supp. at 608.  As explained in Defendants' moving brief, "blurring" presupposes a mark so unique in the marketplace that it identifies *one and only one* company.  (Defs.' Mem. 17-18.)  This is so because "blurring" occurs when the defendant's use of the plaintiff's mark "causes the public no longer to think *only* of the plaintiff's product" upon seeing the mark.  Hasbro, 66 F. Supp. 2d at 134 (emphasis added); see Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836, 844 (D. Mass. 1964) (blurring is "a risk of an erosion of the public's identification of [a] very strong mark with *the plaintiff alone*.") (emphasis added).

**B.    Plaintiff Fails to Raise A Genuine Issue of Material Fact That "Life is good." Is A Unique Trademark**

Plaintiff fails to present evidence sufficient to show that "Life is good." is a *unique* mark that identifies *only* Plaintiff, and that Defendants' use of the corporate tagline "Life's Good" is likely to diminish the uniqueness and individuality of "Life is good." as identifying *only* Plaintiff.

Defendants presented both direct and circumstantial evidence that dilution is inherent in the very nature of the common expression "Life is good."  See Defs.' Mem. 18-20, discussing

---

[7]  Plaintiff chastises Defendants in a footnote for mistakenly misquoting Hasbro as stating that the standards for dilution are very similar under the Massachusetts Anti-Dilution Act and the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).  (Pl.'s Opp. 3, n.1.)  However, Plaintiff omits to say that the Court clearly agreed with the parties that the standards are very similar because the Court's analysis of the plaintiff's Massachusetts dilution claim relied by express reference on its analysis of the plaintiff's federal dilution claim.  Hasbro, 66 F. Supp. 2d at 137.

Pignons, 657 F.2d at 495 (holding that the "supposed incremental harm" caused by a defendant's use of "a commonplace word, widely associated with many situations and products" is an injury "so attenuated and speculative" that it is not cognizable under the Massachusetts Anti-Dilution Act"); Church of the Larger Fellowship, 1983 U.S. Dist. LEXIS 15855, at *20 ("[P]laintiff's mark [CLF] is relatively weak and shared by many others. . . .  There can be no dilution on these facts.").  In addition, Defendants' various experts confirm that "Life is good." is not a strong mark well known to consumers as identifying Plaintiff.

In opposing summary judgment, Plaintiff points to its registration and use of "Life is good." to market and sell its products, as well as evidence that 25 of the third-party uses cited by Defendants have since ceased.  (Pl.'s Opp. 14-15; Kenney Aff., ¶¶ 6-7; Woodbury Aff. ¶¶ 3-4.) (Pl.'s Opp. 13.)  This same evidence, as discussed above, does not raise a genuine issue of material fact that consumers recognize "Life is good." as a distinctive trademark identifying Plaintiff, let alone a *unique* trademark identifying *only* Plaintiff.

### C.    Plaintiff Presents No Evidence That Defendants' Use of "Life's Good" Has Blurred any Trademark Distinctiveness of "Life is good."

Defendants established that Plaintiff's sales have increased by roughly 50% each year since Defendants began using the "Life's Good" tagline in late 2003, even though Defendants spent more than $100 million in advertising and generated more than $8 billion in sales.  (Defs.' Mem. 8-9; Lemper Decl., Exs. 16-17.)  Further, Plaintiff produced no evidence of decreased consumer recognition during that time.  (Defs.' Mem. 9; Lemper Decl., Exs. 2, 10, 21.)

In response, Plaintiff offers no contrary facts.  Instead, Plaintiff argues that Defendants' evidence does not prove blurring has not occurred and, still further, that blurring is "likely." (Pl.'s L.R. 56.1 Stmnt. 14, ¶ 17.)  This conclusory, speculative attorney argument is inadequate to rebut Defendants' evidence.

## V.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THERE IS NO LIKELIHOOD OF "DILUTION BY CONFUSION"

### A.    Plaintiff Applies The Wrong Legal Standard For Dilution By Confusion

To establish "dilution by confusion" under the Massachusetts Statute, this Court uses the

same analysis used to establish a likelihood of confusion under federal trademark infringement, including the relatedness of the goods and competition between the parties.  See Hasbro, Inc. v. Clue Computing, Inc., 66 F.Supp.2d 117, 122 (D. Mass. 1999) (finding "very little similarity between Hasbro's product and Clue Computing's service"); Infinity Broad. Corp. v. Great Boston Radio, 1993 U.S. Dist LEXIS 12284, *37 (D. Mass. 1993) (finding the goods "greatly dissimilar"); Pignons, 657 F.2d at 489 (finding "no realistic likelihood that the relevant classes of consumers would be confused by the parties' distribution and advertising of their cameras"); Astra, 1983 U.S. Dist. LEXIS 18289, at *5 (finding the parties' products "not similar at all").

This well-settled standard notwithstanding, Plaintiff contends "dilution by confusion" requires only an examination of the parties' respective marks irrespective of the relatedness of the parties' goods and services or competition.  (Pl.'s Opp. 8-9.)  Plaintiff's proposed standard is contrary to this Court's application of the Massachusetts Act and common sense, as under Plaintiff's theory the same mark could not be used by unrelated parties (e.g., DELTA for an airline, DELTA for faucets, and DELTA for dental services; DOMINO'S for pizza and DOMINO for sugar), because the mere existence of identical (or virtually identical) marks for even unrelated goods or services would create "dilution by confusion."[8]

Contrary to Plaintiff's position, this Court has consistently applied the same, not a lesser, standard for dilution by confusion as for trademark infringement.  Specifically, this Court has held that when a party fails to prove a likelihood of confusion for federal trademark infringement, it likewise fails to establish dilution by confusion under the Massachusetts Act. See Black Dog Tavern Co. Inc. v. J. Peter Hall, 823 F.Supp. 48, 59 (D. Mass. 1993) ("This court's determination that there is no likelihood of confusion between the parties' marks

---

[8]  When viewed in light of Plaintiff's contention that a mark need only be protectable to be "distinctive" and thereby eligible for dilution protection, Plaintiff's argument on "dilution by confusion" would eliminate the ability of any two marks, no matter how weak, to coexist for unrelated or dissimilar products.

precludes consideration of the first test of dilution.").[9]

This Court's analysis remains consistent with the Massachusetts Act's provision that dilution may be established in the absence of "competition" or "confusion as to source," because dilution may also exist through "blurring" or "tarnishment," neither of which require a showing of competition or confusion. However, where the claimed injury is "dilution by confusion," the injured party must prove a likelihood of confusion as to source, which requires consideration of the parties' goods and services and the realities of the marketplace.

Plaintiff's reliance on Libby, McNeill & Libby v. Libby, 103 F.Supp. 968 (D. Mass. 1952) is misplaced. That case was not decided solely on the similarity of the parties' marks, nor does that case support Plaintiff's argument that a simple comparison of the marks is all that is necessary for confusion by dilution. After finding confusion likely, the Court granted relief under the Massachusetts Act because "dilution by confusion" did not require direct competition, which was required for trademark infringement under Massachusetts common law. Id. While the court removed "competition" from its analysis for dilution by confusion, it still focused on the relatedness of the parties' goods and the likelihood of confusion as to source.[10] Id.

---

[9] See also Hasbro, 66 F. Supp. 2d at 122 (finding no dilution by confusion because plaintiff failed to show a likelihood of confusion on its infringement claim); Infinity Broad., 1993 U.S. Dist LEXIS 12284, at *37 (relying on finding of no likelihood of confusion on federal trademark infringement claim to also find no dilution by confusion); PPG Industries Inc. v. Clinical Data Inc., 620 F.Supp. 604, 606 (D. Mass. 1985) (holding that finding of no likelihood of confusion on plaintiff's trademark infringement and unfair competition claims also applied to the "consumer confusion" theory of dilution); Church of the Larger Fellowship, 1983 U.S. Dist. LEXIS 15855, at *19 (plaintiff cannot prevail on dilution by confusion claim where it fails to prove a likelihood of confusion for trademark infringement); Pignons, 657 F.2d at 494-495 (relying on "likelihood of confusion" analysis for trademark infringement to dispose of claim of dilution by confusion); cf. Three Blind Mice Designs Co. v. Cyrk, Inc., 892 F. Supp. 303, 309 (D. Mass. 1995) ("To the extent that the anti-dilution statute prohibits the marketing of a product resulting in a likelihood of confusion between similar, directly competitive goods, it is wholly preempted in this case by section 43(a) of the Lanham Act.").

[10] Libby involved a well-known meat packer using the name "Libby's" and a supermarket using the name "Libby's Super Market." 103 F.Supp. at 969. The parties' goods and services were related (meatpacking vs. supermarket). The Court found that the public "might be led to believe that Libby . . . was the owner or operator of defendants' super market or that there was some connection between the two concerns. Such confusion should be eliminated." Id. at 970.

Further, <u>Great Scott</u> does not support Plaintiff's "dilution by confusion" argument because the court in that case found "dilution by blurring," not by "orthodox confusion." 348 Mass. at 325. As such, Plaintiff's contention that "dilution by confusion" may be found irrespective of competitiveness and locale is without support. (Pl.'s Opp. 9.)

### B.    No Genuine Issue of Material Fact Exists That There is No Dilution by Confusion Under the Correct Standard

To demonstrate likelihood of confusion, Plaintiff must show probable confusion among an *appreciable* number of purchasers. <u>Int'l Ass'n of Machinists</u>, 103 F.3d at 201. When examining the likelihood of confusion, this Court looks at a number of factors, such as the strength of the plaintiff's mark; the similarity of the marks; the similarity of the goods; evidence of actual confusion; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the degree of care likely to be exercised by prospective purchasers of the parties' goods; and the defendant's intent in adopting its mark. <u>Pignons</u>, 657 F.2d at 487. No one factor is necessarily determinative, and each should be considered. <u>Astra Pharm. Prods., Inc. v. Beckman Instr., Inc.</u>, 718 F.2d 1201, 1204 (1st Cir. 1983). The undisputed materially relevant facts support dismissal of Plaintiff's "dilution by confusion" claim.

### 1.    Defendants' Well-Known "LG" Mark Prevents Any Likelihood of Confusion and the Marks Carry Different Contextual Meanings

Defendants use the "Life's Good" tagline with their "LG" house mark, which is recognized as one of the top 100 brands in the world and has an estimated value of $2.6 billion. (Lemper Decl., Ex. 13, p. 4.) Plaintiff's survey expert testified that consumer awareness of the "LG" mark was relatively high. (<u>Id.</u>, Ex. 12.) Given this high level of consumer recognition, Defendants' use of the well-known "LG" house mark with the "Life's Good" tagline prevents a likelihood of confusion.[11]

---

[11]    <u>See</u> <u>Thompson Medical Co. v. Pfizer, Inc.</u>, 753 F.3d 208 (2d Cir. 1985) (defendant's use of "Ben Gay" name minimized likelihood of confusion between "Sportscreme" and "Ben-Gay Sportsgel"); <u>Pristine Indus. Inc. v. Hallmark Cards, Inc.</u>, 753 F.Supp. 140 (S.D.N.Y. 1990) (defendant's use of its well-known HALLMARK house mark with the disputed mark is a strong factor pointing to no likely confusion); <u>Worthington Foods, Inc. v. Kellogg Co.</u>, 732 F. Supp.

(continued)

Further, while "Life's Good" can be understood in the abstract as either an abbreviated form of "life is good" or a possessive abstract noun meaning "life's good [things]," Defendants use the corporate tagline "Life's Good" in connection with premium, digitally sophisticated products that can enhance purchasers' lives, thus meaning that Defendants' products are some of "life's good," or "life's good [things]."  (Lemper Decl, Ex. 1, pp. 28-30, ¶¶ 41-45.)

### 2.    Plaintiff's Relatively Inexpensive Products are Not Related to Defendants' Expensive Products and Promotional Giveaways

In its Complaint, Plaintiff asserted as fact that Defendants' use of "Life's Good" "in connection with such expensive hard goods as televisions, computers, and cell phones runs *directly counter* to the whimsical and non-corporate image that Plaintiff has developed with its relatively inexpensive soft goods."  (Complaint ¶ 27.)  Plaintiff now claims that the parties sell related products—the differences in price and retailers notwithstanding.  (Jacobs Aff. ¶ 11.) Plaintiff's apparent argument—that refrigerators and foam "coolers," digital appliances and unidentified "furniture," and cell phones and cell phone "charms" are all related products—is too far-fetched to be credible.  (Id.)

Plaintiff also contends Defendants' promotional item giveaways are competing "products" to those of Plaintiff.  No dispute exists that Defendants are not clothing companies; they are consumer electronics companies.  The common corporate practice of giving away promotional items, such as t-shirts, hats, pens, briefcases, mugs, etc. imprinted with a company logo and tagline, to employees, dealers, and tradeshow attendees has previously been held to be a form of advertising and promotion of a company's underlying products, not a separate product business.  King of the Mt. Sports, Inc. v. Chrysler Corp., 968 F.Supp. 568, 574 (D. Colo. 1997) ("[T]he clothing on which defendants placed their logo was not sold; it was given away as promotional items, and, therefore, does not compete even in a broad sense with plaintiff's

---

(continued)
1417, 1441-42 (S.D. Ohio 1990) (addition of defendant's KELLOGG'S house mark decreases the likelihood of confusion between the parties' HEARTWISE marks).

clothing."); <u>Hanig & Co. v. Fisher & Co.</u>, 1994 U.S. Dist. LEXIS 20422, *32-33 (N.D. Ill.,

March 24, 1994) (finding recipients of promotional calculators with American Express logo

would not likely to believe that American Express is in the calculator business).

### 3.    There is No Evidence of Actual Confusion Among an Appreciable Number of Consumers

Isolated instances of confusion do not prove probable confusion.  <u>Int'l Ass'n of</u>

<u>Machinists</u>, 103 F.3d at 201.  The number of instances of actual confusion must be placed

against the background of the number of opportunities for confusion.  3 <u>McCarthy</u> § 23:14.

Plaintiff alleges that since 1998 it has sold more than $150 million in products bearing

"Life is good." and has spent more than $4 million in advertising and promotion of its goods.

(Pl.'s L.R. 56.1 Stmnt. 16, ¶5.)  For their part, Defendants have used the "Life's Good" tagline

for over two and a half years, spending $100 million in advertising and generating $8 billion in

sales.  (Defs.' Mem. 9.)  Indeed, Plaintiff complains that "defendants have used and are

continuing to use 'Life's Good' *so prominently and to such a broad segment of the actual and*

*prospective customers* of Life is good . . . that such persons are *highly likely* to have formed

multiple associations around the 'Life is good' mark as a result of LG's practices."  (Pl.'s L.R.

56.1 Stmnt. 14, ¶17, emphasis added.)

In light of such extensive marketing and sales, one would expect that there would be

widespread consumer confusion if the marks at issue in this case were truly likely to confuse.

Yet, after two and a half years of "massive"[12] and "overwhelming"[13] nationwide advertising by

Defendants, Plaintiff has found only twelve *specific* incidents of alleged confusion.[14]  (Pl.'s L.R.

56.1 Stmnt. 20, ¶¶ 18-21; Kenney Aff., Ex. K-M.)  For their part, Defendants' exhaustive search

---

[12]  Complaint ¶ 18.

[13]  Pl.'s L.R. 56.1 Stmnt. 14, ¶ 17.

[14]  The specific instances of confusion alleged in Plaintiff's Local Rule 56.1 Statement, and the basis for exclusion, are addressed in Defendants' Response to Plaintiff's Local Rule 56.1 Statement.  <u>See</u> Exhibit A to Defendants' Assented-To Motion for Leave to File Defendants' Response to Plaintiff's Local Rule 56.1 Statement.

for *any* instances of confusion failed to yield a single instance. (Awdeh Decl., ¶¶ 4-5 & Ex. 3-4.) Such de minimis confusion, even if admissible, is incapable of proving a likelihood of confusion. See Infinity Broad., 1993 U.S. Dist. LEXIS 12284, at *35 ("[D]e minimis confusion is of minimal legal significance."); Astra, 718 F.2d at 1207-08 & n.1 ("[A]ny confusion which may have occurred was de minimis, and is not sufficient to raise a genuine issue of fact relating to the likelihood of confusion issue"); Church of the Larger Fellowship, 1983 U.S. Dist. LEXIS 15855, at *12 (five to six instances of confusion out of 150,000 mailings found only negligible). Far from proving likely confusion, Plaintiff's evidence of negligible confusion, given the magnitude of the parties' activities, is proof that confusion is *not* likely. See AB Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4(1st Cir. 1993) ("weak evidence of actual confusion weighs quite heavily against a finding of likelihood of confusion"); Pignons, 657 F.2d at 490-491 ("Pignons' inability to bring forth more than this single, feeble and indirect example of possible consumer confusion strongly indicates that Polaroid's use of the mark 'Alpha' has not created a likelihood of confusion.").

Plaintiff's incidences of alleged confusion do not create a genuine issue of material fact because they are largely inadmissible, do not show recognizable "trademark" and/or "purchaser" confusion, and in fact, when viewed in context, evidence the *absence* of any probable confusion among an appreciable number of consumers.

## **CONCLUSION**

For the reasons set forth in this brief and the brief supporting their motion, Defendants respectfully request that the Court grant Defendants' motion.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.

Date:  June 6, 2006                   /s/  Timothy A. Lemper

                                      Counsel for Defendants
                                      LG Electronics U.S.A., Inc. and
                                      LG Electronics MobileComm U.S.A., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 6, 2006.

/s/  Timothy A. Lemper