UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIFE IS GOOD, INC.,

           Plaintiff,

    v.

LG ELECTRONICS U.S.A., INC., and
LG ELECTRONICS MOBILECOMM U.S.A.,
INC., (formerly LG INFOCOMM U.S.A., INC.)

           Defendants.

Civil Action No. 04 11290 WGY

Hon. William G. Young

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO STRIKE PLAINTIFF'S EVIDENCE OF ALLEGED CONFUSION**

Lawrence R. Robins
Jonathan M. Gelchinsky
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142

Mark Sommers
Douglas A. Rettew
Timothy A. Lemper
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II.   FACTS RELEVANT TO THIS MOTION ......................................................................... 2

      A.    Plaintiff's Evidence of Alleged Confusion.................................................. 2

      B.    Plaintiff Claims to Have Identified 32 Instances of Alleged Confusion...................... 4

III.  ARGUMENT ...................................................................................................... 4

      A.    Courts Rigorously Scrutinize Confusion Evidence Based on Alleged Out-of-Court Statements........................................................................................ 4

      B.    Plaintiff's Evidence Contains Inadmissible Hearsay Within Hearsay......................... 6

      C.    Plaintiff's Evidence Contains Statements Demonstrating that the Declarants Are Not Confused .................................................................................... 7

      D.    Plaintiff's Evidence Contains Inquiries that Fail to Show Confusion ......................... 9

      E.    Plaintiff's Evidence Contains Statements that Are So Vague and Ambiguous that Their Relevance Cannot Be Established ........................................................ 11

            1.    Plaintiff's Evidence Contains Statements that Fail to Show the Cause of the Alleged Confusion.................................................................... 11

            2.    Plaintiff's Evidence Contains Vague and Ambiguous Paraphrases, Often by Unidentified Declarants ............................................................. 14

            3.    Plaintiff's Evidence Contains Broad and Conclusory Assertions.................... 16

      F.    Plaintiff's Evidence Fails to Show Relevant Confusion Among Consumers Making Purchasing Decisions in the Marketplace .................................................... 17

      G.    Plaintiff's Evidence of De Minimis Confusion Is Not Legally Sufficient to Prove a Likelihood of Confusion................................................................ 18

IV.   CONCLUSION ................................................................................................. 20

V.    LOCAL RULE 7.1 CERTIFICATION............................................................................ 20

i

# TABLE OF AUTHORITIES

Page

## CASES

Alchemy II v. Yes! Entm't Corp.,
844 F. Supp. 560 (C.D. Cal. 1994) ................................................................ 5

Alta Vista Corp. v. Digital Equip. Corp.,
44 F. Supp. 2d 72 (D. Mass. 1998) ....................................................11, 18, 19

Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.,
718 F.2d 1201 (1st Cir. 1983) ...................................................................... 19

Bigfoot 4x4, Inc. v. Bear Foot, Inc.,
5 U.S.P.Q.2d 1444 (TTAB 1987) .................................................................. 15

Black Dog Tavern Co. v. Hall,
823 F. Supp. 48 (D. Mass. 1993) ................................................................... 5

Boston Athletic Ass'n v. Sullivan,
867 F.2d 22 (1st Cir. 1989) ............................................................................ 5

CCBN.com, Inc. v. C-call.com, Inc.,
73 F. Supp. 2d 106 (D. Mass. 1999) .............................................................. 5

CMM Cable Rep. v. Ocean Coast Props., Inc.,
888 F. Supp. 192 (D. Me. 1995) ................................................................... 12

Copy Cop, Inc. v. Task Printing, Inc.,
908 F. Supp. 37 (D. Mass. 1995) ................................................................... 7

DeCosta v. Columbia Broad. Sys., Inc.,
520 F.2d 499 (1st Cir. 1975) ........................................................................ 19

DeCosta v. Viacom Int'l, Inc.,
981 F.2d 602 (1st Cir. 1992) ........................................................................ 11

Duluth News-Tribune v. Mesabi Publ'g Co.,
84 F.3d 1093 (8th Cir. 1996) ................................................................... 10, 11

Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,
626 F.2d 193 (1st Cir. 1980) ...................................................................... 7, 9

Freedom S&L Ass'n v. Way,
757 F.2d 1176 (11th Cir. 1985) .................................................................... 17

Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.,
426 F.3d 1001 (8th Cir. 2005) ...................................................................... 15

Georgia-Pacific Corp. v. Great Plains Bag Co.,
614 F.2d 757 (C.C.P.A. 1980) ....................................................................... 4

HQ Network Systems v. Executive Headquarters,
755 F. Supp. 1110 (D. Mass. 1991) ......................................................... 12, 13

Inc. Publ'g Corp. v. Manhattan Magazine, Inc.,
    616 F. Supp. 370 (S.D.N.Y. 1985), aff'd 788 F.2d 3 (2d Cir. 1986).................................. 4

Infinity Broad. Corp. v. Great Boston Radio, II,
    1993 U.S. Dist. LEXIS 12284 (D. Mass. 1993) ............................................................ 19

Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.,
    103 F.3d 196 (1st Cir. 1996) ..................................................................................... 9, 19

Jaret Int'l, Inc. v. Promotion in Motion, Inc.,
    826 F. Supp. 69 (E.D.N.Y. 1993) ................................................................................. 5

Jonbil v. Int'l Multifoods,
    3 U.S.P.Q.2d 1882 (TTAB 1987) ............................................................................... 17

Little Souls, Inc. v. Les Petits,
    789 F. Supp. 56 (D. Mass. 1992) .................................................................................. 8

Lloyd's Food Prods. Inc. v. Eli's Inc.,
    987 F.2d 766 (Fed. Cir. 1993) ................................................................................... 10

Marshall Field v. Mrs. Fields Cookies,
    25 U.S.P.Q.2d 1321 (TTAB 1992) ............................................................................ 12

Michael Caruso & Co. v. Estefan Enters., Inc.,
    994 F. Supp. 1454 (S.D. Fla. 1998) ............................................................................. 5

Nora Beverages, Inc. v. Perrier Group, Inc.,
    269 F.3d 114 (2d Cir. 2001) ...................................................................................... 10

Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.,
    741 F. Supp. 1546 (S.D. Fla. 1990) ............................................................................. 7

Packman v. Chicago Tribune Co.,
    267 F.3d 628 (7th Cir. 2001) ..................................................................................... 17

Programmed Tax Sys., Inc. v. Raytheon Co.,
    439 F. Supp. 1128 (S.D.N.Y. 1977)............................................................................. 7

Pump, Inc. v. Collins Mgmt., Inc.,
    746 F. Supp. 1159 (D. Mass. 1990) ....................................................................... 8, 10

Rally's, Inc. v. Int'l Shortstop, Inc.,
    776 F. Supp. 451 (E.D. Ark. 1990)............................................................................ 12

Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.,
    1990 U.S. Dist. LEXIS 5877 (S.D.N.Y. 1990) ........................................................... 16

Scott Fetzer Co. v. House of Vacuums, Inc.,
    381 F.3d 477 (5th Cir. 2004)................................................................................ 12, 13

SeaguardCorp. v. Seaward Int'l, Inc.,
    223 U.S.P.Q. 48 (TTAB 1984)................................................................................... 12

Smith Fiberglass Prods. v. Ameron, Inc.,
    7 F.3d 1327 (7th Cir. 1993) ................................................................................. 14, 15

Sno-Wizard Mfg., Inc. v. Eisemann Products Co.,
    791 F.2d 423 (5th Cir. 1986) ........................................................................... 4

Toys "R" Us v. Lamps R Us,
    219 U.S.P.Q. 340 (TTAB 1983) .....................................................................10, 11, 12

Transamerica Fin. Corp. v. Trans-Am. Collections, Inc.,
    197 U.S.P.Q. 43 (TTAB 1977) ........................................................................ 5

Versa Prods. Co. v. Bifold Co.,
    50 F.3d 189 (3d Cir. 1995) ............................................................................... 5

Vitek Systems, Inc. v. Abbott Labs.,
    675 F.2d 190 (8th Cir. 1982) ............................................................................ 5

Walter v. Mattel, Inc.,
    210 F.3d 1108 (9th Cir. 2000) ........................................................................ 17

Windsor, Inc. v. Intravco Travel Ctrs.,
    799 F. Supp. 1513 (S.D.N.Y. 1992) ............................................................... 12

## RULES

Fed. R. Evid. 805 .................................................................................................. 7

## TREATISES

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    (4th ed. 2006) ..................................................................................8, 10, 19

Richard L. Kirkpatrick, Likelihood of Confusion in Trademark Law
    (PLI June 2006) .............................................................................................. 11

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

For nearly three years, hundreds of millions of consumers have been repeatedly exposed to Defendants' use of their "Life's Good" corporate tagline with their LG mark and LG logo in advertising and on promotional items for their appliances, electronics, and cell phones. Despite the billions of opportunities for confusion to occur, and despite exhaustive searches for evidence of actual consumer confusion, neither Defendants nor Plaintiff have identified a single misdirected sale, return, or complaint between the parties. The only evidence that Plaintiff has been able to muster is 32 self-serving hearsay accounts of alleged confusion provided by Plaintiff's owners, employees, retailers, family, and friends.

None of Plaintiff's 32 instances are admissible, and all suffer from multiple evidentiary flaws. Fifteen of the 32 instances do not even show confusion: They consist of statements alerting Plaintiff to Defendants' use of "Life's Good" (demonstrating on their face that the declarants were not confused) and inquiries into the possibility of an affiliation between the parties (showing that the declarants understood that the parties are different companies and inquired about a relationship rather than assuming one existed). Of the remaining 17 instances that arguably do show some type of confusion, the vast majority consist of vague, ambiguous, and conclusory statements that fail to show the nature and/or cause of the alleged confusion, such that the Court can only speculate about the relevance and probative value of that evidence. Moreover, 26 of those 32 instances consist of self-serving double, triple, and even quadruple hearsay statements that are not admissible, even under the state-of-mind exception to the hearsay rule. In addition, 23 of those 32 instances are potentially biased accounts from Plaintiff's close associates (e.g., its owners, employees, retailers, family, and friends).

For these reasons, Plaintiff's evidence of alleged confusion should be excluded. Plaintiff has had more than two years since filing this lawsuit to identify relevant instances of confused

consumers.  Having failed to do so, Plaintiff cannot now rely on such self-serving, speculative, and/or multi-layered hearsay accounts amassed on the eve of trial.

## II.    FACTS RELEVANT TO THIS MOTION

### A.    Plaintiff's Evidence of Alleged Confusion

On January 21, 2005, in response to Defendants' discovery requests, Plaintiff alleged the existence of "dozens if not hundreds of situations" where people referred to Defendants' products after Plaintiff's employees identified themselves, and "dozens of conversations" where people asked if Plaintiff is selling telephones, televisions, or kitchen goods, or is licensing or authorizing Defendants' use of "Life's Good."  At that time, Plaintiff did not provide any specific information and did not produce any documents to support these vague allegations. (Lemper Decl., Ex. 3, Pl.'s Resp. to Defs.' First Set of Interrogs., Nos. 7-8; Lemper Decl., Ex. 4, Pl.'s Resp. to Defs.' First Set of Reqs. for Produc. of Docs., Nos. 17-18.)

On October 13 and 14, 2005, Defendants deposed Plaintiff's President Albert Jacobs and Plaintiff's Vice President John Jacobs, individually and as Plaintiff's corporate designees.  Albert Jacobs testified that he had no knowledge of any instance where a consumer has purchased Plaintiff's product believing it to have been manufactured by Defendants, or purchased Defendants' product believing it to have been manufactured by Plaintiff.  (Lemper Decl. Ex. 5, A. Jacobs Dep. 38:20-39:8.)  He also testified that he had no knowledge of any misdirected complaints, telephone calls, product orders, or product returns Plaintiff had received that were intended for Defendants.  (Id. at 45:6-17, 121:22-122:5.)  Moreover, he testified that he was unaware of any sales or business that Plaintiff has lost as a result of Defendants' use of their "Life's Good" tagline.  (Id. at 176:18-22.)  He claimed, however, that it is "very common for people to make comments which I would classify as either confusion about LG and our company, Life is good., or seeking clarification about whether we're involved with LG, whether

2

our company is involved with LG." (Id. at 17:4-12, 46:14-47:1.)  Despite this sweeping claim, there were only seven instances of alleged confusion that Jacobs described with any specificity.[1]

John Jacobs testified that he has "had several personal interactions where people were—were confused" and that "[a] lot of times, it's personal interactions with people when you just meet them and you tell them what you do, they say—you know, that's when the confusion usually comes up." (Lemper Decl., Ex. 6, J. Jacobs Dep. 80:12-81:1.)  He claimed that there have been "many instances where I didn't record someone's name, just people saying, 'Are you guys making cell phones' or comments like that." (Id. 88:18-89:12.)  Jacobs, however, did not have any record of names or dates for these alleged personal interactions, and he admitted that he did not know "why they were asking the questions." (Id.)  Jacobs testified about six specific alleged instances, only two of which he personally experienced and most of which duplicated the testimony by Albert Jacobs. (Id. 80:10-81:16.)

With three exceptions,[2] the alleged instances of confusion identified by the Jacobs brothers were relayed to them secondhand from Plaintiff's employees in response to John Jacobs' email seeking evidence of confusion. (See Ex. 8, Bates Nos. 3503-3504, 3513-3514.)  John Jacobs prepared a written summary of those responses, which he provided to Albert Jacobs, who reviewed the summary but did not see the responses themselves. (Lemper Decl., Ex. 5, A. Jacobs Dep. 10:7-14:18, 24:5-10, 27:15-21.)[3]  During the depositions of Plaintiff and the Jacobs brothers, Defendants requested that Plaintiff produce those documents. (Id. 11:17-14:1, 24:11-

---

[1]  The specific instances of confusion alleged by Plaintiff, including during the depositions of Albert and John Jacobs, are summarized in the chart attached as Exhibit 1 to the Declaration of Timothy Lemper submitted with this Motion.  The chart attached as Exhibit 2 to the Lemper Declaration summarizes the reasons that those instances are inadmissible.

[2]  (See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 7-8, 32.)

[3]  Citations are to the page and line number (e.g., "1:2" for page 1, line 2) of the deposition transcripts of Albert Jacobs ("A. Jacobs Dep.") and John Jacobs ("J. Jacobs Dep.").

16, 34:14-35:13; Lemper Decl., Ex. 6, J. Jacobs Dep. 82:19-83:8.)  Having not received the

requested documents, Defendants repeated their request in a letter to Plaintiff's counsel one week

later.  (Lemper Decl., Ex. 7, October 18, 2005 letter from M. Sommers to R. Kirby.)

    More than eight months later, on May 25, 2006, Plaintiff produced documents purporting

to evidence 16 instances of confusion.  On July 17 and 19, 2006, Plaintiff produced additional

documents purporting to show 14 more instances of confusion.  (See Lemper Decl., Ex. 8, Bates

Nos. 2717-2727, 3441-3452, 3477-3481, 3484, 3507-3511.)

### B.    Plaintiff Claims to Have Identified 32 Instances of Alleged Confusion

    Plaintiff's documents and the deposition testimony by its corporate witnesses purport to

identify 32 alleged instances of confusion.  This evidence is summarized in the chart attached as

Exhibit 1 to the Declaration of Timothy Lemper ("Chart of Plaintiff's Confusion Evidence").[4]

All of these alleged instances are inadmissible for several reasons, discussed below.

## III.   ARGUMENT

### A.    Courts Rigorously Scrutinize Confusion Evidence
### Based on Alleged Out-of-Court Statements

    Evidence of actual confusion is entitled to weight only if properly proved.  See Georgia-

Pacific Corp. v. Great Plains Bag Co., 614 F.2d 757, 762 (C.C.P.A. 1980).  However, "not all

evidence proffered to show actual confusion will be deemed in fact to show such confusion."

Sno-Wizard Mfg., Inc. v. Eisemann Products Co., 791 F.2d 423, 429 (5th Cir. 1986).  Often,

"there is less to it than meets the eye."  Inc. Publ'g Corp. v. Manhattan Magazine, Inc., 616 F.

Supp. 370, 389 (S.D.N.Y. 1985), aff'd 788 F.2d 3 (2d Cir. 1986).

---

[4]  For ease of reference, Defendants use the number designations "[*1]" to "[*30]" to identify
the 30 alleged instances of confusion referred to in the documents Plaintiff produced, attached as
Exhibit 8 to the Lemper Declaration.  Two alleged instances are identified only in deposition
testimony.  (See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 31-32.)

This case is a good example.  Although Plaintiff claims that there have been 32 alleged instances of confusion, it has failed to produce any direct, admissible evidence of relevant confusion among actual consumers of the parties' products.  Plaintiff's evidence consists entirely of alleged out-of-court statements by other declarants, many of whom are unidentified.  Although some courts have excluded such statements as inadmissible hearsay,[5] the First Circuit and this Court have admitted such evidence, either as non-hearsay or as hearsay admissible under the state-of-mind exception in Fed. R. Civ. P. 803(3).  See Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 31 (1st Cir. 1989); CCBN.com, Inc. v. C-call.com, Inc., 73 F. Supp. 2d 106, 113 (D. Mass. 1999); Black Dog Tavern Co. v. Hall, 823 F. Supp. 48, 56 n.10 (D. Mass. 1993).  Because the declarants are not available for cross examination, however, courts strictly limit the admission of such evidence to in-court testimony providing firsthand accounts of out-of-court statements that clearly and unambiguously demonstrate the existence of trademark-relevant confusion (i.e., confusion about the connection between the parties or the source of their products that is caused by the parties' marks).  As detailed in the sections that follow, courts refuse to admit confusion evidence where, like Plaintiff's evidence here, it consists of multiple

---

[5]  See Versa Prods. Co. v. Bifold Co., 50 F.3d 189 (3d Cir. 1995) (reversing trial court's reliance on hearsay testimony by plaintiff's official about statements by an employee recounting statements by people at trade shows); Vitek Systems, Inc. v. Abbott Labs., 675 F.2d 190, 193 (8th Cir. 1982) (excluding employee testimony about customer statements as "hearsay in nature" and "one of the most unsatisfactory kinds [of evidence] because it is capable of such varying interpretations") (citations omitted); Michael Caruso & Co. v. Estefan Enters., Inc., 994 F. Supp. 1454, 1462 n.3 (S.D. Fla. 1998) (excluding evidence that persons called plaintiff seeking defendant as "inadmissible hearsay and thus of no evidentiary value"); Alchemy II v. Yes! Entm't Corp., 844 F. Supp. 560, 570 n.12 (C.D. Cal. 1994) (excluding evidence of phone calls to plaintiff asking where to buy defendant's product as "inadmissible hearsay"); Jaret Int'l, Inc. v. Promotion in Motion, Inc., 826 F. Supp. 69, 73 (E.D.N.Y. 1993) (excluding employee statements that another person told him that the person mistakenly purchased defendant's candy when he meant to purchase plaintiff's candy); Transamerica Fin. Corp. v. Trans-Am. Collections, Inc., 197 U.S.P.Q. 43 (TTAB 1977) (excluding misdirected letters as hearsay).

layers of inadmissible hearsay, consists of vague and ambiguous statements that do not show confusion or do not show the nature or cause of the confusion, and/or comes from potentially biased declarants who are not making purchasing decisions in the marketplace.

**B.    Plaintiff's Evidence Contains Inadmissible Hearsay Within Hearsay**

Even if out-of-court statements by allegedly confused declarants are admissible as non-hearsay or as state-of-mind declarations, most of Plaintiff's evidence is still inadmissible because it recounts those statements through multiple layers of inadmissible hearsay. For example:

- No. 1:  Albert Jacobs' testimony *recounting* Shawn White's email *recounting* statements by "a friend here in town"
- No. 3:  Teke Capahlbo's email *recounting* statement by Ralph at Bless Your Sole
- No. 4:  Testimony by Albert and John Jacobs *recounting* Roy Heffernan's email *recounting* Kat MacKirdy's statements *recounting* a female customer's statements
- No. 5:  John Jacobs' testimony *recounting* Shawn White's email *recounting* Carole Scully's email *recounting* a neighbor's statements *recounting* a salesman's statements
- No. 6:  Testimony by Albert and John Jacobs *recounting* Susan DeMarco's email *recounting* Dawne Guay's statements *recounting* a salesperson's statements
- No. 7:  Testimony by Albert and John Jacobs and a written statement by an unknown author *recounting* statements by an unidentified neighbor
- No. 8:  Albert Jacobs' testimony and a note by an unknown author *recounting* statements by "Dave" the "dude"
- No. 9:  Albert Jacobs' testimony *recounting* David Coskey's email to Rich Cremin
- No. 10:  Note by an unknown author *recounting* Rick Horvatic's statement
- No. 16:  Karen Lynch's email *recounting* statements by a salesman and "someone"
- No. 17:  Rick Super's email *recounting* statements by "Robert," "the gentleman who is doing some of our remodeling"
- No. 18:  Roy Heffernan's email *recounting* statements by Frempong Kankam
- No. 19:  David Scully's email *forwarding* Vicki Castle's email *recounting* her sister's statements *recounting* a salesperson's statements
- No. 20:  Brian Conroy's email *forwarding* email from "Sal" *recounting* statements by "several customers and one travel person"
- No. 21:  Brian Conroy's email *forwarding* Audrey Curtis' email *recounting* statements by "a customer" and "our daughter"

6

- No. 22:  Lisa Zahra's email *recounting* statements by "a guy"
- No. 23:  Corrie Sorin's email *recounting* Matthew Hoffman's statements
- No. 24:  Corrie Sorin's email *recounting* Steven Hoffman's statements
- No. 25:  Gary Peck's email *forwarding* Michael Larson's email
- No. 26:  Corrie Sorin's email *forwarding* written statement by "Shawn White/Kathleen White" *recounting* statements by Alan Taschner
- No. 27:  Lisa Labarre's email *recounting* Daniel Pedneault's statements
- No. 28:  Lisa Labarre's email *recounting* statements by her daughter "Malori"
- No. 29:  Roy Heffernan's email *recounting* Danny Eng's statements
- No. 30:  Nancy Kluesner's email *recounting* statements by "folks"
- No. 31:  John Jacobs' testimony *recounting* Mike Sabourin's statements *recounting* statements by Sabourin's former co-worker, "Mike M."

(See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 1, 3-10, 16-31.)  This double, triple, and even quadruple hearsay is clearly inadmissible.[6]  See Fed. R. Evid. 805.

### C.    Plaintiff's Evidence Contains Statements Demonstrating that the Declarants Are Not Confused

Nine of Plaintiff's 32 alleged confusion instances are inadmissible because they fail to show confusion between the parties, and are therefore not relevant.

To be relevant and admissible to show confusion, Plaintiff's evidence *must actually show* confusion.  The First Circuit and this Court have repeatedly held that confusion is not shown where people clearly understand that the parties are different companies, including where people are merely alerting the plaintiff about the defendant.  See Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193, 195 (1st Cir. 1980) (evidence that consumers accused one party of

---

[6]  See also Copy Cop, Inc. v. Task Printing, Inc., 908 F. Supp. 37, 41-42 (D. Mass. 1995) (excluding hearsay statements by plaintiff's president about "two consumer queries to store employees indicating confusion" between the parties); Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1559 (S.D. Fla. 1990) (excluding out-of-court statements recounting others' out-of-court statements because "[s]uch double hearsay is not admissible under the state of mind exception"); Programmed Tax Sys., Inc. v. Raytheon Co., 439 F. Supp. 1128, 1131 n.1 (S.D.N.Y. 1977) (declarants may describe their own state of mind regarding confusion in a trademark case, but not another's state of mind).

copying the other and wanted to know which product was made first does not show actual confusion); Little Souls, Inc. v. Les Petits, 789 F. Supp. 56, 60 (D. Mass. 1992) (evidence that people at a trade show told plaintiff's salespeople that there was another booth offering dolls which looked like plaintiff's dolls fails to show that the people confused the parties' trademarks); Pump, Inc. v. Collins Mgmt., Inc., 746 F. Supp. 1159, 1169 (D. Mass. 1990) (Young, J.) (finding no evidence of actual confusion in plaintiff's affidavits because "none of the persons presented by the plaintiff as evidence of actual confusion mistakenly thought that the 'Pump' album was released solely by the band Pump. Each was aware that it was an Aerosmith recording.").[7]

As in the above cases, much of Plaintiff's evidence not only fails to show that consumers are confused, but in fact demonstrates that consumers are *not* confused by the parties' uses of "Life's Good" and "Life is good." The alleged statements demonstrate on their face that consumers understand that Plaintiff and Defendants are different companies that sell different products, and are merely alerting Plaintiff about Defendants. Those instances are:

- No. 2: "I just saw an advertisement for the 'Life's Good' company. I thought it was interestingly close to the 'Life is Good' copy write [sic]."

- No. 3: "Mention to the brothers that just last week, I had an account in Abilene, TX (Bless Your Sole) Ralph, the owner, ask me if people got the LIG brand slogan and LG confused with the 'Life's Good' slogan."

- No. 9: "I was in a Verizon Wireless store yesterday and I couldn't help but notice the 'LG' companies [sic] new logos and font. Very, very similar to Life is good. I don't know if you guys have looked into it, but they are definelty [sic] riding on your trademark."

- No. 11: "I'm very concerned at seeing advertisements for LG refrigerators and other things they make advertised with the motto, 'Life's Good.' It seems to me that 'Life's Good' would be some kind of infringement on your name or logo. Also, I don't want people to think I am advertising refrigerators."

---

[7]  See also 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:9 (4th ed. 2006) (evidence that defendant's mark "calls to mind" plaintiff's mark is not evidence of actual confusion) (citing cases).

- No. 12: "I have been an avid fan of your logo since I first saw it on a cap in Colorado where I lived for 7 years. I have become concerned that your name and logo are being used in the cell phone industry. I moved to Columbus Ohio a few months ago and just recently verizon wireless is marketing the LG phone under 'Life is Good,' ie. [sic] LG. My only concern is that I don't want to promote there [sic] product by wearing yours."

- No. 13: "You may already be aware, but in case you are not, you may be the victim of a Branding / Logo / Trademark issue. I was on LG's website and found their new tag line extremely similar to yours…LG—'Life's Good.' LG actually stands for Lucky Goldstar. They were a low end electronics manufacturer years ago that have reinvented themselves as LG and offering higher quality products now."

- No. 14: "I just saw an ad for LG appliances, and they used the line 'life's good' next to their 'smiley face' logo. It looked & sounded so much like yours that I thought I would give you the heads up."

- No. 15: "I just noticed that LG came out with a new product, some all in one cell phone, etc. with a tag line of 'Life is good' and immediately thought of your guys. Is that an infringement on your trademark? I'd hate for that to catch on and epoeple [sic] think of them and not you guys. It's not exact, but damn close."

- No. 28: "My 8 year old daughter, Malori, also made an observation and comment yesterday at Best Buy. We saw their name on an air conditioner box and she thought the writing (font) was a lot like ours. I think she thought it was very contemporary like ours."

(See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 2-3, 9, 11-15, 28.) Because such evidence shows that people are *not* confused between the parties or their uses of "Life's Good" and "Life is good.", it is not relevant or admissible to show actual confusion.

### D.    Plaintiff's Evidence Contains Inquiries that Fail to Show Confusion

The First Circuit and this Court have held that evidence of mere inquiries by consumers into the relationship, if any, between the parties or their products do not constitute evidence of actionable confusion. To the contrary, such inquiries show that consumers understand that the parties and/or their products are different. See Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 205 (1st Cir. 1996) (inquiries reveal doubt as to connection or affiliation, and do not on their face show actual confusion); Fisher Stoves, 626 F.2d at 195 (questions asking if two companies are affiliated or asking about differences in their products do not show actionable confusion because they "indicate that these customers, at least,

had the difference in source clearly in mind").  Far from being confused, the people making the

inquiries are taking steps to identify the parties and their products.  And a party's response to

such inquiries typically dispels any possibility for confusion.  See, e.g., Pump, 746 F.Supp. at

1169 ("Crucially, Ganci himself alleviated any confusion by informing them [people making

inquiries] that there was no connection between the two bands.").  Other courts have made

similar holdings.[8]

    As in those cases, Plaintiff's evidence includes instances of mere inquiries into the

possibility of an affiliation between the parties.  For example:

- No. 1:  "A friend here in town in conversation ref'd the LG ad and said "Life's Good . . . .that's your company right?"

- No. 4:  "I'm confused.  I—I don't know what Life is good. is.  I saw a billboard in New York City, and—and I see this store; is it all related?"

- No. 7:  "I think he had seen a 'life's good' ad and then he saw the air conditioner and asked if we made the product or had some association with it"

- No. 17:  "I've had the gentleman who is doing some of our remodeling mention LG twice to me asking if we were affiliated with that company . . . ."

- No. 30:  "I've had folks ask on occasion whether or not they owned Life is good now… or if we've licensed them to use our Life is good saying…  Usually it comes up

---

    [8]  See Nora Beverages, Inc. v. Perrier Group, Inc., 269 F.3d 114, 124 (2d Cir. 2001)
("Inquiries about the relationship between an owner of a mark and an alleged infringer do not
amount to actual confusion.  Indeed, such inquiries are arguably premised upon a lack of
confusion between the products such as to inspire the inquiry itself."); Lloyd's Food Prods. Inc.
v. Eli's Inc., 987 F.2d 766, 768 (Fed. Cir. 1993) (evidence that people "wondered" about a
possible relationship between the parties does not show confusion); Duluth News-Tribune v.
Mesabi Publ'g Co., 84 F.3d 1093, 1098 (8th Cir. 1996) ("The nature of the question [as to which
'News-Tribune' newspaper a reporter worked for] demonstrates an understanding that at least
two newspapers contain the words 'news' and 'tribune.'"); Toys "R" Us v. Lamps R Us, 219
U.S.P.Q. 340, 346 (TTAB 1983) ("The fact that questions have been raised as to the possible
relationship between firms is not by itself evidence of actual confusion of their marks."); 3
McCarthy § 23:16 ("[A] question as to possible affiliation reveals that the questioner had the
difference in mind or else would not have bothered even to enquire.") (citation omitted); cf.
Pump, 746 F.Supp. at 1169 (holding that inquiries as to an affiliation between the parties "reveal
a less than totally 'confused' state of mind" and "are insufficient evidence of actual confusion")
(citations omitted).

at a show venue where there are more people and someone whips out an LG phone…. then someone else says 'hey, are you guys (LIG) connected to LG company?'."

- No. 32:  A friend saw "life's good" at a Los Angeles basketball arena and "called on the cell phone and said, 'Hey, you know, is this you guys?  What is this all about?'"

(See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 1, 4, 7, 17, 30, 32.)  As in Pump, Plaintiff's responses to those inquiries alleviated the possibility of confusion.  Because these mere inquiries fail to show actual consumer confusion, they should be excluded.

### E.    Plaintiff's Evidence Contains Statements that Are So Vague and Ambiguous that Their Relevance Cannot Be Established

Plaintiff's evidence is so vague and ambiguous that the Court can only speculate as to its relevance and probative value.[9]  This is true in at least three respects:

#### 1.    Plaintiff's Evidence Contains Statements that Fail to Show the Cause of the Alleged Confusion

To be admissible, Plaintiff's evidence must show that the alleged confusion is relevant for trademark purposes, i.e., that it is caused by the Defendants' use of "Life's Good."[10] Evidence that fails to show that the alleged confusion is caused by Defendants' use of "Life's Good" is not relevant or probative to show trademark-related confusion.[11]  While it might be

---

[9]  This Court noted the paucity of Plaintiff's evidence during oral argument on Defendants' motion for summary judgment.  See June 15, 2006 Hearing Tr., Docket No. 56, at 13:10-12 ("Some of these affidavits are pretty thin.  We're going to need actual evidence of confusion it seems to me.  Some of these things are conclusory.").

[10]  As to the cause of trademark-relevant confusion, see Richard L. Kirkpatrick, Likelihood of Confusion in Trademark Law, § 7:9 (PLI June 2006) ("If something other than defendant's mark [caused the confusion], then the evidence is irrelevant.").  As to the nature of trademark-relevant confusion, see Alta Vista Corp. v. Digital Equip. Corp., 44 F. Supp. 2d 72, 79 (D. Mass. 1998) (explaining that trademark law protects against confusion about the source or sponsor of goods, and dismissing evidence of confusion about which party was the legitimate owner of a mark because it was "not really the sort of confusion which counts under trademark law.") (quoting DeCosta v. Viacom Int'l, Inc., 981 F.2d 602 (1st Cir. 1992)).

[11]  See Duluth News-Tribune, 84 F.3d at 1098 ("vague evidence of misdirected phone calls and mail" is "hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion'"); Toys "R" Us, 219 U.S.P.Q. at 346 (testimony that people asked if the parties were affiliated contained

(continued)

inferred that the confusion is caused by Defendants' use of their "Life's Good" tagline, "the point is too important to be established by means of an inference, unsupported by corroborating evidence." Toys "R" Us v. Lamps R Us, 219 U.S.P.Q. 340, 346 (TTAB 1983).

This Court rejected such ambiguous evidence of confusion in HQ Network Systems v. Executive Headquarters, 755 F. Supp. 1110 (D. Mass. 1991) (Young, J.). In that case, the parties leased office space using the respective marks HEADQUARTERS COMPANIES and EXECUTIVE HEADQUARTERS. The plaintiff presented an employee's testimony that she had received a telephone call from a man who wanted to know how much the plaintiff charged for its office suites. 755 F. Supp. at 1115, 1119. The caller stated that he had visited the plaintiff's office on Congress Street, but did not indicate why he believed the plaintiff had an office on Congress Street. Id. When the employee told the caller that the plaintiff had no offices on Congress Street, the caller became sarcastic and hung up. Id. The plaintiff argued that this testimony was evidence of actual confusion with the defendant because the defendant leased

---

(continued)

"nothing to indicate whether the reason for the question as to affiliation was the result of the similarity of the marks"); CMM Cable Rep. v. Ocean Coast Props., Inc., 888 F. Supp. 192, 201 (D. Me. 1995) (testimony that callers asked if plaintiff sponsored defendant's contest fails to show whether the callers were actually confused); Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477, 487 (5th Cir. 2004) (finding "no competent evidence" to connect instances of confusion to any representation by defendant); Inc. Publ'g, 616 F. Supp. at 389-90 ("[I]n almost all cases we have no idea what prompted the declarations. . . . To the extent that . . . the evidence does not reveal why they were made, they are not probative."); Windsor, Inc. v. Intravco Travel Ctrs., 799 F. Supp. 1513, 1525 (S.D.N.Y. 1992) (dismissing evidence that plaintiff received a bill intended for defendant because "no testimony was elicited . . . as to the reason the bill was sent to the wrong company"); Marshall Field v. Mrs. Fields Cookies, 25 U.S.P.Q.2d 1321, 1326-27 (TTAB 1992) ("we do not have the benefit of the testimony of the allegedly confused individuals from which to determine what may have been responsible for such confusion"); Rally's, Inc. v. Int'l Shortstop, Inc., 776 F. Supp. 451, 457 (E.D. Ark. 1990) (noting the lack of evidence that the alleged confusion was caused by the similarity in the parties' trade dress); Seaguard Corp. v. Seaward Int'l, Inc., 223 U.S.P.Q. 48, 52 (TTAB 1984) (dismissing testimony that a man asked plaintiff whether it also made fenders (defendant's product) because of "the absence of testimony from the gentleman himself as to the reasons for his question").

office space on Congress Street. This Court held, however, that the testimony was too vague to prove actual confusion between the plaintiff's services and the defendant's services. Id. at 1119.

Like the evidence in HQ Network and the other noted cases, Plaintiff's evidence contains statements that do not identify the Defendants or their tagline as the cause of the alleged confusion, thus requiring the Court to engage in impermissible speculation about the relevance and probative value of such evidence.

First, 17 of Plaintiff's 32 alleged instances of confusion never identify Defendants as the source of the products or advertising alleged to have caused confusion. (See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 1-2, 4-8, 10, 20-21, 24-27, 29, 31-32; see e.g., id., No. 8 (testimony that "Dave" did not indicate that he was referring to *Defendants'* cell phone)). Like the plaintiff in HQ Network who assumed the caller was referring to the defendant's office on Congress Street, Plaintiff *assumes* that these statements refer to Defendants' advertisements and products. See, e.g., id., No. 1 (testimony that "it's highly unlikely" that the original declarant saw an advertisement by someone other than Defendants "because I've never seen an ad that says 'life's good' for any company except" Defendants, but later testimony that other companies do in fact use "life's good" or "life is good" in advertisements); No. 7 ("He pointed to an air conditioner, which I *believe* was an LG air conditioner"; it was "my speculation, that he saw the ad and then he saw the product"). Without evidence that these instances involved Defendants' products or advertising, however, such anecdotes are irrelevant. See Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477, 487 (5th Cir. 2004) (finding no evidence that instances of confusion were connected to representations by defendant).

In addition to those instances that fail even to identify Defendants, 14 of Plaintiff's 32 instances consist of statements that fail to identify Defendants' "Life's Good" tagline as the

cause of the alleged confusion.  (See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., Nos.

1, 4, 6-8, 10, 19-22, 24, 29, 31-32.)  Like the plaintiff in HQ Network who assumed that the

caller was confused by both parties' use of the term HEADQUARTERS, Plaintiff *assumes* that

the alleged confusion is caused by the parties' respective uses of "Life's Good" and "Life is

good."[12]  (See, e.g., id., No. 4 ("I probably make some assumptions as to why she was

confused"); No. 7 (John Jacobs testimony that he "could only speculate" about the cause of his

neighbor's alleged confusion "because I don't know"); No. 8 ("I assume if he thinks my

company is Life is good., that that's where it came from").)

Such statements are not admissible because their relevance and probative value depend

on speculation and assumption.  Because these statements fail to show trademark-related

confusion on their face, they lack any probative value and should be excluded.

### 2. Plaintiff's Evidence Contains Vague and Ambiguous Paraphrases, Often by Unidentified Declarants

Plaintiff also relies on evidence that merely assert the existence of confusion or

paraphrase statements allegedly demonstrating confusion among other, often unidentified,

declarants.  The Seventh Circuit held that such vague evidence is irrelevant and inadmissible in

Smith Fiberglass Prods. v. Ameron, Inc., 7 F.3d 1327 (7th Cir. 1993).  In that case, the plaintiff

offered an employee's testimony that at an Air Force trade show "*a gentleman* came in the booth

and picked up my sample and *said something like*, have you been over to [the defendant's]

booth, you're not making that pipe [for them] are you?  It looks just like a Smith product."  Id. at

---

[12]  The self-serving statements by Plaintiff's employees asserting the existence of confusion and/or purporting to explain *why* the declarant was confused are speculative, unsubstantiated hearsay offered for their *truth*.  (See, e.g., Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., No. 22 ("He did think it was one in the same."); No. 24 ("He was confused because the commercial does not make it clear until the very end that it is trying to advertise the dryer, rather then the dress. . . .  He owns several Life is good t-shirts, and still could not decipher between LG and Life is good.").)

1330-31 (emphasis in original).  The district court, noting "the lack of an exact quote or even the identity of the person making the statement," excluded this testimony on hearsay and relevancy grounds.  Id. at 1331.  The court held that this statement was not admissible as a state-of-mind declaration "because the identity of the declarant was unknown (someone had the state of mind described, but who?) and only 'said something like' confusion between the two pipes existed." Id. at 1331 n.2.  On appeal, the Seventh Circuit affirmed the trial court's decision, refusing "without hesitation" to craft an exception to the hearsay rule "for paraphrases of state of mind declarations by unknown declarants."[13]  Id. at 1331.

Plaintiff's evidence consists of the same kind of "said something like" paraphrases that were excluded in Smith Fiberglass.  (See Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., No. 1 (A. Jacobs' testimony that "a neighbor of Shawn White's or a friend or associate of somebody that he knew" said "I saw your ad for life's good; that's your company, isn't it,' something along those lines, may have mentioned the products"); No. 4 (J. Jacobs' testimony that a female customer asked "is that your ad or I don't really understand what Life is good. makes or something like that"); No. 6 (A. Jacobs' testimony that a woman told Plaintiff's employee "something along the lines of, you know, 'When did these guys get involved with appliances?'"); No. 7 (A. Jacobs' testimony that J. Jacobs' neighbor "questioned in some fashion if our company had produced [the air conditioner] or something along that—those lines").)

_____

[13]  See also Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., 426 F.3d 1001, 1009-10 (8th Cir. 2005) (dismissing testimony by plaintiff's employee about 5 to 10 inquiries in a two-year period because "the ambiguous testimony of an interested person," who "cannot specifically recall what they said to him, the names of the individuals who questioned him, or the dates or locations of the inquiries," amounts to "no more than a scintilla of evidence" if even admissible); Bigfoot 4x4, Inc. v. Bear Foot, Inc., 5 U.S.P.Q.2d 1444, 1447 (TTAB 1987) ("extremely vague and nonspecific" testimony about 15 instances of confusion by unidentified people is "entitled to little, if any, probative value").

### 3.   *Plaintiff's Evidence Contains Broad and Conclusory Assertions*

Plaintiff's evidence contains broad and sweeping general assertions about the existence of confusion among others.  Such evidence has been held to be neither relevant nor admissible to prove actual confusion.  In Resource Developers, the plaintiff offered statements by an employee that the sale of defendant's flags had "caused great confusion to prospective customers."  Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 1990 U.S. Dist. LEXIS 5877, at *13-14 (S.D.N.Y. 1990).  The court rejected that evidence because "[t]he nature of that 'confusion' is not specified" and the statements reflect "nothing more than an inadmissible mental impression" of the *employee*, not the consumers.  Id. at *14.  Similarly, the court rejected an affidavit by the owner of plaintiff's marketing company stating that "stores . . .were confused and believed that [the defendant] was officially affiliated with" the plaintiff's activities.  Id. at *16.  The court held that this evidence "is far too broad and non-specific a statement to qualify as admissible evidence under the hearsay rule."  Id. at *16.

Here, Plaintiff seeks to rely on the same kind of broad and conclusory assertions that were rejected in Resource Developers.  For example, Plaintiff's evidence includes the following:

- Plaintiff's discovery responses asserting that there have been "dozens if not hundreds" of instances of confusion.  (Lemper Decl., Ex. 3, Pl.'s Resp. to Defs.' First Set of Interrogs., Nos. 7-8.)

- Albert Jacobs' testimony that "there's many, many instances" of confusion and that it is "very common for people to make comments which I would classify as either confusion about LG and our company, Life is good., or seeking clarification about whether we're involved with LG, whether our company is involved with LG. . . . .  Sometimes they very clearly indicate that they've seen advertisements that say 'life's good' or say 'life's good' and have the LG face. And sometimes they don't, sometimes they just ask the question or—or state that they're confused about it."  (Lemper Decl., Ex. 5, A. Jacobs Dep. 17:4-12, 46:14-47:8.)

- John Jacobs' testimony that "I've had several personal interactions where people were—were confused" and that "[a] lot of times, it's personal interactions with people when you just meet them and you tell them what you do, they say—you know, that's when the confusion usually comes up."  (Lemper Decl., Ex. 6, J.

Jacobs Dep. 80:10-81:1.)

- No. 6: "The only thing that happens over and over are people (friends, people who know that I sell LIG) but are not in the business asking me: I didn't know LIG sells telephones, refrigerators, etc." (Lemper Decl., Ex. 1, Chart of Pl.'s Confusion Evid., No. 6.)

Neither Plaintiff nor its witnesses have specific information or documents to substantiate these sweeping claims beyond the hopelessly vague and deficient evidence already discussed above. (See Lemper Decl., Ex. 5, A. Jacobs Dep. 39:9-40:1; Lemper Decl., Ex. 6, J. Jacobs Dep. 80:10-81:1, 88:18-89:12.) These claims are so vague and conclusory that they cannot be admissible to prove actual confusion in the minds of unidentified consumers.

**F.    Plaintiff's Evidence Fails to Show Relevant Confusion Among Consumers Making Purchasing Decisions in the Marketplace**

To be relevant, Plaintiff's evidence must show confusion among *consumers* making purchasing decisions in the marketplace, not comments by employees, retailers, family, and friends in non-commercial settings.[14] See Packman v. Chicago Tribune Co., 267 F.3d 628, 645 (7th Cir. 2001) (affirming trial court's rejection of evidence of actual confusion by family, friends, and a former co-worker because plaintiff "did not show that the four individuals had purchased or attempted to purchase 'the joy of six' goods, either from her or from defendants, and thus they

---

[14]    See also Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000) ("Since attestations from persons in close association and intimate contact with [the senior user] do not reflect the views of the purchasing public, the district court correctly found plaintiff's evidence of actual confusion from acquaintances, friends, and family insufficient.") (citation omitted); Freedom S&L Ass'n v. Way, 757 F.2d 1176, 1185 (11th Cir. 1985) (affirming trial court's decision to discount friends' testimony because "none of the friends were identified as potential customers"); Inc. Publ'g, 616 F. Supp. at 389-90 ("These declarants . . . were not consumers, actually contemplating placing an ad or subscribing to or purchasing the magazine. . . . To the extent that the declarations are those of nonconsumers . . . , they are not probative."); Windsor, 799 F. Supp. at 1525 (dismissing evidence of confusion because "it involved confusion of another supplier within the travel industry rather than of a consumer who purchases the services in question"); Jonbil v. Int'l Multifoods, 3 U.S.P.Q.2d 1882, 1886 (TTAB 1987) (finding testimony "insufficient to demonstrate actual confusion by potential purchasers of the respective goods in the commercial marketplace" because the witnesses "were not truck drivers, who are the ordinary purchasers of both opposer's products and of applicant's products").

were not relevant 'consumers' under the Lanham Act"); <u>Alta Vista</u>, 44 F. Supp. 2d at 79 ("[T]he relevant confusion is that which affects the purchasing and selling of the goods or services in question.") (quotation omitted).

In this case, 23 of the 32 instances of alleged confusion involve Plaintiff's owners, employees, family, friends, and retailers whose alleged confusion did not arise while making purchasing decisions in the marketplace. (<u>See</u> Lemper Decl. Ex. 1, Chart of Pl.'s Confusion Evid., Nos. 1-3, 7-9, 11-15, 17-18, 22-30, 32.) The remaining nine instances only arguably involve consumers in a commercial setting. (<u>See</u>, <u>e.g.</u>, <u>id.</u>, Nos. 4-6, 10, 16, 19, 21, 31.)

In contrast to the tales of alleged confusion provided by Plaintiff's close associates, the Rule 30(b)(6) witness for Plaintiff, Albert Jacobs, had no knowledge of any confusion among consumers in the marketplace that affected purchases or sales of the parties' products. <u>See</u> <u>Alta Vista</u>, 44 F. Supp. 2d at 79. Jacobs testified that he had no knowledge of any instance where a consumer has purchased Plaintiff's product believing it to have been manufactured by Defendants, or vice versa. (<u>See</u> Lemper Decl. Ex. 5, A. Jacobs Dep. 38:20-39:8.) He also testified that he had no knowledge of any misdirected complaints, telephone calls, product orders, or product returns intended for Defendants that were sent to the Plaintiff by mistake. (<u>Id.</u> at 45:6-17, 121:22-122:5.) He did not know of any sales or business that Plaintiff has lost as a result of Defendants' use of their "Life's Good" tagline. (<u>Id.</u> at 176:18-22.)

### G.    Plaintiff's Evidence of De Minimis Confusion Is Not Legally Sufficient to Prove a Likelihood of Confusion

Even if Plaintiff's evidence is credited, it is legally insufficient to show actionable confusion when measured against the billions of opportunities for such confusion during the nearly three years since Defendants began using the "Life's Good" corporate tagline. The First Circuit and this Court have routinely indicated that evidence of de minimis confusion is legally

insufficient to prove a likelihood of confusion.[15]

Plaintiff's 32 alleged instances of confusion are clearly insufficient as a matter of law to prove trademark infringement.  On summary judgment, the parties presented the Court with undisputed evidence that, for nearly three years now, the parties have collectively spent millions of dollars in advertising and generated billions of dollars in sales using their respective "Life is good." slogan and "Life's Good" corporate tagline.  See Defs.' Mem. in Supp. of Mot. for Summ. J., Docket No. 28, pp. 8-9 and Lemper Decl., Docket No. 29, Exs. 2, 16-17, 21 (evidence Plaintiff's combined sales were nearly $100 million for 2004 and 2005, and Defendants' annual sales were $8 billion and annual advertising was $100 million for 2004 and 2005); Pl.'s Rule 56.1 Stmt. of Disputed Facts, Docket No. 44, p. 19, ¶ 17, and Jacobs Aff., Docket No. 40, ¶ 6 (evidence that Defendants spend $100 million per year on advertising, the majority of which contains the "Life's Good" tagline, and that Plaintiff has spent $4 million on advertising since 1998).[16]  Despite the enormity of the public's exposure to the parties' marks and the billion plus opportunities for confusion to occur, Plaintiff has produced evidence of, at most, 32 total

---

[15]  See Int'l Ass'n of Machinists, 103 F.3d at 200-201 (the law requires a showing of a likelihood of confusion among "an appreciable number" of consumers; isolated instances of confusion do not prove probable confusion); Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983) ("[A]ny confusion which may have occurred was de minimis, and is not sufficient to raise a genuine issue of fact relating to the likelihood of confusion issue"); DeCosta v. Columbia Broad. Sys., Inc., 520 F.2d 499, 514-515 (1st Cir. 1975) (evidence of six confused consumers is "either no evidence at all or so minimal as not to support a finding of likelihood of confusion"); Infinity Broad. Corp. v. Great Boston Radio, II, 1993 U.S. Dist. LEXIS 12284, *35 (D. Mass. 1993) ("[D]e minimis confusion is of minimal legal significance."); Alta Vista, 44 F. Supp. 2d at 79-80 (two instances of confusion in two and a half years of using nearly identical marks is an "insubstantial showing of confusion"; even larger numbers of confused consumers is still considered insignificant where the parties have millions of customers); 3 McCarthy § 23:14 ("[T]he number of instances of actual confusion must be placed against the background of the number of opportunities for confusion.").

[16]  Plaintiff will introduce evidence at trial showing that an estimated 130 million consumers encountered Defendants' "Life's Good" tagline with the LG mark and LG Logo an average of 15 times in 2004 and 18 times in 2005, totaling more than 4 billion exposures.

instances of alleged confusion, 15 showing no confusion and all suffering other evidentiary infirmities, as discussed above.[17]  Plaintiff's evidence of alleged confusion is clearly de minimis (literally less than one instance of alleged confusion for every hundred million opportunities) and should be excluded.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant Defendants' motion in limine to strike Plaintiff's evidence of alleged confusion.

## V.    LOCAL RULE 7.1 CERTIFICATION

In accordance with Local Rule 7.1(a)(2), Defendants have conferred with Plaintiff, and have ascertained that Plaintiff will not stipulate to this motion.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.

Date:  August 25, 2006

/s/  Timothy A. Lemper

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 25, 2006.

/s/  Timothy A. Lemper

---

[17]  Despite an extensive search, Defendants have not identified a single instance of confusion. See Decl. of Danny Awdeh in Supp. of Defs.' Mot. for Summ. J., Docket No. 49, ¶¶ 4-5 & Exs. 3-4 (describing Defendants' search for instances of confusion).