LIFE IS GOOD, INC. V. LG ELECTRONICS U.S.A., INC
Civil Action No. 04 11290 WGY

DECLARATION OF TIMOTHY LEMPER IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO STRIKE PLAINTIFF'S EVIDENCE OF ALLEGED CONFUSION

# Exhibit 5

1　　　　　　　UNITED STATES DISTRICT COURT

2　　　　　　　　DISTRICT OF MASSACHUSETTS

3 - - - - - - - - - - - - - - x

4 LIFE IS GOOD, INC.,

5　　　Plaintiff,　　　　　　Civil Action

6 vs.　　　　　　　　　　　No. 04-cv-11290-REK

7 LG ELECTRONICS, U.S.A., INC.,

8 LG ELECTRONICS MOBILECOMM

9 U.S.A., INC., (formerly

10 LG INFOCOMM U.S.A., INC.),

11 Defendants.

12 - - - - - - - - - - - - - x

13　　RULE 30(b)(6) VIDEOTAPED DEPOSITION of Life is

14 good., Inc., represented by Albert A. Jacobs, a

15 witness called by and on behalf of the Defendants,

16 taken pursuant to the provisions of the Federal

17 Rules of Civil Procedure, before Dana Welch, a

18 Registered Professional Reporter and Notary Public

19 in and for the Commonwealth of Massachusetts, at the

20 offices of Finnegan, Henderson, Farabow, Garrett

21 & Dunner, LLP, on Thursday, October 13, 2005,

22 commencing at 9:36 a.m.

| | | |
|---|---|---|
| 1 A | Met with my counsel and received some general | 09:42:04 |
| 2 | advice. | 09:42:07 |
| 3 | MR. KIRBY:  Don't go into any of the | 09:42:09 |
| 4 | specifics of the advice. | 09:42:11 |
| 5 | THE WITNESS:  Right. | 09:42:12 |
| 6 | BY MR. SOMMERS: | 09:42:14 |
| 7 Q | Mr. Jacobs, in looking at the various topics that | 09:42:14 |
| 8 | are scheduled for the deposition today, did you | 09:42:21 |
| 9 | take any actions to educate yourself on any of | 09:42:28 |
| 10 | those subjects? | 09:42:31 |
| 11 A | No. | 09:42:32 |
| 12 Q | Did you take -- did you discuss with anybody other | 09:42:32 |
| 13 | than your attorney about the subject matter that | 09:42:38 |
| 14 | are noticed in this deposition? | 09:42:41 |
| 15 A | Yes. | 09:42:43 |
| 16 Q | Who was that? | 09:42:44 |
| 17 A | Some business associates. | 09:42:46 |
| 18 Q | And what are their names? | 09:42:48 |
| 19 A | Shawn White.  And I guess I would clarify that.  I | 09:42:51 |
| 20 | believe the only communication was e-mail, so I | 09:42:56 |
| 21 | don't know if that qualifies as discussion.  But | 09:42:59 |
| 22 | Shawn White, who is one of our national sales | 09:43:02 |

1        managers; Rich Cremin, who is also a national sales   09:43:06

2        manager for Life is good.; Roy Heffernan, who is      09:43:10

3        the COO at Life is good,; and my brother, John, who   09:43:14

4        is my partner and co-owner of Life is good.          09:43:23

5   Q    Anyone else?                                          09:43:27

6   A    I don't think so.                                     09:43:28

7   Q    With Mr. White, what was the nature of your           09:43:29

8        discussions?                                          09:43:34

9   A    I believe that I asked Shawn for specifics on areas   09:43:35

10       of confusion that he recollected.                    09:43:48

11  Q    Any other subjects?                                   09:43:51

12  A    I don't think so.                                     09:43:57

13  Q    Mr. Cremin?                                           09:43:58

14  A    Same.  Actually, all of this would be under one      09:44:01

15       e-mail that -- that came from my brother, John, and  09:44:04

16       that I was copied on.                                09:44:08

17  Q    Okay.  All right.  And this is -- this e-mail all     09:44:09

18       related to these individuals of instances of         09:44:14

19       confusion?                                           09:44:17

20  A    Yes.                                                  09:44:18

21  Q    Was there any other subject discussed?               09:44:18

22  A    I don't think so.                                     09:44:21

1  Q    Do you have a copy of that e-mail?         09:44:22

2  A    I do not.         09:44:24

3           MR. SOMMERS:  We would ask that it be         09:44:26

4    produced.         09:44:29

5    BY MR. SOMMERS:         09:44:31

6  Q    Can you tell me the general subject matter of the         09:44:31

7    e-mail?         09:44:33

8  A    The general subject matter?         09:44:34

9  Q    Yes.         09:44:36

10  A    I believe I already did.         09:44:37

11  Q    And it was generally about confusion?         09:44:38

12  A    That's right.         09:44:40

13  Q    Do you have any specific recollection of what was         09:44:41

14    said?         09:44:43

15  A    No.  I think that's -- about tells it.         09:44:43

16  Q    Okay.  And what was the purpose of the e-mail?         09:44:48

17  A    To -- to find out their knowledge about confusion         09:44:52

18    that they had experienced.         09:44:58

19  Q    Did you have any telephone discussions with them?         09:45:03

20  A    Not Cremin, not White, not Heffernan, and not --         09:45:07

21    no, I didn't; perhaps my brother, but I don't         09:45:19

22    specifically recollect.         09:45:22

1  Q   Well, let's go into -- into the nature of those        09:45:23

2      discussions or the e-mail.  Did you receive a          09:45:27

3      response to your e-mail from any of these              09:45:31

4      individuals?                                           09:45:34

5  A   Yes.                                                   09:45:34

6  Q   Who did you receive responses from?                    09:45:35

7  A   All of them.                                           09:45:39

8  Q   Okay.  And were the responses by e-mail?               09:45:40

9  A   Yes.                                                   09:45:44

10            MR. SOMMERS:  Okay.  We could ask that          09:45:46

11     copies of those documents be produced.                 09:45:48

12     BY MR. SOMMERS:                                        09:45:51

13 Q   Specifically, what was the response that Mr. White     09:45:52

14     gave you?                                              09:46:00

15 A   To be honest, I didn't see all the -- all the          09:46:01

16     individual responses; I saw a summary of them put      09:46:06

17     together by my brother.                                09:46:09

18 Q   And what form was the summary?                         09:46:11

19 A   What form was the summary?                             09:46:15

20 Q   Was it in writing?                                     09:46:20

21 A   It was in writing.                                     09:46:22

22            MR. SOMMERS:  I'd ask that a copy of that 09:46:24

19981
FieldRptr

14

| | | |
|---|---|---|
| 1 | document be produced. | 09:46:26 |
| 2 | BY MR. SOMMERS: | 09:46:28 |
| 3 Q | Are there any of the documents that Mr. White, | 09:46:30 |
| 4 | Mr. Cremin, Mr. Heffernan and your brother sent | 09:46:36 |
| 5 | about instances of confusion that you saw | 09:46:39 |
| 6 | individually, aside from the summary that your | 09:46:43 |
| 7 | brother John prepared? | 09:46:46 |
| 8 A | Could you repeat that question, please? | 09:46:48 |
| 9 Q | Absolutely. | 09:46:50 |
| 10 | Did you look at the various e-mails you | 09:46:52 |
| 11 | received from Mr. White, Mr. Cremin and | 09:46:56 |
| 12 | Mr. Heffernan (sic) and Mr. -- | 09:46:59 |
| 13 | MR. KIRBY:  Heffernan. | 09:47:02 |
| 14 | MR. SOMMERS:  Heffernan.  Thank you. | 09:47:04 |
| 15 | THE WITNESS:  Heffernan, yeah. | 09:47:06 |
| 16 | No.  As I stated, I did not.  To repeat, | 09:47:07 |
| 17 | I did not look at the individual, but I looked at a | 09:47:10 |
| 18 | summary. | 09:47:12 |
| 19 | BY MR. SOMMERS: | 09:47:12 |
| 20 Q | Okay. | 09:47:12 |
| 21 A | I mean, I likely was copied on all of them, but I | 09:47:13 |
| 22 | just can't get to my e-mail every day. | 09:47:16 |

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646

| | | |
|---|---|---|
| 1 | Q | And do you recall what the summary said? | 09:47:18 |
| 2 | A | Yes.  It indicated there were several instances of | 09:47:19 |
| 3 | | confusion. | 09:47:24 |
| 4 | Q | Okay.  Can you tell me specifically what those are? | 09:47:24 |
| 5 | A | I couldn't -- I couldn't cover all of them, but I | 09:47:27 |
| 6 | | could probably name a few. | 09:47:32 |
| 7 | Q | I'd like -- | 09:47:34 |
| 8 | A | Would you like me to proceed? | 09:47:37 |
| 9 | Q | I'd like you to proceed. | 09:47:39 |
| 10 | A | Okay.  In one case, Shawn White indicated that a | 09:47:41 |
| 11 | | neighbor of his -- a neighbor of his said, "I saw | 09:47:47 |
| 12 | | your ad for "life's good," isn't that your | 09:47:54 |
| 13 | | company?"  And Shawn -- Shawn indicated that | 09:47:58 |
| 14 | | although he corrected the gentleman, that that was | 09:48:02 |
| 15 | | not our company, it was an ad for electronics, that | 09:48:06 |
| 16 | | later, he remained confused and still asked him | 09:48:11 |
| 17 | | how's things at life's good; that was one instance. | 09:48:16 |
| 18 | | Another involved -- involved a sales rep | 09:48:22 |
| 19 | | of Shawn's who mentioned a consumer who was | 09:48:27 |
| 20 | | shopping at Best Buy and asked about a | 09:48:32 |
| 21 | | refrigerator.  And the person said, "That | 09:48:37 |
| 22 | | refrigerator is made by Life is good."  And the | 09:48:40 |

19981
FieldRptr

16

1    neighbor asked this sales rep, whose name is Susan   09:48:44

2    deMarco, asked this sales rep, "When did these guys  09:48:49

3    get involved in appliances?"               09:48:56

4  Q   Any others?                          09:49:01

5  A   Let's see.  Yeah, there's another one.  One that  09:49:03

6    came in from Roy Heffernan was a recollection of a   09:49:08

7    consumer coming into our flagship retail store on   09:49:12

8    Newbury Street in Boston and saying, "I'm confused. 09:49:17

9    I -- I don't know what Life is good.is.  I saw a   09:49:24

10   billboard in New York City, and -- and I see this   09:49:28

11   store; is it all related?"              09:49:35

12      What else?  Rich Cremin sent information 09:49:37

13   from someone he knows, I believe it's a nephew of   09:49:52

14   his, who sent an e-mail to him asking for        09:50:00

15   clarification about what LG is and saying, "Do you  09:50:03

16   -- do you know these guys" -- I believe he used the 09:50:09

17   wrong terminology and he said, "Do you know these  09:50:11

18   guys are using or stealing your copyright?"     09:50:14

19       My brother added on the list that his    09:50:23

20   neighbor made a comment about his air conditioner  09:50:27

21   and wondered if -- if our company had produced it.  09:50:34

22   I think that's all I can remember.          09:50:44

| | | | |
|---|---|---|---|
| 1 | Q | Okay. | 09:50:46 |
| 2 | A | But by no means does that mean that's complete on | 09:50:47 |
| 3 | | what the summary was. | 09:50:50 |
| 4 | Q | Do you understand that part of the topics that are | 09:50:51 |
| 5 | | covered in this deposition was to be able to | 09:51:00 |
| 6 | | identify all instances of confusion? | 09:51:02 |
| 7 | A | I understand.  But it was also my understanding | 09:51:05 |
| 8 | | that, you know, if I couldn't recollect all of | 09:51:08 |
| 9 | | them, and certainly it would be impossible from my | 09:51:14 |
| 10 | | perspective to recollect all of them, it's very | 09:51:18 |
| 11 | | common for there to be confusion and we hear it | 09:51:21 |
| 12 | | quite often.  So -- | 09:51:24 |
| 13 | Q | Well, let's go back over these and I will -- I will | 09:51:27 |
| 14 | | return to that last comment. | 09:51:35 |
| 15 | | Mr. Heffernan -- | 09:51:38 |
| 16 | | MR. KIRBY:  Jacobs. | 09:51:42 |
| 17 | | MR. SOMMERS:  Oh, thank you. | 09:51:45 |
| 18 | | BY MR. SOMMERS: | |
| 19 | Q | Mr. -- Mr. John Jacobs -- | 09:51:46 |
| 20 | A | Bert Jacobs. | 09:51:48 |
| 21 | | MR. KIRBY:  I think we're all talking | 09:51:51 |
| 22 | | past each other.  Let him -- let him finish. | 09:51:53 |

19981
FieldRptr

18

| | | | |
|---|---|---|---|
| 1 | | MR. SOMMERS:  Yeah. | 09:51:55 |
| 2 | | BY MR. SOMMERS: | 09:51:56 |
| 3 | Q | You indicated that the last instance of confusion, | 09:51:57 |
| 4 | | which was your brother, John; am I correct? | 09:52:01 |
| 5 | A | That's right. | 09:52:03 |
| 6 | Q | And that's John Jacobs? | 09:52:04 |
| 7 | A | Yes. | 09:52:06 |
| 8 | Q | Okay.  And you've told me that a neighbor of his | 09:52:06 |
| 9 | | asked him about an air conditioner. | 09:52:10 |
| 10 | A | Yeah. | 09:52:11 |
| 11 | Q | Okay.  Now, who is -- who is the individual that is | 09:52:12 |
| 12 | | John Jacobs' neighbor? | 09:52:17 |
| 13 | A | I don't know.  Let me think of this guy.  I've met | 09:52:24 |
| 14 | | him once.  I can't think of his name. | 09:52:27 |
| 15 | Q | Okay. | 09:52:28 |
| 16 | A | He lives -- he shares a -- I mean, lives in a | 09:52:29 |
| 17 | | condominium, above or beneath him. | 09:52:32 |
| 18 | Q | Now, what specifically did he say? | 09:52:35 |
| 19 | A | I know only what I told you. | 09:52:37 |
| 20 | Q | And what exactly do you recall -- | 09:52:41 |
| 21 | A | Want me to repeat what I -- | 09:52:48 |
| 22 | Q | Please. | 09:52:51 |

| | | | |
|---|---|---|---|
| 1 | A | -- said? | 09:52:51 |
| 2 | | He pointed to an air conditioner, which I | 09:52:53 |
| 3 | | believe was an LG air conditioner, and questioned | 09:52:55 |
| 4 | | in some fashion if our company had produced it or | 09:52:58 |
| 5 | | something along that -- those lines. | 09:53:02 |
| 6 | Q | Okay.  Did he indicate why he believed that? | 09:53:04 |
| 7 | A | I don't specifically recollect, no. | 09:53:10 |
| 8 | Q | Okay.  Did he purchase the air conditioner | 09:53:15 |
| 9 | | believing it was produced by -- | 09:53:19 |
| 10 | A | I don't know. | 09:53:22 |
| 11 | | MR. KIRBY:  Let him finish. | 09:53:30 |
| 12 | | BY MR. SOMMERS: | 09:53:32 |
| 13 | Q | Did he indicate any reason why he drew this | 09:53:32 |
| 14 | | connection? | 09:53:35 |
| 15 | A | He may have, but I wasn't present. | 09:53:35 |
| 16 | Q | And this was with your brother, John? | 09:53:38 |
| 17 | A | That's correct. | 09:53:41 |
| 18 | Q | Okay.  Rich Cremins (sic) -- | 09:53:41 |
| 19 | | MR. KIRBY:  Cremin, C-R-E-M-I-N. | 09:53:49 |
| 20 | | BY MR. SOMMERS: | 09:53:53 |
| 21 | Q | Mr. Cremin, specifically what did his nephew say to | 09:53:53 |
| 22 | | him about -- about the alleged instance of | 09:54:00 |

| | | | |
|---|---|---|---|
| 1 | | confusion? | 09:54:04 |
| 2 | A | Again, the communication wasn't directly with me. | 09:54:07 |
| 3 | | And I only read a summary.  So basically, again, | 09:54:10 |
| 4 | | what I've stated is all that I know, that he asked | 09:54:14 |
| 5 | | the question or he asked for some clarification | 09:54:17 |
| 6 | | about LG and indicated that -- I think he asked the | 09:54:20 |
| 7 | | question, "Are you guys aware that these guys are | 09:54:25 |
| 8 | | using your copyright?"  And I think that was it. | 09:54:27 |
| 9 | Q | Okay. | 09:54:31 |
| 10 | A | There may have been more to it.  But in the | 09:54:31 |
| 11 | | summary, I think that's all I can recall. | 09:54:34 |
| 12 | Q | All right.  But he wasn't confused as a purchaser, | 09:54:37 |
| 13 | | purchasing any products from LG, believing they are | 09:54:42 |
| 14 | | from Life is good.? | 09:54:46 |
| 15 | A | I don't know if he was or wasn't. | 09:54:47 |
| 16 | Q | All you know is he indicated LG was stealing your | 09:54:48 |
| 17 | | copyright? | 09:54:52 |
| 18 | A | That's right. | 09:54:53 |
| 19 | Q | Okay.  And I take it your nephew knows where Mr. -- | 09:54:53 |
| 20 | | or let me strike that. | 09:54:59 |
| 21 | | I take it that Mr. Cremin's nephew knows | 09:55:00 |
| 22 | | where Mr. Cremin works? | 09:55:04 |

19981
FieldRptr

21

| | | | |
|---|---|---|---|
| 1 | A | Yes. I think that's why he sent him the | 09:55:05 |
| 2 | | information. | 09:55:08 |
| 3 | Q | Not that he was confused? | 09:55:08 |
| 4 | A | I don't know that. | 09:55:10 |
| 5 | | MR. KIRBY: Object to form. | 09:55:12 |
| 6 | | BY MR. SOMMERS: | 09:55:14 |
| 7 | Q | You don't know whether he was confused or not? | 09:55:15 |
| 8 | A | That's correct. | 09:55:17 |
| 9 | Q | Mr. Heffernan, specifically, did he identify the | 09:55:17 |
| 10 | | context in which this consumer allegedly claimed | 09:55:35 |
| 11 | | they were confused? | 09:55:41 |
| 12 | A | Basically. He said that a consumer walked into our | 09:55:42 |
| 13 | | flagship store and immediately approached a | 09:55:49 |
| 14 | | salesperson and asked the question, as stated | 09:55:54 |
| 15 | | before. They stated -- she stated that she was | 09:55:59 |
| 16 | | confused and wanted to know what relation this | 09:56:03 |
| 17 | | store and these products had to do with this | 09:56:08 |
| 18 | | billboard in New York City. | 09:56:10 |
| 19 | Q | Okay. Did Mr. Heffer -- Heffernan speak directly | 09:56:13 |
| 20 | | to the consumer? | 09:56:18 |
| 21 | A | No. | 09:56:19 |
| 22 | Q | This was relayed to him by a salesperson at your | 09:56:19 |

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646

1     flagship store?                        09:56:25

2  A    I assume so.                       09:56:26

3  Q    Do you know the identity of the consumer?    09:56:27

4  A    I do not.                       09:56:30

5  Q    Do you know what they were indicating they were  09:56:31

6     confused about?                    09:56:35

7  A    Exactly what I stated they said they were confused 09:56:36

8     about.                        09:56:40

9  Q    Okay.  Is there anything that this -- would lead  09:56:40

10     you to believe that this consumer was confused as  09:56:48

11     to any relationship or association between Life is  09:56:53

12     good.and LG?                   09:56:58

13         MR. KIRBY:  Let me have that one back,  09:56:59

14     please.                       09:57:02

15         (Preceding question was read by the    09:57:17

16     stenographer.)                   09:57:18

17         MR. KIRBY:  Object to form.  You may  09:57:18

18     answer it if you understand it.         09:57:23

19         THE WITNESS:  I do understand.  And yes,  09:57:24

20     there is something that very definitely leads me to 09:57:25

21     believe that the consumer was confused about the  09:57:28

22     relationship between LG, who had the billboard in  09:57:30

| | | |
|---|---|---|
| 1 | New York City, and the store that they were in.  I | 09:57:35 |
| 2 | believe that the woman looked at what was in the | 09:57:39 |
| 3 | store and it didn't line up with what she thought | 09:57:42 |
| 4 | was on the billboard and wondered about the | 09:57:45 |
| 5 | connection because of the similarities of the words | 09:57:48 |
| 6 | "life is good" and the words "life's good." | 09:57:50 |
| 7 | BY MR. SOMMERS: | 09:57:53 |
| 8 Q | And did anybody from your company specifically | 09:57:54 |
| 9 | discuss this with the alleged consumer who was | 09:57:58 |
| 10 | confused? | 09:58:03 |
| 11 A | Yes. | 09:58:04 |
| 12 Q | And who is that? | 09:58:05 |
| 13 A | Her name is Cat.  I may get the name slightly wrong | 09:58:07 |
| 14 | here, Cat McGrady, McGurdy.  I don't know.  Her | 09:58:12 |
| 15 | last name slips my mind right now, but it's close | 09:58:22 |
| 16 | to that. | 09:58:25 |
| 17 Q | And did you personally talk to her? | 09:58:26 |
| 18 A | I did not. | 09:58:30 |
| 19 Q | This is Mr. Heffernan, correct? | 09:58:31 |
| 20 A | I'm sorry? | 09:58:34 |
| 21 | MR. KIRBY:  That spoke with her, that | 09:58:35 |
| 22 | spoke with Ms. McGrady? | 09:58:37 |

1           MR. SOMMERS:  Yes.                       09:58:39

2           THE WITNESS:  I assume that Roy Heffernan 09:58:40

3      spoke with her, but I don't know that.         09:58:41

4      BY MR. SOMMERS:                                09:58:43

5  Q   Okay.  I guess Mr. Heffernan relayed this      09:58:43

6      information to you?                            09:58:46

7  A   He relayed the information in response to my   09:58:47

8      brother's e-mail and request, as previously   09:58:50

9      discussed.  And I read it on the summary, as   09:58:53

10     previously discussed.                          09:58:57

11 Q   Okay.  Are there any documents that were recorded 09:58:58

12     at the time, memorializing this alleged instance of 09:59:02

13     confusion?                                     09:59:07

14 A   I don't believe so, but I don't know that.     09:59:07

15          MR. SOMMERS:  We would ask that those be  09:59:10

16     produced.                                      09:59:12

17     BY MR. SOMMERS:                                09:59:13

18 Q   Did the consumer indicate specifically why she was 09:59:26

19     confused?                                      09:59:29

20 A   Yes.  Because she saw a billboard and she didn't 09:59:31

21     feel as though that billboard represented the same 09:59:40

22     feel she got in the store.                     09:59:45

ACE-FEDERAL REPORTERS, INC.
Nationwide Coverage
202-347-3700          800-336-6646

1  Q    Did anybody from your company confirm that with        09:59:46

2       her?                                                   09:59:55

3  A    I assume that the sales clerk -- actually, let         09:59:55

4       me -- I'm confused about the question.  Confirm        10:00:00

5       what?                                                  10:00:08

6  Q    What you've just testified, as to what your -- let     10:00:08

7       me -- let me strike that.                              10:00:11

8              Did you -- let me strike that.                  10:00:12

9              Did anybody from your company                   10:00:20

10      specifically speak with the customer and confirm       10:00:21

11      your prior testimony as to the reason for her          10:00:25

12      confusion?                                             10:00:32

13             MR. KIRBY:  Object to the form.  You can        10:00:35

14      try to answer it, Bert.                                10:00:40

15             THE WITNESS:  I believe that the sales          10:00:42

16      clerk did have a conversation, which was a             10:00:44

17      confirmation of the woman's confusion as stated.       10:00:48

18      BY MR. SOMMERS:                                        10:00:51

19 Q    And we don't -- does anybody at your company know      10:00:52

20      the identity of the consumer?                          10:00:55

21 A    Possibly.  I'm -- I'm not sure.                        10:00:57

22 Q    And who would be the individual that would know        10:01:00

| | | | |
|---|---|---|---|
| 1 | | that? | 10:01:03 |
| 2 | A | Cat, Cat M. | 10:01:04 |
| 3 | Q | And in preparing for various discovery requests in | 10:01:10 |
| 4 | | this case, did anybody take any steps to discuss | 10:01:16 |
| 5 | | this particular instance of confusion with Cat? | 10:01:22 |
| 6 | A | I don't know. | 10:01:27 |
| 7 | Q | You testified earlier that you believe she saw the | 10:01:28 |
| 8 | | billboard and it didn't have the same feel as the | 10:02:15 |
| 9 | | store. Am I accurately summarizing your testimony? | 10:02:19 |
| 10 | A | Yes. | 10:02:26 |
| 11 | Q | What specifically, if you know, did she say about | 10:02:26 |
| 12 | | the feel of the billboard as opposed to the store? | 10:02:44 |
| 13 | A | I don't know. | 10:02:47 |
| 14 | Q | But it is your understanding that this individual | 10:02:48 |
| 15 | | did make a distinction between the feel of the | 10:02:59 |
| 16 | | billboard sign and the -- your flagship store? | 10:03:02 |
| 17 | A | I only know that she was confused. So I probably | 10:03:11 |
| 18 | | make some assumptions as to why she was confused. | 10:03:13 |
| 19 | Q | And would it be correct that you're also assuming | 10:03:16 |
| 20 | | that she was confused? | 10:03:24 |
| 21 | | MR. KIRBY: Object to form. | 10:03:26 |
| 22 | | THE WITNESS: No. That would not be | 10:03:27 |

1    correct.  She stated that she was confused; so I          10:03:28

2    think it goes quite a bit further.  She started by        10:03:30

3    saying, "I'm confused," as I understand it.               10:03:33

4    BY MR. SOMMERS:                                           10:03:36

5 Q    Okay.  I understand that.  What was she confused        10:03:36

6    about?                                                    10:03:41

7 A    All I know is that she mentioned that she's             10:03:41

8    confused, that she saw a billboard in New York            10:03:43

9    City, apparently with "life's good" on it.  And she       10:03:47

10    walked into our store and saw the name of our store      10:03:49

11    and our products Life is good. and she stated that       10:03:52

12    she was confused.  I don't know a whole lot beyond       10:03:55

13    that.                                                    10:03:58

14 Q    Thank you.                                             10:03:59

15         You indicated that there was an instance            10:04:08

16    involving Mr. White and one of his neighbors.  Can       10:04:12

17    you specifically recall that instance for me?            10:04:20

18 A    Again, this is secondhand, so I wasn't present.  My    10:04:24

19    information comes from a summary that was a return       10:04:30

20    to a request where have you -- can you give              10:04:35

21    specifics on -- on instances of confusion.               10:04:39

22         Given that, I believe that a neighbor of            10:04:44

19981
FieldRptr

28

| | | |
|---|---|---|
| 1 | Shawn White's or a friend or associate of somebody | 10:04:49 |
| 2 | that he knew in his town said to him, "I saw your | 10:04:52 |
| 3 | ad for life's good; that's your company, isn't it," | 10:04:59 |
| 4 | something along those lines, may have mentioned the | 10:05:04 |
| 5 | products.  Shawn said that he clarified to the | 10:05:07 |
| 6 | gentleman that, no, in fact, that was not our | 10:05:10 |
| 7 | company.  But that later, he continued to be | 10:05:13 |
| 8 | confused and said, "How is business at life's | 10:05:17 |
| 9 | good." | 10:05:22 |
| 10 Q | And how do you know this is an advertisement for | 10:05:23 |
| 11 | LG? | 10:05:29 |
| 12 A | Ask that question again, please. | 10:05:29 |
| 13 Q | How -- how did -- do you know that that particular | 10:05:32 |
| 14 | advertisement was an advertisement for LG? | 10:05:36 |
| 15 A | I think that he described the -- the advertisement | 10:05:39 |
| 16 | to Shawn. | 10:05:51 |
| 17 Q | Okay.  Am I correct that you can't answer exactly | 10:05:52 |
| 18 | what the discussion was between the neighbor and | 10:05:57 |
| 19 | Mr. Shawn White? | 10:05:59 |
| 20 A | You are correct. | 10:06:00 |
| 21 Q | Okay.  So it is possible, is it not, that the | 10:06:01 |
| 22 | neighbor might have seen an ad from any company | 10:06:23 |

| | | |
|---|---|---|
| 1 | which led to this alleged instance of confusion? | 10:06:30 |
| 2 A | I think it's highly unlikely. | 10:06:34 |
| 3 Q. | But it's possible, correct? | 10:06:37 |
| 4 A | Well, yes.  But I say it's highly unlikely because | 10:06:39 |
| 5 | I've never seen an ad that says "life's good" for | 10:06:43 |
| 6 | any company except LG. | 10:06:46 |
| 7 Q | Okay.  Ever? | 10:06:48 |
| 8 A | Ever. | 10:06:52 |
| 9 Q | Okay.  Are you familiar with your policing | 10:06:53 |
| 10 | activities? | 10:07:00 |
| 11 A | To a certain extent, yes.  I mean, we have legal | 10:07:02 |
| 12 | counsel that handles those matters, but -- | 10:07:06 |
| 13 Q | Are you aware that -- aware of any third party who | 10:07:09 |
| 14 | has ever used the words "life's good" or "life is | 10:07:16 |
| 15 | good" in any advertisement? | 10:07:21 |
| 16 A | Yes. | 10:07:24 |
| 17 Q | And who is that? | 10:07:25 |
| 18 A | Specifically, I remember Miller Beer using the ad | 10:07:27 |
| 19 | campaign "life is good" for a short period of time. | 10:07:37 |
| 20 Q | Anyone else? | 10:07:40 |
| 21 A | I'm sure there have been others, but I don't | 10:07:41 |
| 22 | specifically recollect. | 10:07:45 |

1 Q    Let's return to your instance of alleged confusion    10:07:53

2      involving the sales representative, and I believe    10:07:56

3      her name is Susan deMarco.  Can you tell me          10:08:01

4      specifically what this alleged instance involved?    10:08:05

5 A    I will again repeat what I said before.  I'm not     10:08:09

6      sure what -- what it is that's new we're looking     10:08:16

7      for in it.                                           10:08:21

8           But I'm not sure who the woman is or what       10:08:21

9      association she has with Susan deMarco, but she      10:08:24

10     stated that she was shopping for, I believe, a       10:08:27

11     refrigerator, some kind of appliance, and she asked  10:08:30

12     about a specific refrigerator or appliance and the   10:08:34

13     sales clerk said, "That that is made by Life is      10:08:40

14     good."  And this person who knows Susan remarked to  10:08:42

15     her something along the lines of, you know, "When    10:08:48

16     did these guys get involved with appliances?"        10:08:50

17 Q   And who was she referring to?                        10:08:52

18 A   I'm sorry?                                           10:08:56

19 Q   Who was she referring to, "these guys"?             10:08:57

20 A   Oh, she was referring to Life is good., the          10:09:00

21     company, because she had the knowledge that Susan    10:09:02

22     is a sales rep for Life is good.                     10:09:05

19981
FieldRptr

31

1  Q   So she knew Susah was a sales rep of Life is good.    10:09:07

2      and was bringing something to her attention?    10:09:12

3  A   That's correct.    10:09:14

4  Q   Did she get the -- the name of the individual who    10:09:15

5      allegedly made this statement?    10:09:24

6          MR. KIRBY:  The "she" there being Susan?    10:09:26

7          MR. SOMMERS:  Correct.    10:09:30

8          THE WITNESS:  Yeah.  I -- I don't know.    10:09:30

9      I'm sorry.  Did she get the name?  I saw the name    10:09:31

10     in the summary of the woman who said this.  I don't    10:09:33

11     know if the woman has the sales clerk's name at the    10:09:37

12     appliance store, if that's what your question was.    10:09:43

13     BY MR. SOMMERS:    10:09:46

14 Q   Okay.  And who uttered this alleged instance of    10:09:46

15     confusion; was it the sales clerk or was it a    10:09:50

16     consumer?    10:09:53

17 A   I'm not clear which person you're looking for, the    10:09:54

18     person who told Susan about her experience at the    10:09:59

19     appliance store or the sales clerk themselves?  I    10:10:02

20     don't know the sales clerk's name.  That doesn't    10:10:06

21     say that the woman or Susan doesn't know the name;    10:10:11

22     but I don't know it.  And Susan certainly has this    10:10:14

1    woman's name, but I don't know it.                  10:10:17

2  Q   I guess what I'm trying to find out is who is the  10:10:20

3    person that was allegedly confused?                 10:10:24

4         MR. KIRBY:  Well, it assumes that it was        10:10:26

5    only one or the other; so I object to the form of    10:10:28

6    the question.                                        10:10:32

7         MR. SOMMERS:  Fair enough.                       10:10:33

8    BY MR. SOMMERS:                                      10:10:34

9  Q   Are there one or more?                              10:10:34

10 A   I would say that the sales clerk is confused; the  10:10:36

11    consumer, who I don't have her name, is confused.   10:10:41

12    But we can get that name for you.  And the only one 10:10:45

13    who wasn't confused in this instance, I think, was  10:10:50

14    Susan; might have been a little ticked off, but she 10:10:53

15    wasn't confused.                                     10:10:57

16         MR. SOMMERS:  All right.  I would ask for       10:11:01

17    disclosure of those names.                          10:11:03

18    BY MR. SOMMERS:                                      10:11:05

19 Q   Any other instances?                                10:11:06

20 A   From the summary, you're looking for instances?    10:11:07

21 Q   Yes.                                                10:11:16

22 A   I don't recollect.  As I stated before, that these 10:11:17

| | | |
|---|---|---|
| 1 | type of instances are -- are many and often.  So | 10:11:21 |
| 2 | from each of these people, there are examples, but | 10:11:25 |
| 3 | by no means complete lists. | 10:11:29 |
| 4 | Actually, one -- one just occurred to me | 10:11:31 |
| 5 | that I included on the list, I think, on the | 10:11:33 |
| 6 | summary.  I had a gentleman recently say to me -- I | 10:11:35 |
| 7 | don't know his last name, but his name is Dave. | 10:11:40 |
| 8 | Dave said to me, "Jen" -- a mutual friend of | 10:11:44 |
| 9 | ours -- "told me that you're the Life is good. guy, | 10:11:51 |
| 10 | that you own the Life is good. company."  And I | 10:11:54 |
| 11 | said, "Yes."  And he said, "That's great, man.  I | 10:11:56 |
| 12 | have one of your phones," and he took out the | 10:11:59 |
| 13 | phone. | 10:12:01 |
| 14 Q | This individual spoke directly to you? | 10:12:08 |
| 15 A | That's correct. | 10:12:10 |
| 16 Q | And his name is Dave? | 10:12:11 |
| 17 A | That's correct. | 10:12:12 |
| 18 Q | And you don't know his name? | 10:12:13 |
| 19 | MR. KIRBY:  Last name? | 10:12:15 |
| 20 | THE WITNESS:  I don't know his last name? | 10:12:16 |
| 21 | BY MR. SOMMERS: | 10:12:17 |
| 22 Q | Correct. | 10:12:18 |

19981
FieldRptr

34

| | | | |
|---|---|---|---|
| 1 | A | Yeah. | 10:12:18 |
| 2 | Q | And did he indicate why he believed you made a | 10:12:18 |
| 3 | | phone? | 10:12:26 |
| 4 | A | He did not. | 10:12:26 |
| 5 | Q | He didn't indicate whether it was because of use of | 10:12:27 |
| 6 | | "life's good" or the fact that the phone itself was | 10:12:35 |
| 7 | | manufactured by LG or any indication of what | 10:12:44 |
| 8 | | prompted this comment? | 10:12:47 |
| 9 | A | He didn't, he did not indicate that. The | 10:12:49 |
| 10 | | conversation accelerated into, you know, confusion | 10:12:53 |
| 11 | | and talking about LG and "life's good," but -- and | 10:12:58 |
| 12 | | Life is good. But he did not indicate what made | 10:13:02 |
| 13 | | him believe that we made that phone. | 10:13:07 |
| 14 | Q | Do you have any procedure for logging any instances | 10:13:09 |
| 15 | | of confusion? | 10:13:22 |
| 16 | A | We -- the only one I know of is that we alerted | 10:13:23 |
| 17 | | customer service, when talking to our retail | 10:13:31 |
| 18 | | customers, to indicate or log any instances where | 10:13:33 |
| 19 | | the retailers were confused about our association | 10:13:41 |
| 20 | | with LG. | 10:13:44 |
| 21 | Q | And when did you do that? | 10:13:45 |
| 22 | A | I would guess -- I don't know specifically. I | 10:13:47 |

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646

19981
FieldRptr

| | | | |
|---|---|---|---|
| 1 | | would guess four; five months ago. | 10:13:53 |
| 2 | Q | And have you received any reported instances of | 10:13:57 |
| 3 | | confusion by virtue of alerting the consumer | 10:14:05 |
| 4 | | service -- customer service people? | 10:14:14 |
| 5 | A | Yes.  But we were surprised at how few. | 10:14:15 |
| 6 | Q | And what -- of the few that you did receive, were | 10:14:19 |
| 7 | | those in writing? | 10:14:29 |
| 8 | A | I'm not certain, but I believe -- I believe some | 10:14:31 |
| 9 | | were in e-mail, some were by phone. | 10:14:37 |
| 10 | Q | And are there written documents of these? | 10:14:41 |
| 11 | A | I'm not certain. | 10:14:43 |

12              MR. SOMMERS:  Okay.  We would ask that      10:14:49

13      those be produced.                                10:14:51

14              MR. KIRBY:  I assume, Mark, at the end of  10:14:53

15      the day, you guys will get the transcript and you 10:14:55

16      can send me a nice letter, because I'm a terrible 10:14:58

17      note taker, so I'm not even attempting to take all 10:15:01

18      of these notes down.                              10:15:04

19              MR. SOMMERS:  Fine.  Thank you.           10:15:06

20              THE VIDEOGRAPHER:  There's about three    10:15:07

21      minutes left on this tape.                        10:15:10

22              MR. SOMMERS:  Thank you.                  10:15:11

19981
FieldRptr
                                                                              38

| 1 | This is the beginning of cassette number 2 in the | 10:23:51 |
| 2 | deposition of Albert Jacobs.  We're back on the | 10:23:54 |
| 3 | record. | 10:23:56 |
| 4 | BY MR. SOMMERS: | 10:23:57 |
| 5 | Q   Mr. Jacobs, before we went off the record, you had | 10:23:57 |
| 6 | indicated that the retailers, it was your testimony | 10:24:00 |
| 7 | that they were seeking more clarification between | 10:24:06 |
| 8 | the companies than they were confused.  My question | 10:24:08 |
| 9 | to you is what makes you believe that this is not | 10:24:13 |
| 10 | also the case of the six instances of alleged other | 10:24:20 |
| 11 | types of public confusion that we talked about | 10:24:28 |
| 12 | earlier today? | 10:24:31 |
| 13 | A   What leads me to believe that is the -- the volume | 10:24:32 |
| 14 | of consumer confusion versus the retailer | 10:24:37 |
| 15 | confusion.  Again, we were expecting at first a lot | 10:24:43 |
| 16 | more from the retailers; but when we didn't get it, | 10:24:50 |
| 17 | we started looking at why.  And so we get a lot | 10:24:54 |
| 18 | more confusion from consumers, many more instances | 10:24:57 |
| 19 | than retailers. | 10:25:01 |
| 20 | Q   All right.  Have you encountered any -- any | 10:25:03 |
| 21 | instance where a consumer has purchased a product | 10:25:06 |
| 22 | of your company, believing it to, in fact, have | 10:25:12 |

1         been manufactured by LG?                          10:25:16

2    A    I would have no way of knowing that.              10:25:18

3    Q    Okay.  Have you ever encountered any instance where 10:25:20

4         a consumer has purchased a product of LG, believing 10:25:28

5         it, in fact, to have been manufactured by your     10:25:34

6         company?                                           10:25:37

7    A    Same answer.  I would -- I would have no way of   10:25:37

8         knowing.                                           10:25:40

9    Q    Okay.  You have indicated on more -- on -- on more 10:25:41

10        than one occasion that confusion is common.  I have 10:25:46

11        asked you to enumerate the instances of confusion.  10:25:52

12        You've given me six.                               10:25:58

13   A    Yeah.                                              10:26:00

14   Q    You've indicated that there may be more on this    10:26:01

15        e-mail that you prepared.  Are there any records or 10:26:04

16        any memoranda memorializing the alleged confusion   10:26:07

17        beyond these six instances?                        10:26:13

18   A    There may be some.  But in most cases, it's       10:26:16

19        conversations that happen on the street, at a      10:26:22

20        restaurant, at the movies, which, again, led us to 10:26:25

21        the consumers versus the retailers.  So I -- in    10:26:31

22        most cases, people are not making memos out in the 10:26:34

| | | | |
|---|---|---|---|
| 1 | | street and -- | 10:26:39 |
| 2 | Q | Would it be fair of me to say that the alleged | 10:26:42 |
| 3 | | instances of confusion are not occurring in the | 10:26:48 |
| 4 | | commercial marketplace and you are encountering | 10:26:52 |
| 5 | | these outside a commercial marketplace? | 10:26:58 |
| 6 | | MR. KIRBY:  Object to the form. | 10:27:03 |
| 7 | | BY MR. SOMMERS: | 10:27:05 |
| 8 | Q | You can answer if you understand or I'll rephrase | 10:27:05 |
| 9 | | the question. | 10:27:08 |
| 10 | A | Please rephrase. | 10:27:08 |
| 11 | Q | Yeah.  Would it be fair for me to say that these | 10:27:09 |
| 12 | | alleged instances of confusion are not occurring in | 10:27:13 |
| 13 | | a retail marketing context? | 10:27:17 |
| 14 | A | No.  It wouldn't be fair to assume that.  In fact, | 10:27:20 |
| 15 | | one of the examples I gave you was in a commercial | 10:27:22 |
| 16 | | environment.  I've indicated that for us, many more | 10:27:26 |
| 17 | | instances are not in the business environment. | 10:27:29 |
| 18 | | However, it would be very unfair to assume that | 10:27:31 |
| 19 | | they're not happening in a commercial environment. | 10:27:34 |
| 20 | Q | Do you know -- do you know whether these people | 10:27:37 |
| 21 | | were seeking clarification rather than being | 10:27:43 |
| 22 | | confused? | 10:27:45 |

19981
FieldRptr

42

| | | | |
|---|---|---|---|
| 1 | | for LG. | 10:29:02 |
| 2 | Q | Okay.  And are they indicating that they believe | 10:29:07 |
| 3 | | that was you? | 10:29:11 |
| 4 | A | They're indicating either confusion or that they | 10:29:12 |
| 5 | | want clarification, because our company also has | 10:29:18 |
| 6 | | the words "Life is good.," which is very similar, | 10:29:20 |
| 7 | | and also has a smiley face. | 10:29:24 |
| 8 | Q | Okay.  I -- I understand that. | 10:29:27 |
| 9 | | But are these people indicating that they | 10:29:44 |
| 10 | | believe that LG is, in fact, your company? | 10:29:47 |
| 11 | A | Sometimes, yes. | 10:29:49 |
| 12 | Q | And specifically, who did that? | 10:29:50 |
| 13 | A | Specifically, -- | 10:29:52 |
| 14 | Q | Who said this? | 10:29:55 |
| 15 | A | I think I -- again, I gave you an example of a | 10:29:56 |
| 16 | | gentleman who said to me, "Is your company -- are | 10:30:00 |
| 17 | | you the guy who owns Life is good.?"  And I said, | 10:30:03 |
| 18 | | "Yes," and he said, "I have one of your phones." | 10:30:06 |
| 19 | Q | Yeah. | 10:30:09 |
| 20 | A | So I guess, I -- I don't specifically recollect him | 10:30:10 |
| 21 | | after that saying, "Because I saw 'life's good' on | 10:30:17 |
| 22 | | this."  But I assume if he thinks my company is | 10:30:20 |

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646

| | | | |
|---|---|---|---|
| 1 | | Life is good., that that's where it came from. | 10:30:23 |
| 2 | Q | So he didn't indicate why? | 10:30:26 |
| 3 | A | No, that's not true.  He very well may have.  It's | 10:30:29 |
| 4 | | not the part of the conversation that I remember. | 10:30:32 |
| 5 | Q | Okay.  Do you specifically recall any other | 10:30:33 |
| 6 | | individual, other than this conversation with the | 10:30:46 |
| 7 | | gentleman about the phone, who indicated that they | 10:30:50 |
| 8 | | believed that LG was, in fact, somehow related to | 10:30:59 |
| 9 | | your company? | 10:31:04 |
| 10 | | MR. KIRBY:  Other than what he's | 10:31:05 |
| 11 | | testified about previously this morning, Mark? | 10:31:07 |
| 12 | | Because you remember he testified about an air | 10:31:10 |
| 13 | | conditioner source of confusion, for example. | 10:31:13 |
| 14 | | MR. SOMMERS:  You know better than that, | 10:31:15 |
| 15 | | Bob. | 10:31:18 |
| 16 | | MR. KIRBY:  Mark, you don't get to go | 10:31:18 |
| 17 | | over his testimony a hundred times, asking him the | 10:31:19 |
| 18 | | same thing. | 10:31:22 |
| 19 | | MR. SOMMERS:  Please.  Please, enough. | 10:31:23 |
| 20 | | Enough. | 10:31:24 |
| 21 | | MR. KIRBY:  I'll -- | 10:31:24 |
| 22 | | BY MR. SOMMERS: | |

| | | | |
|---|---|---|---|
| 1 | | Is this a new question or the same question? | 10:32:11 |
| 2 | Q | Yes, it is. | 10:32:11 |
| 3 | A | It's a new question.  So you're not asking the -- | 10:32:12 |
| 4 | Q | This is a new question. | 10:32:16 |
| 5 | A | Okay.  Could you restate that question. | 10:32:17 |
| 6 | Q | Have you received any misdirected orders for your | 10:32:19 |
| 7 | | company that were intended for LG? | 10:32:22 |
| 8 | A | Could you give me an example of what would qualify | 10:32:24 |
| 9 | | as a misdirected order? | 10:32:28 |
| 10 | Q | Somebody asking to purchase a plasma television. | 10:32:30 |
| 11 | A | I don't know of any. | 10:32:34 |
| 12 | Q | Have you received any returns of LG products? | 10:32:35 |
| 13 | A | I don't know of any. | 10:32:39 |
| 14 | Q | Have you received complaints about any LG products? | 10:32:41 |
| 15 | A | I don't know of any.  It's not to say that the | 10:32:51 |
| 16 | | company has not received any, but none has been | 10:32:59 |
| 17 | | brought to my attention. | 10:33:02 |
| 18 | Q | Do you have a system in place so that the company | 10:33:03 |
| 19 | | is notified about those types of events? | 10:33:06 |
| 20 | A | When you say "the company is notified," could you | 10:33:09 |
| 21 | | clarify what you mean by that? | 10:33:12 |
| 22 | Q | I assume that -- that if somebody attempts to | 10:33:14 |

1    return a product that is not your own, that there    10:33:17

2    is some system in place to notify somebody within    10:33:21

3    the company that that -- that that occurred.    10:33:25

4  A    Are you saying that if somebody in customer service    10:33:28

5    receives that, they are somebody in the company, so    10:33:31

6    can you clarify what you mean by somebody in the    10:33:36

7    company?    10:33:38

8  Q    All right.  Sure.  Do you have a -- do you have a    10:33:38

9    policy in place that catalogs or logs or    10:33:42

10    memorializes any occurrence when somebody attempts    10:33:50

11    to return a product to you that is not your own?    10:33:54

12  A    I'm not certain, to be honest with you.  Operations    10:33:57

13    is really not my forte, so I'm not really certain.    10:34:01

14  Q    Okay.  Are there any other instances of confusion,    10:34:04

15    to your knowledge, that you have not already    10:34:27

16    discussed with me?    10:34:29

17  A    As I stated previously, there's many, many    10:34:31

18    instances, but I -- I can't recall all of them.    10:34:36

19    It's very common for people to make comments which    10:34:40

20    I would classify as either confusion about LG and    10:34:43

21    our company, Life is good., or seeking    10:34:46

22    clarification about whether we're involved with LG,    10:34:49

| | | | |
|---|---|---|---|
| 1 | | whether our company is involved with LG. | 10:34:55 |
| 2 | Q | And do they indicate the reason why? | 10:34:57 |
| 3 | A | Sometimes they very clearly indicate that they've | 10:35:00 |
| 4 | | seen advertisements that say "life's good" or say | 10:35:04 |
| 5 | | "life's good" and have the LG face.  And sometimes | 10:35:09 |
| 6 | | they don't, sometimes they just ask the question or | 10:35:13 |
| 7 | | -- or state that they're confused about it. | 10:35:17 |
| 8 | Q | Okay.  And you don't have any of these individuals' | 10:35:19 |
| 9 | | names or have any system to record any instances of | 10:35:24 |
| 10 | | confusion? | 10:35:28 |
| 11 | A | We do.  And I've given you some where I've | 10:35:29 |
| 12 | | indicated that the individuals who spoke directly | 10:35:33 |
| 13 | | to those that were confused or seeking | 10:35:38 |
| 14 | | clarification would obtain those names. | 10:35:41 |
| 15 | Q | Outside of those, you wouldn't have any specific | 10:35:45 |
| 16 | | names? | 10:35:48 |
| 17 | A | I think there probably are names and there's | 10:35:49 |
| 18 | | probably names I can come up with to clarify or to | 10:35:53 |
| 19 | | give specific examples, but off the top of my head, | 10:35:57 |
| 20 | | no. | 10:36:01 |
| 21 | Q | Okay.  Let me have you take a look at the complaint | 10:36:01 |
| 22 | | that was filed in this action. | 10:37:06 |

1          (Proceedings interrupted at 12:33 p.m.

2    and reconvened at 1:46 p.m., at which time Mr.    01:38:22

3    Pierce is no longer present.)    01:38:23

4          THE VIDEOGRAPHER:  The time is 1:46.    01:45:02

5    This is the beginning of cassette number 4 in the    01:45:46

6    deposition of Albert Jacobs.  We're back on the    01:45:48

7    record.    01:45:51

8    BY MR. SOMMERS:    01:45:51

9  Q    Mr. Jacobs, if I could direct your attention to    01:45:52

10    Exhibit 4.  And that is the logo with the LG face    01:45:57

11    of the future logo, LG, and the words "life is    01:46:07

12    good."  And are you aware of whether that    01:46:10

13    particular logo appears on any of the electronic    01:46:11

14    products that LG produces?    01:46:15

15  A    I don't know if it appears on the products.    01:46:18

16  Q    Are you aware if it appears on any of their    01:46:21

17    cellular -- cellular phone products?    01:46:25

18  A    I'm not.  I'm not certain if it does.    01:46:28

19  Q    Are you aware if it appears on any of LG's    01:46:31

20    products?    01:46:34

21  A    I'm not certain if it does.    01:46:35

22  Q    Okay.  Have you received any misdirected phone    01:46:40

19981
FieldRptr

122

| 1 | | calls from any member of the public that were | 01:46:49 |
| 2 | | intended for LG? | 01:46:53 |
| 3 | A | You mean has the company received any? | 01:46:54 |
| 4 | Q | Yes. | 01:46:58 |
| 5 | A | Not to my knowledge. | 01:46:59 |
| 6 | Q | And when I have been using the word "you," I have | 01:47:00 |
| 7 | | been referring to you as the company, since you | 01:47:04 |
| 8 | | understand you're appearing here on behalf of the | 01:47:07 |
| 9 | | company. | 01:47:10 |
| 10 | A | I think that's clear. | 01:47:10 |
| 11 | Q | Okay. Thank you. | 01:47:12 |
| 12 | | You mentioned earlier the company Miller, | 01:47:13 |
| 13 | | and I believe you indicated that Miller was using | 01:47:20 |
| 14 | | "life is good." Am I correct? | 01:47:25 |
| 15 | A | That's right. | 01:47:27 |
| 16 | Q | When was that? | 01:47:27 |
| 17 | A | Quite a while ago. I -- I'm going to take a wild | 01:47:29 |
| 18 | | guess and say it was 1998, 1999. I'm not certain. | 01:47:35 |
| 19 | Q | Was it at a time that you were using Life is good.? | 01:47:42 |
| 20 | A | Yes. | 01:47:46 |
| 21 | Q | Okay. And did you receive an objection from | 01:47:47 |
| 22 | | Miller? | 01:47:51 |

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646

176

1        to use "life's good" in association with its brand.    03:05:17

2  Q     Okay.   And am I also correct that you would have no    03:05:20

3        facts to indicate that it did so to trade off your    03:05:25

4        good will?    03:05:29

5  A     That's correct.    03:05:30

6  Q     Okay.   Or trade off the selling power of your    03:05:31

7        company?    03:05:34

8  A     Yeah.   I have no idea why.    03:05:35

9  Q     Okay.   Or that it did so for purposes of boosting    03:05:38

10       its own sales?    03:05:51

11  A    I -- I would -- I would venture to guess that they    03:05:52

12       created that in hopes of boosting their sales,    03:05:55

13       certainly.    03:06:01

14  Q    I guess I meant off the backs of your hard labor.    03:06:01

15  A    Off the backs of -- yeah, I would have no facts or    03:06:04

16       ideas to indicate that they did so to -- to benefit    03:06:07

17       off of our -- our brand.    03:06:11

18  Q    Mr. Jacobs, can you tell me, have -- has your    03:06:13

19       company lost any customers or sales or business as    03:06:36

20       a result of LG's use of the "life is good" --    03:06:48

21       "life's good" tag line?    03:06:55

22  A    I would have no way of knowing.    03:07:04

19981
FieldRptr

201

| | | |
|---|---|---|
| 1 | "life's good"? | 03:45:43 |
| 2 A | I don't think so. | 03:45:44 |
| 3 Q | I'd have the same question for the Jake symbol? | 03:45:46 |
| 4 A | I don't think so. | 03:45:53 |
| 5 Q | Finally, I'd have the same question for the LG | 03:45:54 |
| 6 | logo? | 03:45:59 |
| 7 A | I don't think so. | 03:46:00 |
| 8 Q | What was your company's first knowledge of LG's use | 03:46:01 |
| 9 | of the words "life's good"? | 03:46:30 |
| 10 A | I can't speak for the company. Personally, I don't | 03:46:32 |
| 11 | remember the first call or e-mail, but probably in | 03:46:44 |
| 12 | the neighborhood of a year and a half to two years | 03:46:49 |
| 13 | ago, a handful of people inside the business and | 03:46:53 |
| 14 | outside the business contacted me and said, "Hey, | 03:46:56 |
| 15 | have you seen this ad" and "I got this in the | 03:47:00 |
| 16 | newspaper" and you know, the kind of questions that | 03:47:03 |
| 17 | we talked about earlier, and you know, looking for | 03:47:06 |
| 18 | a clarification about whether we were involved or | 03:47:12 |
| 19 | not started coming in. | 03:47:15 |
| 20 | I also remember there was a friend in -- | 03:47:17 |
| 21 | in -- out in LA who saw "life's good" up on the | 03:47:20 |
| 22 | Sonitron hanging above the basketball stadium and | 03:47:28 |

19981
FieldRptr
202

 1    called on the cell phone and said, "Hey, you know,    03:47:35

 2    is this you guys?  What is this all about?"  So --    03:47:38

 3  Q   Anything else?    03:47:45

 4  A   Again, those are examples of how we heard about it,    03:47:46

 5    but by no means a complete list.    03:47:55

 6  Q   When was the first time you were aware of the --    03:47:58

 7    the -- the LG face of the future logo?    03:48:03

 8         MR. KIRBY:  By that name or just the    03:48:12

 9    logo?    03:48:15

10         MR. SOMMERS:  Just the logo.    03:48:16

11         THE WITNESS:  Yeah.  I think shortly    03:48:18

12    thereafter.  Two years ago to a year and a half    03:48:20

13    ago, I think we started paying attention to LG when    03:48:25

14    we heard they were using "life's good" and    03:48:28

15    certainly went to the web site and saw that they    03:48:31

16    also had a face.    03:48:35

17    BY MR. SOMMERS:    03:48:36

18  Q   Let me ask it again.  When was the first time you    03:48:36

19    saw the logo that is depicted as Exhibit 3?    03:48:40

20  A   Now, by that question, do you mean the face next to    03:48:43

21    the LG or do you mean just the -- the LG smiley    03:48:50

22    face, the face of the future?    03:48:53

ACE-FEDERAL REPORTERS, INC.

Nationwide Coverage

202-347-3700          800-336-6646