**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LIFE IS GOOD, INC.,

Plaintiff,

v.

LG ELECTRONICS U.S.A., INC., and
LG ELECTRONICS MOBILECOMM U.S.A., INC., (formerly LG INFOCOMM U.S.A., INC.)

Defendants.

Civil Action No. 04 11290 WGY

Hon. William G. Young

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ARGUMENT AND EVIDENCE ON DEFENDANTS' INTENT**

Lawrence R. Robins
Jonathan M. Gelchinsky
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142

Mark Sommers
Douglas A. Rettew
Timothy A. Lemper
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. RELEVANT FACTUAL BACKGROUND .......... 2

A. Plaintiff Intends to Argue that Defendants Did Not Adopt and Use The "Life's Good" Corporate Tagline in Good Faith .......... 2

B. Defendants' Korean Parent Company Selected and Cleared "Life's Good" as the Global Corporate Tagline for Use Worldwide .......... 3

C. Defendants Adopted and Began Using "Life's Good" as a Corporate Tagline on Instructions from LG Korea .......... 5

D. Defendants Did Not Adopt or Begin Using their "Life's Good" Tagline to Trade on Plaintiff's Goodwill or Reputation .......... 5

III. ARGUMENT .......... 6

A. Plaintiff's Argument and Evidence Is Legally Insufficient to Show "Bad Faith" Intent .......... 6

IV. CONCLUSION .......... 10

V. LOCAL RULE 7.1 CERTIFICATION .......... 10

# TABLE OF AUTHORITIES

Page

**CASES**

Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc., 402 F. Supp. 2d 1312 (D. Kan. 2005) ........ 9

DeCosta v. Viacom Int'l, Inc., 981 F.2d 602 (1st Cir. 1992) ........ 7, 8

HQ Network Sys. v. Executive Headquarters, 755 F. Supp. 1110 (D. Mass. 1991) ........ 7, 8

Int'l News Serv. v. Assoc. Press, 248 U.S. 215 (1918) ........ 7

NEC Elec., Inc. v. New England Circuit Sales, Inc., 722 F. Supp. 861 (D. Mass. 1989) ........ 8

Pump, Inc. v. Collins Mgmt., Inc., 746 F. Supp. 1159 (D. Mass. 1990) ........ 1, 7, 8, 9

Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373 (2d Cir. 2005) ........ 9

Volkswagenwerk AB v. Wheeler, 814 F.2d 812 (1st Cir. 1987) ........ 1

W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567 (2d Cir. 1993) ........ 9

**RULES**

Fed. R. Evid. 401 ........ 7

Fed. R. Evid. 402 ........ 7

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff intends to argue at trial that Defendants did not begin use of "Life's Good" as a corporate tagline in the U.S. in good faith because they relied on their Korean parent company LG Electronics, Inc. ("LG Korea") to select and clear "Life's Good" as a new global corporate tagline, and thus have no direct personal knowledge of the good or bad faith motives of their Korean parent.[1] Plaintiff should be excluded from presenting evidence and argument on this point because it is irrelevant to prove bad-faith intent as a matter of law.

The First Circuit's and this Court's precedents require that a finding of bad faith be based on evidence of a defendant's intent to deceive consumers or to trade off of plaintiff's reputation or goodwill. There is not a scintilla of evidence that Defendants, let alone LG Korea, had such an intent when they "adopted" "Life's Good" as a corporate tagline and began using it in the U.S. Further still, Plaintiff cannot meet its burden of proving that Defendants acted in bad faith by arguing that there is insufficient evidence that Defendants acted in good faith.

The undisputed evidence shows that LG Korea selected and cleared "Life's Good" as its new global corporate tagline, which is used by its 76 subsidiaries. The tagline was adopted by LG Korea in accordance with its company policy of adopting and clearing global corporate logos and taglines. Defendants, both billion-dollar electronics companies operating under the "LG" house mark and trade name (one of the world's best-known brands), began using the "Life's Good" tagline on instructions from LG Korea. Defendants had no intent to trade on the goodwill of Plaintiff, a Boston-based clothing company selling non-competing products in a different

---

[1] As explained below, a defendant's intent in adopting an allegedly infringing mark is one of the eight factors identified by the First Circuit that this Court considers in assessing the "likelihood of confusion" for trademark infringement claims. See Pump, Inc. v. Collins Mgmt., Inc., 746 F. Supp. 1159, 1167, 1170 (D. Mass. 1990) (Young, J.) (citing Volkswagenwerk AB v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987), among other authorities).

industry. In fact, Defendant did not even know about Plaintiff or its use of "Life is good." before they began using their Korean parent's new global corporate tagline.

Plaintiff is thus left to argue that Defendants cannot have acted in good faith by relying on LG Korea to select and clear the "Life's Good" global corporate tagline because Defendants do not have direct personal knowledge of their parent's motives. Such argument ignores the First Circuit's and this Court's precedents requiring that a finding of bad faith be based on evidence that the defendant intended to deceive consumers or to trade on the plaintiff's goodwill. No such evidence exists. Thus, Plaintiff's "evidence" is irrelevant and should be excluded because it fails, as a matter of law, to meet Plaintiff's burden of establishing bad intent.

## II. RELEVANT FACTUAL BACKGROUND

### A. Plaintiff Intends to Argue that Defendants Did Not Adopt and Use The "Life's Good" Corporate Tagline in Good Faith

In its opposition to Defendants' motion for summary judgment and in the Joint Pretrial Memorandum submitted by the parties on July 21, 2006, Plaintiff indicated that it intends to present evidence that "[a]lthough LG maintains that it did not base the 'Life's good' mark on the plaintiff's 'Life is good' trademark, the defendants cannot explain the circumstances surrounding the selection of the 'Life's good' mark." (Joint Pre-Trial Mem., Docket No. 60, p. 3; Pl.'s L.R. 56.1 Stmt. of Disputed Facts, Docket No. 44, p. 18, ¶ 12.) In addition, Plaintiff intends to rely on the fact that Defendants did not conduct a U.S. trademark search of the words "Life's good" or "Life is good" before they started using "Life's Good" as a corporate tagline in the United States. (Joint Pre-Trial Mem., Docket No. 60, pp. 22, ¶¶ 21-22.)

When the parties met and conferred on this motion pursuant to L.R. 7.1(a)(2), Plaintiff confirmed that it intends to argue at trial that Defendants did not adopt and use the "Life's Good" corporate tagline in good faith.

**B. Defendants' Korean Parent Company Selected and Cleared "Life's Good" as the Global Corporate Tagline for Use Worldwide**

Defendants in this case are two of 76 subsidiaries in 39 countries that are owned by LG Korea. (Lemper Decl., Ex. 1, Taylor Dep. 9:20-10:4; Lemper Decl., Ex. 2, Lee Dep. 7:12-8:6.) Defendants, like all of LG Korea's subsidiaries, rely on LG Korea to clear all new global logos and corporate taglines before LG Korea instructs them to use these identifiers in accordance with company policy. Mr. John Taylor, Defendant LG Electronics U.S.A., Inc.'s Rule 30(b)(6) designee, testified at his deposition as follows:

> Q: Do you know whether [LG Korea] conducted a trademark search before it began using the LG logo with the Life's Good tag line?
>
> A: I assume they did. Those matters are handled by LG corporate in Korea.
>
> Q: And do you assume that they did because it is the corporate policy to conduct such trademark investigations before you begin the use of a new logo or tag line?
>
> A: Yes, I do.
>
> * * *
>
> Q: And is it… your understanding that before [LG Korea] would direct LG Electronics USA to start using a new corporate tagline, that [LG Korea] would conduct reasonable trademark searches?
>
> A: That's my understanding, yes.
>
> Q: Does LG Electronics USA, independent of [LG Korea], conduct trademark searches before it beings implementing the use of a new logo?
>
> A: No, we do not.
>
> Q: You defer to the corporate parents?
>
> A: Correct.
>
> Q: And is that likewise the case with respect to corporate tag lines, that you defer to the corporate parent… rather than conduct your own trademark searches?
>
> A: Certainly if we identify anything that might be in question, we would call it to their attention, but it is really the responsibility

of corporate.

(Lemper Decl., Ex. 1, Taylor Dep. 57:12-60:3.)

Pursuant to that company policy, LG Korea selected and cleared "Life's Good" as the new global corporate tagline to be used worldwide. The documents and testimony produced by Defendants show that:

- On June 2, 2003, LG Korea entered into an "Agreement for Services" with WPP: Team LG and LG Ad, Inc. (two advertising and communications services companies in the WPP group of companies) to develop a new global corporate tagline for use by LG worldwide. (LG006401-17.)
- WPP: Team LG's three key criteria for selecting a corporate tagline were that it be "strategic," "linguistic," and "*legal*". (LG006449, emphasis added.)
- WPP: Team LG "evaluated over 300 lines shared with LG headquarters" and narrowed the list down to three recommendations: "Life's Good", "Live More", and "Let's Go". (LG006464.)
- "Life's Good" had already been in use by LG Korea's subsidiary in Australia. (Lemper Decl., Ex. 1, Taylor Dep. 35:7-36:16.)
- On October 1, 2003, WPP: Team LG presented its "Recommendation on New Global Tagline" to LG Korea. (LG006445-71.)
- WPP: Team LG's presentation indicated that a preliminary legal check in the USA showed that the "Life's Good" tagline "could be available for use in our categories (electronics, appliances, mobile phones)." (LG006470.)
- On October 20, 2003, LG Korea's Public Relations Team recommended

three taglines—"Smile for Life", "Life's Good", and "Turn On"—in its proposed "LG Brand Global Communications Guidelines" (LG006418-64).

(See Lemper Decl., Ex. 3, LG006401-LG006471; Lemper Decl., Ex. 1, Taylor Dep. 35:7-36:16, 76:2-79:11; Lemper Decl., Ex. 2, Lee Dep. 27:15-28:2.)[2]

**C. Defendants Adopted and Began Using "Life's Good" as a Corporate Tagline on Instructions from LG Korea**

Defendants were not involved in LG Korea's selection and clearance of the "Life's Good" corporate tagline. (Lemper Decl., Ex. 1, Taylor Dep. 35:7-36:16; Lemper Decl., Ex. 2, Lee Dep. 77:14-79:18, 100:16-101:12.) In late 2003, Defendants were informed that LG Korea had selected "Life's Good" as the new global corporate tagline, and were instructed to begin using the corporate tagline in accordance with new brand communications guidelines issued by LG Korea. (See Lemper Decl., Ex. 3, LG006325-6368; Lemper Decl., Ex. 1, Taylor Dep. 35:7-36:16, 76:2-79:11.) Defendants were not aware of Plaintiff or its use of "Life is Good" at the time they began using the global corporate tagline selected by LG Korea.

**D. Defendants Did Not Adopt or Begin Using their "Life's Good" Tagline to Trade on Plaintiff's Goodwill or Reputation**

Defendants did not adopt "Life's Good" to trade off of the goodwill or selling power of Plaintiff's mark. It thus comes as no surprise that Albert Jacobs, Plaintiff's President and Rule

[2] Nothing has ever prevented Plaintiff from either naming LG Korea as a party to this suit or otherwise seeking discovery from that company. Thus, had Plaintiff truly wanted to probe further into how LG Korea adopted "Life's Good" beyond the information disclosed in the documents produced in this litigation from the Defendants' files, it had every opportunity to do so. Plaintiff's failure to name or obtain discovery from LG Korea cannot now be twisted into an evidentiary inference that Defendants began using the new global corporate tagline in bad faith merely because of Defendants cannot provide Plaintiff with testimony about the exact details and steps that LG Korea took in adopting "Life's Good" as its new global tagline.

30(b)(6) witness, testified:

> Q: Is – is it your company's contention that LG adopted its "life's good" tag line for purposes of trading off the good will of your company?
>
> A: I have no idea and can't really speak to that. I have no idea why they started it.
>
> Q: So am I correct that you would have no facts to indicate that LG adopted the words "life's good" to trade on the good will of your company?
>
> A: That's correct.
>
> * * *
>
> Q: Mr. Jacobs, I'm just trying to learn, do you have any facts that indicate that LG adopted its tag line "life's good" for purposes of trading off the selling power of your company's use of Life is good.?
>
> A: Okay. I guess I'll repeat my answer. I have no idea why "life's good" chose to use – why LG chose to use "life's good" in association with its brand.
>
> Q: Okay. And am I also correct that you would have no facts to indicate that it did so to trade off your good will?
>
> A: That's correct.
>
> Q: Okay. Or trade off the selling power of your company?
>
> A: Yeah. I have no idea why.
>
> Q: Okay. Or that it did so for purposes of boosting its own sales?
>
> A: I – I would – I would venture to guess that they created that in hopes of boosting their sales, certainly.
>
> Q: I guess I meant off the backs of your hard labor.
>
> A: Off the backs of – yeah, I would have no facts or ideas to indicate that they did so to – to benefit off of our – our brand.

(Lemper Decl. Ex. 4, A. Jacobs Dep. 174:14-176:17.)

## III. ARGUMENT

### A. Plaintiff's Argument and Evidence Is Legally Insufficient to Show "Bad Faith" Intent

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402.

A defendant's intent in adopting an allegedly infringing trademark is one of several factors relevant to this Court's determination of the likelihood of confusion in trademark infringement cases. See Pump, Inc. v. Collins Mgmt., Inc., 746 F. Supp. 1159, 1167, 1170 (D. Mass. 1990) (Young, J.). To be relevant to show bad faith intent, evidence must tend to show that the defendant adopted the allegedly infringing mark in order to trade off of the plaintiff's goodwill and reputation, i.e., to "reap what it had not sowed" and thereby get a "free ride." Id. at 1170 (quoting Int'l News Serv. v. Assoc. Press, 248 U.S. 215, 239 (1918) (Holmes, J.)); see DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 612-13 (1st Cir. 1992) (the bad faith inquiry asks "whether the second user had the intent to benefit from the reputation or goodwill of the first user") (citing cases). Plaintiff carries the burden of proving bad faith intent by a preponderance of the evidence. HQ Network Sys. v. Executive Headquarters, 755 F. Supp. 1110, 1119 (D. Mass. 1991) (Young, J.). To meet its burden, Plaintiff must present affirmative evidence that Defendants acted in bad faith, and cannot infer bad faith by arguing that Defendants have failed to prove good faith. See id. at 1119, 1123; Pump, 746 F. Supp. at 1170.

Based on the undisputed evidence, Plaintiff cannot show that Defendants selected or adopted the "Life's Good" corporate tagline in bad faith. There is no evidence that Defendants were the entities that adopted the "Life's Good" tagline. There is no evidence that Defendants even knew of Plaintiff or its use of "Life is good." at the time they began using their corporate tagline. And there certainly is no evidence that Defendants began using their Korean parent company's new global corporate tagline with an intent to cause confusion with Plaintiff's use of "Life is good." or to trade on Plaintiff's goodwill or reputation

As a matter of law, there can be no finding of bad-faith intent absent knowledge of Plaintiff. Further, even if Plaintiff could establish that Defendants or LG Korea knew of Plaintiff's use of "Life is good." (which it cannot show), such evidence would still be insufficient to show bad faith. See Pump, 746 F. Supp. at 1170 (noting that plaintiff's suggestion that defendants were aware of plaintiff, for which there was no evidence, does not demonstrate bad faith even if true because it does not show that defendants intended to "reap what it had not sowed" by appropriating plaintiff's name and goodwill). Similarly, even if neither Defendants nor LG Korea conducted a trademark search, Defendants' failure to conduct a trademark search does not constitute bad faith. See NEC Elec., Inc. v. New England Circuit Sales, Inc., 722 F. Supp. 861, 866 (D. Mass. 1989) (defendant's failure to conduct a trademark search before adopting its mark was not evidence of bad faith because it did not show defendant attempted "to palm itself off as [the plaintiff] or to capitalize on any arguable potential for confusion"). As such, Defendants' reliance on LG Korea's selection and clearance of the "Life's Good" tagline plainly cannot constitute bad faith.

Lacking any affirmative evidence of bad faith, Plaintiff should not be allowed to infer the existence of bad faith intent by arguing that *Defendants* have failed to show good faith. As noted above, Plaintiff bears the burden of presenting affirmative evidence to support a finding of bad faith, and it cannot rely on an "inference upon inference" based on the supposed lack of good faith. Pump, 746 F. Supp. at 1170; see HQ Network, 755 F. Supp. at 1119, 1123. Like the plaintiff in Pump, Plaintiff here cannot present any evidence that Defendants adopted the "Life's Good" tagline with an intent to cause confusion or to exploit the Plaintiff's reputation. DeCosta, 981 F.2d at 611-12. Such evidence simply does not exist.

Finally, it defies common sense to infer that Defendants adopted the "Life's Good" tagline to trade off of Plaintiff's goodwill or reputation. Defendants are both multi-billion dollar companies operating under the "LG" name, one of the world's best-known brands. See Lemper Decl. in Supp. of Defs.' Mot. for Summ. J., Docket No. 29, Ex. 13, p. 4 & n.6 (noting that the "LG" brand was ranked as one of the top 100 brands in the world in 2005). Defendants would hardly benefit from being confused with Plaintiff, a company operating in a completely different line of business. See Pump, 746 F. Supp. at 1170 (noting that the lack of evidence of defendant's bad faith was "consistent with common sense" because "why would a world-famous band with proven market power rely on the name of an unknown group [such as defendant] to help promote its product?"); Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 389 (2d Cir. 2005) (finding no bad faith after noting "the implausibility of the notion that a premier international rum manufacturer would seek to conflate its products with those of a regional discount vodka manufacturer . . . given [Bacardi's] name recognition and good will, and [Star's] relative obscurity, any confusion would [likely] have redounded to [Star's], rather than [Bacardi's] benefit); W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) (finding no bad faith in part because "[g]iven Gillette's name recognition and good will, and [plaintiff's] obscurity, any confusion would have redounded to the plaintiff's, rather than [Gillette's] benefit"); Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc., 402 F. Supp. 2d 1312, 1329 (D. Kan. 2005) ("[Motorcycles'] line of apparel exists to promote its sales of motorcycles, and its apparel line represents less than one percent of its total sales. In contrast, Holdings' primary product line is apparel that sells for a miniscule fraction of the cost of those motorcycles. It cannot logically be inferred that Motorcycles would have sought to capitalize on the term 'Big Dog' in the hopes of increasing its sales of $30,000 motorcycles simply because of consumers'

affinity for Big Dog apparel.”). This is especially so given Plaintiff’s asserted claim that Defendants’ use of “Life’s Good” “in connection with such expensive hard goods as televisions, computers, and cellphones [sic] runs directly counter to the whimsical and non-corporate image that Plaintiff has developed in connection with its relatively inexpensive soft goods.” (Complaint, Docket No. 1, pp. 5-6, ¶ 27.)

## IV. CONCLUSION

For the reasons stated above, Defendants respectfully request that Plaintiff be excluded from presenting argument or evidence at trial on the issue of Defendants’ intent.

## V. LOCAL RULE 7.1 CERTIFICATION

In accordance with Local Rule 7.1(a)(2), Defendants have conferred with Plaintiff, and have ascertained that Plaintiff will not stipulate to this motion.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

Date: August 25, 2006

/s/ Timothy A. Lemper___________

Counsel for Defendants
LG Electronics U.S.A., Inc. and
LG Electronics MobileComm U.S.A., Inc.

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 25, 2006.

/s/ Timothy A. Lemper___________