LIFE IS GOOD, INC. V. LG ELECTRONICS U.S.A., INC
Civil Action No. 04 11290 WGY

DECLARATION OF TIMOTHY LEMPER IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE ARGUMENT AND EVIDENCE ON DEFENDANTS' INTENT

# Exhibit 2

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF MASSACHUSETTS
 3
 4   LIFE IS GOOD, INC.,                )
                                        )
 5                  Plaintiff,          ) No. 04-11290-REK
                                        )
 6         vs.                          )
                                        )
 7   LG ELECTRONICS U.S.A., INC.,       )
     and LG INFOCOMM U.S.A., INC.,      )
 8                                      )
                  Defendants.           )
 9   _____)
10
11
12
13
14        ATTORNEYS' EYES ONLY - HIGHLY CONFIDENTIAL
15            VIDEOTAPED DEPOSITION OF JASON LEE
16                      Rule 30(b)(6)
17                   San Diego, California
18               Tuesday, November 29, 2005
19
20
21                                          ORIGINAL
     Reported by:
22   ANELA SHERADIN, RPR
     CSR NO. 9128
23   JOB NO. 5041
24
25
```

Page 7

1              JASON LEE,
2  having been first duly sworn, was examined and testified
3  as follows:
4
5                    EXAMINATION
6  BY MR. PIERCE:
7      Q   Good morning, Mr. Lee.  State your name,
8  please.
9      A   Jason Lee.
10     Q   Okay.  And are you employed?
11     A   Yes.
12     Q   Who is your employer?
13     A   LG MobileComm.
14     Q   LG MobileComm.  Can you give me the full
15 technical name of the company?
16     A   LG Electronics MobileComm U.S.A., Inc.
17     Q   Okay.  Now, is LG -- if I -- if I just call it
18 "MobileComm" today, you'll understand me to be talking
19 about LG Electronics MobileComm U.S.A., Inc.?  Do you
20 understand that?
21     A   Yes.
22     Q   Okay.  Is MobileComm a subsidiary of another
23 company?
24     A   Of another company?
25     Q   Yes.

| | | |
|---|---|---|
| 1 | A | LG -- LG Electronics. |
| 2 | Q | Okay. And that's a Korean company? |
| 3 | A | That's Korean company. |
| 4 | Q | Okay. So LG Electronics MobileComm U.S.A. is owned by LG MobileComm Electronics; is that true? |
| 6 | A | Owned by LG Electronics. |
| 7 | Q | Okay. And LG Electronics U.S.A. is a separate corporation from MobileComm; is that correct? |
| 9 | A | LG Electronics U.S.A.? |
| 10 | Q | Yes. |
| 11 | A | Yes, it's separate company. |
| 12 | Q | Separate company. |
| 13 | | Okay. And is it fair to say that MobileComm's main product lines are wireless cell phones and similar products? |
| 16 | A | Cell phones. |
| 17 | Q | Cell phone? |
| 18 | A | Mobile phones. |
| 19 | Q | Okay. And MobileComm does not sell the flat screen TV's, or refrigerators, or washers and dryers; is that fair to say? |
| 22 | A | That's fair to say. |
| 23 | Q | Okay. Why don't we mark, as the first exhibit, this Notice of Deposition. And I should say the 60th exhibit. |

Page 27

1    A    I'm sorry?

2    Q    When did you come to that understanding that
3    it's possessive?

4    A    From the time when we started using it.

5    Q    And who told you it was possessive?

6    A    I think it was --

7         MR. SOMMERS:  I'll object to foundation.

8    BY MR. PIERCE:

9    Q    All right.  How did you learn it was
10   possessive?

11   A    Again, from the time we started using it.

12   Q    How?  How did you learn that?

13   A    Because that's -- that's how it meant.

14   Q    How do you know?  Who told you that?

15   A    Well, the tagline was done by, you know,
16   headquarters and we --

17   Q    By whom?

18   A    By headquarters in Korea.

19   Q    Helpers?

20   A    Headquarters.

21        MR. SOMMERS:  HQ.

22        MR. PIERCE:  Headquarters.  Okay.

23   Q    So the headquarters came up with that?

24   A    Yes.

25   Q    And they directed your company to use that,

```
 1   correct?
 2        A    Yes.
 3        Q    But what -- how did you come to the conclusion
 4   that that's possessive rather than a contraction?
 5        A    That I don't know.
 6        Q    Okay.  Let's look at Exhibit 40, please.
 7             MR. PIERCE:  Do you have -- you have the
 8   originals, Mark.
 9             MR. SOMMERS:  Okay.
10        Q    Have you seen this document before, sir?
11        A    Yes.
12        Q    What are you looking at?  Is that 40?  Let me
13   see that.
14             THE WITNESS:  That's a different one.
15             MR. SOMMERS:  Oh, sorry.
16             MR. PIERCE:  We'll get to that, though.  It's
17   the sweepstakes.  That's it.
18        Q    Have you seen this document before, sir?
19        A    No, I haven't.
20        Q    Okay.  Take a look at the second paragraph of
21   the text.  It says, "This is no fantasy.  Life's Good
22   when you enter for a chance to win a trip to the
23   championship game in Detroit."  Is that a possessive use
24   or a contraction?
25        A    (Inaudible response.)
```

1  defendants in connection with their sale and/or

2  marketing of products of the marks or words 'Life's

3  Good,' 'Life is Good' and/or the 'LG Logo'."  And it's

4  your testimony that you didn't do any investigation as

5  to -- well, let me ask you this:  Did you do any

6  investigation as to who selected the mark?

7        MR. SOMMERS:  Let me just -- for purposes of

8  the record, I think it -- the question -- it would only

9  be fair to inform the witness of what the words

10 "defendant" means --

11       MR. PIERCE:  Okay.

12       MR. SOMMERS:  -- in Topic 4.

13       MR. PIERCE:  That's fine.  That's fine.

14 Q   Did you do any investigation to find out who

15 selected the trademark -- I'm sorry, the words "Life's

16 Good" as a tagline?

17 A   Well, I learned that there was -- that was

18 created by headquarters, but I don't know -- I don't

19 know who that was.

20 Q   How did you -- how did you learn that?

21 A   Because, again, that was from -- from brand

22 marketing group and -- and LGE west, and they set the --

23 Q   Okay.  But in preparation for this deposition,

24 did you do anything to learn further as to how the mark

25 was selected?

ESQUIRE DEPOSITION SERVICES
1-866-619-3925

```
 1       A    How the mark was selected?

 2       Q    Yeah.

 3       A    The process.  No, I didn't.

 4       Q    Why not?  You knew this was one of the topics,

 5  right?

 6            MR. SOMMERS:  We'll object to that.  The

 7  Category 4 doesn't say broad -- broad without parameters

 8  of any party.  It refers specifically to the defendants

 9  in this case.  Your question is outside the scope of

10  this Notice, and to continue this line of questioning as

11  though the witness had not adequately prepared himself,

12  is unfair.

13            MR. PIERCE:  I completely disagree.  And the

14  idea that you guys are going to try to hide behind the

15  Korean parent and say, well, they just told us what to

16  do, that's like -- you know, we were just following

17  orders, I think he has an obligation to investigate this

18  information that's available to the company.  Obviously,

19  if the information is available to headquarters, as he

20  calls it, it's available to LG MobileComm.

21            MR. SOMMERS:  We'll disagree with that

22  characterization and simply say that it is clear who the

23  defendants in this case are and the obligations of

24  preparing this witness to testify on those topics.  You

25  had the opportunity to name the Korean parent as a
```

Page 79

1  defendant.  You elected not to do so, so chastising the
2  defendant's preparation of his deposition is
3  inappropriate.
4          MR. PIERCE:  I disagree.
5      Q   Let's look at Category No. 5.  One of the
6  topics is, "Any trademark or service mark searches
7  undertaken by or on behalf of the defendants concerning
8  the 'Life's Good,' 'Life is Good' and/or the" Life --
9  "'LG Logo' marks."  Did you make any inquiry into
10 anybody whether any trademark searches were undertaken?
11     A   I didn't ask, but I assumed that was -- that
12 was taken by headquarters.
13     Q   What's the basis for that assumption?
14     A   Because that's -- that's a policy; policies
15 that headquarters decides to use or create the tagline
16 for the global platform for the global advertising and
17 then -- well, I assumed that if they created and they
18 told us to use it, that was done by headquarters.
19     Q   Okay.  But in preparation for this deposition,
20 did you make inquiry to anybody as to whether a
21 trademark search was actually done?
22     A   I didn't because I don't know who I talked to.
23     Q   Okay.  Are there attorneys in Korea at
24 headquarters whose focus is trademarks?
25     A   There might be.

Page 100

1    Q    You don't agree with that statement?

2    A    Well, again, the part of using Life is Good --

3    Q    Well, I removed that from the sentence. Okay?
4    Please -- actually, if you can just put that down and
5    listen to me. Do you believe that LG adopted and began
6    using the LG logo -- strike that.

7         Do you believe LG adopted and began using the
8    corporate tagline, Life is -- Life's Good, in good faith
9    for reasons completely unrelated to Life is Good, Inc.,
10   and its use of Life is Good or the Jake symbol?

11        MR. SOMMERS: We'll object to form. And my
12   trouble with the question the way you posed it is who
13   are you referring to as LG, the entirety of the company?
14   The defendant, LG MobileComm?

15        MR. PIERCE: All right.

16   Q    Well, let's ask this: Did LG MobileComm adopt,
17   began using, the corporate tagline, Life's Good, in good
18   faith for reasons completely unrelated to plaintiff and
19   its use of Life is Good?

20   A    Okay. LG MobileComm didn't adopt it. We -- LG
21   MobileComm followed the headquarter's direction. And
22   the rest of the statements you just made, I agree, but
23   I'm not -- I don't know about Jake symbol.

24   Q    Okay. But you don't know whether headquarters
25   adopted it for reasons unrelated to plaintiff, do you?

Page 101

```
 1       A    Can you repeat the question, please?
 2       Q    Yeah.  Do you know whether headquarters -- LG
 3  headquarters adopted the Life's Good tagline for reasons
 4  unrelated to the plaintiff Life is Good?
 5            MR. SOMMERS:  I'll object to form.
 6            THE WITNESS:  For reasons unrelated --
 7  unrelated to.  Well, I guess they didn't -- they didn't
 8  know about Life is Good company.
 9  BY MR. PIERCE:
10       Q    You don't know whether they did or didn't?
11       A    Well, I don't know -- I don't know the process
12  they took.
13            MR. PIERCE:  Okay.  Why don't -- why don't we
14  break now because I want to get this organized so I can
15  do it as quickly as I can.
16            MR. SOMMERS:  That's fine.
17            MR. PIERCE:  Is that -- is that good for
18  everybody?  And you think we'll --
19            THE VIDEOGRAPHER:  And we're off the record at
20  12:05 p.m.
21            (Lunch recess 12:05 p.m. - 12:42 p.m.)
22            THE VIDEOGRAPHER:  And we're back on the record
23  at 12:42 p.m.
24  BY MR. PIERCE:
25       Q    Mr. Lee, your counsel informs me that you
```